**FILED**
APR - 3 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CAROL A. FORTI,
14 West Chapman Street
Alexandria, VA 22301
    Plaintiff,
703.535.5449

                      Civil Action No. _____

   v.

W.C. & A.N. MILLER DEVELOPMENT CO.
4701 Sangamore Road
Bethesda, MD 20816
    Defendant,

JUNE HUMBERT, AGENT, W.C. & A.N. MILLER
4901 Scarsdale Road
Bethesda, MD 20816
    Defendant,

GEORGE MASSON, JR. AND HAMILTON
AND HAMILTON LLP (COUNSEL TO
   W.C. & A.N. MILLER)
1900 M Street, N.W. –Suite 410
Washington, D.C. 20036-3532
    Defendants,

ALBERTO CHONG, BUYER
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
    Defendant,

LUISA ZANFORLIN, BUYER
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
    Defendant,

RICHARD AGULIA
(COUNSEL TO CHONG AND ZANFORLIN)
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006
    Defendant

JEFFREY HARDIE
(COUNSEL TO CHONG AND ZANFORLIN)

CASE NUMBER 1:06CV00613
JUDGE: James Robertson
DECK TYPE: Contract
DATE STAMP: 04/03/2006

Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
    Defendant

**NATHAN FINKELSTEIN AND FINKELSTEIN &**
**HORWITZ**
**(SETTLEMENT ATTORNEYS)**
7315 Wisconsin Ave., N.W.
Suite 400 East
Bethesda, MD 20814
    Defendants

**COMPLAINT FOR CIVIL FRAUD AND CONSPIRACY TO COMMIT CIVIL FRAUD**

### JURISDICTION

This case is properly before this court based on complete diversity among the litigants. The amount in controversy also exceeds the statutory minimum.

### COMPLAINT

1.    By making the Escalator Clause Addendum the controlling paragraph of the Purchase Offer/Contract by Chong and Zanforlin [Exhibit 1] to purchase Forti's home at 2936 Garfield Terrace, N.W., W.C. & A.N. Miller ("Miller"), Humbert, Chong, and Zanforlin represented that Chong and Zanforlin would pay Forti $5,000 in Net Proceeds above the Net Proceeds of the next highest offer. Since the next highest offer was for $945,000 in Net Proceeds, Chong and Zanforlin promised to pay $950,000 in Net Proceeds pursuant to the Escalator Clause Addendum. However, after inducing Forti to select the Chong/Zanforlin offer over the next highest offer, all of the defendants ignored the existence of the Escalator Clause Addendum. All defendants litigated against Forti for a commission for Miller even though Miller was barred from receiving a commission

by D.C. Code and D.C. case law. As a result of the litigation, Forti was left with proceeds of $921,500. No reasonable seller would select an offer worth $921,500 in net proceeds when she had an offer for $945,000 in net proceeds, and Forti is a reasonable seller. All the defendants made false representation of a material fact that Chong and Zanforlin would pay $950,000 in NET PROCEEDS for the property with knowledge of its falsity, with intent to deceive, and Forti took justifiable reliance upon the misrepresentation.

2.  In violation of the contract principle of mutual mistake, defendants took advantage of a mistake (known to both parties) when Seller Forti wrote in $950,000 next to NEW SALES PRICE on the printed form but did not cross out NEW SALES PRICE and write in NET PROCEEDS.

3.  Miller, Humbert, Masson, Chong, Zanforlin, Agulia and Hardie are all liable for civil conspiracy. Their common actions in litigating against Forti for a commission when Forti owed Miller no commission pursuant to D.C. Code and D.C. case law showed that there was an agreement between eight parties to act unlawfully and their overt tortious acts caused extensive injury to Forti.

4.  Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie conspired to litigate a colorless, wanton, lawsuit against Forti and, by means of this litigation, forced her to pay a commission that she did not owe.

5.  Settlement attorney Nathan Finkelstein became part of the conspiracy by drawing up a HUD Settlement Sheet that assigned a $28,500 commission to Miller out of Forti's Net Proceeds of $950,000, although there was no employment contract between Forti and Miller and no written seller-broker agreement in which Forti agreed to pay Miller a

3

commission for procuring buyers. Moreover, Forti had specifically told Finkelstein well in advance of settlement that she did not owe Miller a commission.

6. Settlement attorney Finkelstein also became part of the conspiracy by informing agent Humbert and the buyers that there was an Assignment of Proceeds on the sale of Forti's property and that the Assignment of Proceeds would provide leverage in extorting a commission from Forti.

7. At settlement on April 29, 2002, Humbert, Chong, and Zanforlin refused to pay $950,000 in Net Proceeds as promised in the Chong/Zanforlin Purchase Offer, thereby preventing settlement on April 29, 2002.

8. Humbert, Finkelstein, Chong, and Zanforlin used the Assignment of Proceeds on the sale of Forti's home in an attempt to force Forti to pay a commission or risk losing the townhouse that she was planning to buy using proceeds from the sale of her home.

9. Humbert engaged in tortious interference with contract by refusing the escrow the disputed commission and by persuading buyers Chong/Zanforlin to refuse to escrow the disputed commission, thereby preventing settlement on April 29, 2002.

10. Humbert, Chong, and Zanforlin sought to force Forti to pay a commission to Miller that Forti did not owe by withholding the funds that Forti would have received from settlement on her house and on which Forti had relied to pay the balance on the townhouse.

11. Since Miller has operated as a real estate company in D.C. for 92 years, Miller's management and brokers knew that D.C. Code 42-1705 prohibited receipt of a commission absent proof that the seller and broker have voluntarily entered into an

4

employment contract in which the seller had agreed to pay a commission for the procurement of buyers. There was no employment contract between Forti and Miller. Therefore, Forti did not owe Miller a commission.

12.    Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie all knew that the Court of Appeals stated in Eggleston v. Vaughan, 45 A. 2d 362, 363 (D.C. App 1946) that "one seeking compensation as an agent must prove his contract of employment before he can recover for work done for an alleged principal. The fact that one is the procuring cause of a sale does not entitle him to a commission unless he had authority to sell." In the instant case, there was no employment contract between Forti and Miller. Therefore, Forti did not owe Miller a commission.

13.    Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie all knew that the Court of Appeals stated in Fred Ezra Co. v. Pedas, 682 A. 2d 173, 176 (D.C. App. 1996) that "in order for a broker, as agent, to recover against a seller as principal, the broker must first establish that they voluntarily entered into a principal-agent relationship that gives rise to a broker's contractual right to a commission. In the instant case, there was no principal-agent relationship or contract. Therefore, Forti did not owe Miller a commission.

14.    Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie compounded their malice against Forti by filing for attorney's fees, claiming that they had to sue to obtain a commission. Miller claimed $49,585.49 in attorney's fees. Chong and Zanforlin claimed $54,655.16 in attorney's fees.

15.    Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie further

5

compounded their malice against Forti further by placing a lien on property that Forti owns in Arnold, Maryland and threatened to have the sheriff's office auction it off at less than market value to pay the lien. Forti had to pay a Maryland firm to represent her and work out a settlement agreement to avoid having her land sold for far less than it is worth.

16. Plaintiff sues Miller for the amount of the disputed commission that was held in escrow, for her attorney's fees and costs, and for the alleged attorney's fees that Miller incurred.

17. Plaintiff sues Chong and Zanforlin for breach of contract, detrimental reliance, consequential damages, attorney's fees and costs, and for the alleged attorney's fees that Chong and Zanforlin incurred.

18. Forti sues Finkelstein for the fees that she paid him as a settlement attorney.

16. Given the maliciousness with which they pursued this conspiracy and the wanton disregard of Forti's rights, Miller, Humbert, Masson, Chong, Zanforlin, Agulia, Hardie, and Finkelstein are all liable to Forti for punitive damages. Forti seeks punitive damages against W.C. and A.N. Miller and Humbert in the amount of 4 million dollars. She also seeks punitive damages against George Masson, Jr. and Hamilton and Hamilton in the amount of 4 million dollars. She seeks punitive damages against Richard Agulia and Jeffrey Hardie in the amount of 4 million dollars each. She seeks 2 million dollars against Chong and Zanforlin, and 2 million dollars against Nathan Finkelstein and Horwitz and Finkelstein.

Respectfully submitted,

*Carol A. Forti*

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served all the above-named defendants with a copy of this Complaint by first-class mail, postage prepaid on April 3, 2006. W.C. & A.N. Miller was served through its registered agent, CT Corporation Systems, 1015 15th Street, Suite 1000, 1015 15th Street, Washington, D.C. 20005.

_____
Carol A. Forti