EXHIBIT

1

# SUMMARY OF OFFER FROM
# ALBERTO CHONG/LUISA ZANFORLIN

1. **PRICE:** $915,000  WITH ESCALATION

        A. $5,000 INCREMENTS OVER NEXT HIGHEST NET
        B. MAXIMUM $975,000.

2. **Deposit** $40,000

3. **SETTLEMENT:** April 29, 2002 to coincide with seller's settlement

4. **PROPERTY:**  CONVEYS "AS IS".  INSPECTION REQUESTED FOR INFORMATION ONLY.

5. **ALL DISCLOSURES SIGNED AND ATTACHED**


**ALBERTO CHONG:**  ECONOMIST, INTERAMERICAN DEV. BANK 202-623-1536

**LUISA ZANFORLIN:**  ECONOMIST, INTERNATIONAL MONETARY FUND  202-623-8783

**HOME PHONE:**  202-338-1517  add: 3313 "Q" STREET, NW

**Agent: JUNE HUMBERT, W.C. & A.N. MILLER  301-229-4000**
                                         301-229-4051  h.

06 0613
FILED

APR - 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# ESCALATOR CLAUSE ADDENDUM
### (Increase in Net Proceeds)

SPECIAL PROVISIONS attached to hereby made a part thereof, the Contract dated _April 15, 2002_ on Lot/Unit __54__, Block/Square __2113__, in the subdivision known as _Woodley_, located at _2936 Garfield Terrace NW_ _Washington, DC 20008_ between _Carol Forti_ (Seller) and _Alberto Chong and Luisa Zanforlin_ (Buyer):

The parties agree that the following provisions are incorporated into the referenced Contract and shall supercede any provisions to the contrary contained in said Contract:

1.   In the event that Seller receives one or more additional bonafide offers to purchase the Property with terms acceptable to Seller (the "Other Offers"), but which result in net proceeds of sale payable to the Seller equal to or greater than the net proceeds of sale payable to the Seller under this Contract, then the sales price stated in this Contract shall automatically increase, without further action on the part of Buyer, to an amount which generates net proceeds of sale to Seller equal to $ _5,000.00_ dollars in excess of the highest net proceeds of sale generated in such Other Offers. Notwithstanding the foregoing, the sales price under this Contract shall in no event exceed $ _975,000._ dollars.

2.   In the event of an increase in the sales price under this Contract pursuant to this Addendum, the loan amount provided for in the Sales Contract (check one):

        _____        Shall remain the same, and the Buyer shall pay any increase in cash at the time of settlement.

        _____        Shall automatically increase to be _____% of the new Sales Price of the Property, and Buyer shall pay any amount of the increase in Sales Price which is not included in the loan amount in cash at the time of settlement.

3.   Any change in the Sales Price under this Addendum shall be effective and binding upon Seller and Buyer when Seller presents the following to Buyer:

    A.   A copy of this Contract in ratified form, with the new Sales Price written into the following blank:

         NEW SALES PRICE = $ _950,000_

    B.   A copy of the Other Offer which forms the basis for the Sales Price increase in the previous paragraph.

SELLER:                                      BUYER:

_Carol A. Forti_                            _ACdoN_

                                            _____

Date: _4/15/02_                            Date: _April 15, 2002_

Exhibit A

**Greater Capital Area Association of REALTORS®, Inc.**

## REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on ___April 15___ 200_ (Contract Date) between ___Alberta Chavez & S. Lucas Zapata___ ("Purchaser") and ___Carol Hall___ ("Seller") who hereby confirm and acknowledge by their initials and signatures below the prior disclosure that in this real estate transaction _____ ("Listing Company") represents the Seller, and ___WC & AN Miller___ ("Selling Company") represents ☒ the Purchaser OR ☐ the Seller. The Listing Company and Selling Company are collectively referred to as ("Broker"). [If the brokerage firm is acting as a dual representative for both the Seller and the Purchaser, then the appropriate disclosure form is attached to and made a part of this Contract.]

1. **REAL PROPERTY.** The Purchaser will buy and the Seller will sell for the sales price ("Sales Price"), the Seller's entire interest in the land (with all improvements, rights and appurtenances described as follows: TAX Map/ID # __2113/an54__

Legal Description Lot(s) __54__    Block/Square __2113__    Section _____
Subdivision or Condominium __Woodley__    Unit # _____    Parking Space(s) # _____
County(s) __Washington__    Deed Book/Liber _____    Page/Folio # _____
Street Address __2936 Garfield Terrace NW__ __Washington__ State DC Zip Code __20008__ ("Property.")

2. **PERSONAL PROPERTY, FIXTURES AND UTILITIES.** The Sales Price includes the following personal property and fixtures: A. Any existing built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pumps, attic fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, smoke and heat detectors, tv antennas, exterior trees and shrubs and B. The items marked YES below as currently installed or offered.

| NO | | YES NO | | YES NO | | YES |
|---|---|---|---|---|---|---|
| ☐ | Stove or Range | ☒ ☐ Disposal | ☒ ☐ | Ceiling Fan(s) # | ☐ ☒ | Alarm System |
| ☒ | Cooktop | ☒ ☐ Freezer | ☐ ☒ | Washer | ☐ ☒ | Intercom |
| ☐ | Wall Oven(s) # | ☒ ☐ Window Fan(s) # | ☐ ☒ | Dryer | ☐ ☒ | Storage Shed(s) # |
| ☐ | Refrigerator(s) # | ☒ ☐ Window A/C Unit(s) # | ☐ ☒ | Furnace Humidifier | ☐ ☒ | Garage Opener(s) # 1 |
| ☒ | w/ice maker(s) # | ☒ ☐ Pool, Equip. & Cover | ☒ ☐ | Electronic Air Filter | | w/remote(s) # |
| ☐ | Dishwasher | ☒ ☐ Hot Tub, Equip. & Cover | ☐ ☒ | Central Vacuum | ☐ ☒ | Playground Equipment |
| ☒ | Built-In Microwave | ☐ ☒ Satellite Dish and Equip. | ☒ ☐ | Water Treatment System | ☐ ☒ | Wood Stove |
| ☐ | Trash Compactor | ☒ ☐ Window Treatments | ☒ ☐ | Exhaust Fan(s) | ☐ ☒ | Fireplace Screen/Doors |

Other: _____

WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING: (Check all that apply)
Water Supply:    ☒ Public ☐ Well    Hot Water:    ☐ Oil ☒ Gas ☐ Elec. ☐ Other
Sewage Disposal: ☒ Public ☐ Septic ☐ OR    Air Conditioning: ☐ Oil ☐ Gas ☒ Elec. ☐ Heat Pump ☐ Other
                                            Heating:    ☐ Oil ☒ Gas ☐ Elec. ☐ Heat Pump ☐ Other

3. **EQUIPMENT, MAINTENANCE AND CONDITION.** The Purchaser accepts the Property in the condition as of the Contract Date except as otherwise provided herein. The Seller warrants that the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as applicable), will be in normal working order as of the possession date. This Seller will deliver the Property in substantially the same condition as of the Contract Date and broom clean with all trash and debris removed. The Purchaser and the Seller will not hold the Broker liable for any breach of this paragraph.

4. **PRICE AND FINANCING**
   A. Down Payment                                              $ 950,000.00  / 945,000.00
   B. Financing  1. First Trust                                 $ _____
                 2. Second Trust                                $ _____
                 3. Seller Held Trust – addendum attached       $ _____
   TOTAL FINANCING                                              $ 945,000.00
   SALES PRICE                                                  $ 950,000.00

5. DEPOSIT. A. The Purchaser has made a deposit ("Deposit") with _NC 4 AN Trustee_ ("Escrow Agent") of $ _410,000_ by check and/or _____

B. The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification to conform with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and profits waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction.

6. DOWN PAYMENT. The balance of the down payment will be paid at Settlement by certified or cashier's check or by bank wired funds.

7. DEEDS OF TRUST.

A. FIRST DEED OF TRUST. The Purchaser will ☐ OBTAIN OR ☐ ASSUME a ☐ Conventional ☐ FHA ☐ VA ☐ Other ____
First Deed of Trust loan amortized over ____ years at a ☐ FIXED OR an ☐ ADJUSTABLE rate bearing (initial) interest of ____% per year at market rate available. Special Terms (if any): _____

B. SECOND DEED OF TRUST. The Purchaser will ☐ OBTAIN, OR ☐ ASSUME a Second Deed of Trust loan amortized over ____ years at a ☐ FIXED OR an ☐ ADJUSTABLE rate bearing (initial) interest of ____% per year at market rate available. Special Terms (if any): _____

C. ASSUMPTION ONLY: Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser. If the Purchaser assumes the Seller's loan; (i) The Purchaser and the Seller ☐ will, OR ☐ will not obtain a release of the Seller's liability to the US Government for the repayment of the loan by Settlement. (ii) The Purchaser and Seller ☐ will, OR ☐ will not obtain substitution of the Seller's VA entitlement by Settlement. (iii) Balances of any assumed loans, secondary financing and cash down payments are approximate.

8. ADDITIONAL FINANCING TERMS.

A. ☐ CONVENTIONAL FINANCING. Based on the financing terms specified in this Contract, the Seller will pay $ ____ toward the Purchaser's charges, (including but not limited to loan origination fees, discount fees, prepaids or other charges as allowed by the lender). The Purchaser will pay all remaining Purchaser's charges. If applicable, the Purchaser will pay at Settlement, or finance any extra private mortgage insurance.

If the lender's appraisal is not equal to or greater than the Sales Price, the Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. The Purchaser's election to proceed with consummation of this Contract without regard to the amount of the appraised valuation will then have application to the Purchaser of the appraised value. If the Purchaser does not make this election, it will be Seller's option to lower the Sales Price to the appraised value and the Contract will remain in full force and effect at the lower Sales Price. If the Seller does not make this election, the parties may agree to mutually acceptable terms. Each election must be made by Notice within 3 Days after Notice from the other party. The parties will immediately sign any appropriate amendments. If the parties fail to agree, this Contract will become void.

B. ☐ VA OR ☐ FHA FINANCING.

The Purchaser will ☐ pay at Settlement, OR ☐ finance any VA Funding Fee or FHA Initial Mortgage Insurance Premium. Based on the financing specified in this Contract, the Seller will pay $ ____ toward the Purchaser's charges (including but not limited to loan origination fees, buydown or subsidy fees, prepaids or other charges as allowed by the lender) except that the total amount of any lender charges which cannot by law or regulation be charged to the Purchaser will be paid by the Seller. These charges, if any, will first be deducted from any lender credit, on the remaining balance, if any, will then be applied to the Purchaser's other charges. The Purchaser will pay all remaining Purchaser's charges. If VA or FHA financing applies, it is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been (the) in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner or Direct Endorsement Lender/Department of Veterans Affairs or the Lender Appraisal Processing Program (LAPP) underwriter setting forth the appraised value of the Property (excluding closing costs) of not less than $ ____. The Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. The APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGE THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT/DEPARTMENT OF VETERANS AFFAIRS WILL INSURE/GUARANTEE. HUD/DEPARTMENT OF VETERANS AFFAIRS AND THE MORTGAGEE DOES NOT WARRANT THE VALUE NOR THE CONDITION OF THE PROPERTY. THE PURCHASER SHOULD SATISFY HIMSELF/HERSELF THAT THE PRICE AND CONDITION OF THE PROPERTY ARE ACCEPTABLE.

If VA financing applies, the Purchaser agrees that should the Purchaser elect to complete the purchase at an amount in excess of the maximum value established by the Department of Veterans Affairs, the Purchaser shall pay such excess amount in cash from a source which the Purchaser agrees to disclose to the Department of Veterans Affairs, and which the Purchaser represents will not be borrowed funds except as approved by the Department of Veterans Affairs. The Purchaser's exercise of the option shall be made in writing within 3 Days of the notification to the Purchaser of the appraised valuation or the Contract shall become void.

If FHA financing applies, the Purchaser's exercise of the option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation shall be made in writing within 3 Days of the notification to the Purchaser of the appraised value, or this Contract shall become void. The FHA amount may be approximate because the financed acquisition costs cannot be determined until the Settlement.

9. LOAN APPLICATION AND APPROVAL.

A. FINANCING APPLICATION. The Purchaser will make written application for the financing of consummation called for in this Contract ("Specific Financing") within 7 days after Date of Ratification. The Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information about the progress of the loan application and loan approval process.

B. LENDER'S APPROVAL OF FINANCING. This Contract is contingent until _____ Days after Date of Ratification ("Deadline") upon Purchaser Delivering to the Seller a letter from the lender stating that the Purchaser is approved for the Specified Financing ("Lender's Letter"). Upon Seller's receipt of the Lender's Letter, this Contract is no longer contingent on the Purchaser being approved for the Specified Financing and this Contract will remain in full force and effect. TIME IS OF THE ESSENCE.

(1) If the Purchaser does not Deliver the Lender's Letter by the Deadline, the lender's approval contingency will continue, unless the Seller's option gives Notice to Purchaser that this Contract will become void. If the Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time;
    a. Purchaser Delivers to Seller the Lender's Letter; OR
    b. Purchaser removes this LENDER'S APPROVAL CONTINGENCY and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.

(2) If the Purchaser may subsequently eliminate financing for Specified Financing provider:
    a. There is no additional expense to the Seller; and
    b. The Settlement Date is not delayed.

(3) If prior to ratification or removal of the LENDER'S APPROVAL CONTINGENCY the Purchaser receives a written rejection for the Specific Financing and Delivers a copy of the written rejection to the Seller, this Contract will become void.

C. **DEFAULT.** The Purchaser will be in default if Settlement does not occur on the Settlement Date because the Purchaser:

(i) Fails to lock-in the interest rate(s) at specified above and the rate(s) increase so that the Purchaser no longer qualifies for such financing; OR

(ii) Applies for, and fails to obtain, alternative financing instead of the Specified Financing, unless the Seller consents in writing to the alternative financing terms, in which case the alternative financing becomes the Specified Financing; OR

(iii) Fails to comply with the lender's reasonable requirements in a timely manner; OR

(iv) Fails to immediately give Notice to the Seller or the Broker of any material adverse changes in the Purchaser's assets, liabilities, or income; OR

(v) Does not have the down payment, closing fees and any other funds to settle as provided in this Contract; OR

(vi) Does or fails to do any act following the Date of Ratification that prevents the Purchaser from obtaining the financing; OR

(vii)    Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing.

10. **PURCHASER'S REPRESENTATIONS.** The Purchaser [X] will, OR [ ] will not occupy the Property as the Purchaser's principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property. The Selling Company [X] is, OR [ ] is not authorized to disclose to the Listing Company and Seller the appropriate financial or credit information statement provided to the Selling Company by the Purchaser. The Purchaser acknowledges that the Seller is relying upon all of the Purchaser's representations provided without limitation the accuracy of financial or credit information given to the Seller, Broker or the Lender by the Purchaser.

11. **ACCESS TO PROPERTY.** The Seller will provide the Broker, the Purchaser, Inspectors representing the Purchaser and representatives of lending institutions for appraisal purposes, reasonable access to the Property to comply with this Contract. The Purchaser and/or the Purchaser's representatives will have the right to make an Inspection prior to Settlement and/or occupancy, at which time the Seller will have all utilities in service.

12. **WELL AND SEPTIC.** If the Property is on well and/or septic systems, the [ ] Purchaser, at Purchaser's expense OR [ ] Seller, at Seller's expense, will furnish the Purchaser on or before Settlement with a certificate dated not more than 30 days prior to Settlement from the [ ] appropriate local government authority, or [ ] a private company, indicating that: A. The well water supply is free from the acceptable level of coliform bacteria and; B. The septic system appears to be functioning satisfactorily, and if known by public records, was installed pursuant to a valid health department permit. If either system is found defective or substandard according to the certificate, the Seller will take appropriate remedial action at the Seller's expense.

13. **TERMITE INSPECTION.** The [ ] Purchaser at the Purchaser's expense OR the [ ] Seller at the Seller's expense, will furnish a written report from a pest control firm dated not more than [ ] 30 OR [ ] 60 days prior to Settlement showing proof of existing or non-existing infestation within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) any type of visible evidence of active, dormant and other wood destroying insects, and free from visible structural insect damage. Any extermination and structural repairs identified in the inspection report will be at the Seller's expense.

14. **REPAIRS.** If, as a condition of providing financing under this Contract, the lender requires repairs to be made to the Property, then the Purchaser will give Notice to the Seller of the lender's required repairs. Within 5 Days after Notice, the Seller will give Notice to the Purchaser whether the Seller will make the repairs. If the Seller will not make the repairs, the Purchaser will give Notice to the Seller within 5 Days after the Seller's Notice whether the Purchaser will make the repairs. If neither the Seller nor the Purchaser will make the repairs, then this Contract will become void. This does not nullify the Seller from responsibilities set forth in the paragraphs titled PERSONAL PROPERTY, FIXTURES AND UTILITIES; EQUIPMENT, MAINTENANCE AND CONDITION; WELL AND SEPTIC; TERMITE INSPECTION; or OTHER TERMS, or any terms specifically set forth in this Contract and any addenda.

15. **DAMAGE OR LOSS.** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with the Seller until the execution and delivery of the deed of conveyance.

16. **TITLE.** The report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to enable the title report and survey after which title Contract, at the option of the Seller, may be terminated and the Deposit will be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by the Purchaser. The Seller will pay any special assessments and will comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date. Title will be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, the Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action will be taken promptly by the Seller at the Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. The Seller will convey the Property by general warranty deed with English covenants of title (Virginia; general warranty deed (West Virginia); special warranty deed (DC and Maryland). The Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the Lender, the insurance company, Settlement Agent, or governmental authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders.

17. **POSSESSION DATE.** Unless otherwise agreed to in writing between the Seller and the Purchaser, the Seller will give possession of the Property at the Settlement. If the Seller fails to do so and occupies the Property beyond the Settlement, the Seller will be a tenant by sufferance of the Purchaser and hereby expressly waives all notice to quit as provided by law. The Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. The Seller will pay any damages and costs incurred by the Purchaser including reasonable attorney fees.

18. **SETTLEMENT.** The Seller and the Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, __April 29, 2002__ ("Settlement Date") except as otherwise provided in this Contract.

19. **SETTLEMENT AGENT.** Deal lender in Virginia, see the Virginia Jurisdictional Addendum. The Purchaser selects _____ ("Settlement Agent") to conduct the Settlement. Either party may state their own contact. The Purchaser agreed to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement. The Settlement Agent will order the title search and survey if required.

9 a.m.    April 29, 2002

Allison :

Bethesda, MD

Regional Sales Contract - 8/99 K1263    Page 3 of 5    Please Initial Purchaser [initials]  Seller [initials]

20. FEES. Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to the Seller, costs of releasing existing encumbrances, appropriate legal fees and any other proper charges assessed to the Seller will be paid by the Seller. Fees for the title search (including an abstract), appropriate legal fees and any other proper charges assessed to the Purchaser will be paid by the Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Broker's Terms are covered in the appropriate jurisdictional addenda).

21. BROKER'S FEE. The Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") as set forth in the listing agreement and to disburse the compensation allowed by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation in the Listing Company.

22. ADJUSTMENTS. Rents, dues, water and sewer charges, front foot benefit and house connection charges, condominium and/or homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of the Purchaser. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that recorded assessments for improvements scheduled prior to Settlement, whether assessments have been levied or not, will be paid by the Seller or allowance made at Settlement. If a Deed of Trust is assumed, interest will be adjusted to the Settlement Date and the Purchaser will reimburse the Seller for existing escrow accounts, if any.

23. ATTORNEY'S FEES. In any action or proceeding involving a dispute between the Purchaser and the Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s). In the event a dispute arises including in the Broker being made a party to any litigation or if the Broker is required to bring litigation to collect the Broker's Fee, the Purchaser and Seller agree to indemnify the Broker, its employees, and/or licensees for all attorney fees and costs of litigation, unless the litigation results in a judgment against the Broker, its employees and/or licensees.

24. PERFORMANCE. Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

25. DEFAULT. If the Purchaser fails to complete Settlement, at the option of the Seller, the Deposit may be forfeited as liquidated damages and not as a penalty, in which event the Purchaser will be relieved from further liability to the Seller. If the Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of the Purchaser's liability in the event of a default. [Handwritten indecipherable...] default the Deposit as a refundable agreement between the Seller and Purchaser, the Seller may recover any of the costs necessary to affect the Default. A reasonable Broker's fee, together with [illegible] ... Upon such disbursement from the Deposit Account, the Settlement Agent shall be relieved from any further liability to all parties. If the Seller fails to complete Settlement, the Purchaser will have all legal or equitable remedies, including specific performance and/or damages. If either the Seller or Purchaser refuses to execute a release of Deposit when requested to do so in writing and a court finds that they should have executed the agreement, the party who so refused to execute a release of Deposit will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. The Seller and Purchaser hereby direct an Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that the Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit except in the case of the Escrow Agent's gross negligence or willful misconduct. If either the Purchaser or the Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, appraisal, survey and the Broker's Fee in full.

26. OTHER DISCLOSURES. The Purchaser and Seller are advised to seek professional advice concerning the condition of the Property or other legal and tax matters. The following subparagraphs disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

   A. PROPERTY CONDITION. See EQUIPMENT, MAINTENANCE AND CONDITION Paragraph. Various insurance products and home water insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation, solar, sewer or septic or condition, flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental law; easements or other documents; airport or aircraft noise; planned land use; roads or highways; and construction materials and/or hazardous materials including without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

   B. LEGAL REQUIREMENTS. All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and delivery, this Contract becomes a legally binding agreement. Any changes must be made in writing.

   C. FINANCING. Mortgage rates and associated charges vary with financial institutions and the marketplace. The Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may not be substantial to own deferred payments on the due dates. The Purchaser has not relied upon any representations regarding the future availability of mortgage money, interest rates, or the rescheduling of any such lump sum payment.

   D. BROKER. The Broker may from time to time engage in the practice of providing home mortgage loan, title insurance, mortgage loan, and settlement and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee described herein, the Broker may receive compensation related to other services provided in the course of this transaction. The Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, lender, insurer, tender, appraiser, surveyor, structural engineer, home inspector or other expert. Professional service should be obtained.

27. ASSIGNABILITY. This Contract may not be assigned without the written consent of the Purchaser and the Seller. If the Purchaser and the Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

28. DEFINITIONS. "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the following Day and the time period will end at 5 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then Settlement will be on the prior business day. "Date of Ratification" means the date of final acceptance in writing of all the terms of this Contract (not the date of expiration or removal of any contingencies). "Delivery" means hand-carried, sent by overnight delivery service, or facsimile transmission or provided in the NOTICES Paragraph, or when receipt is acknowledged in writing. In the event of overnight delivery service, Delivery will be deemed to have been made on the Day following the sending. The masculine includes the feminine and the singular includes the plural.

Please Initial Purchaser _____ Seller _____

29. NOTICES. All notices ("Notice") required to be given by this Contract will be in writing and will be effective as of the date on which such Notice is Delivered.

A. Addressed to the Seller at: _293 lo Canfield Terrace, Lexington DC 20008_ OR transmitted by facsimile to (_____)
B. Addressed to the Purchaser at: _9315 "Q" St. NW_   _Washington DC 20007_ OR transmitted by facsimile to (_____)

30. MISCELLANEOUS. This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same Instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or hand-written provisions included in this Contract will control all pre-printed provisions that are in conflict.

31. VOID CONTRACT. If this Contract becomes void, both parties will immediately execute a release directing that the Deposit be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph.

32. ADDITIONS. The appropriate JURISDICTIONAL ADDENDUM and LEAD BASED PAINT ADDENDA (if applicable) must be attached and made a part of this Contract. The following are made a part of this Contract:

☒ Yes  STATE JURISDICTIONAL ADDENDUM ☒ DC ☐ VA ☐ MD ☐ WVA ☐ Other _____
☐ Yes  ☒ No  HOME INSPECTION CONTINGENCY                    ☒ Yes ☐ No  LEAD - BASED PAINT DISCLOSURE FORM
☐ Yes  ☒ No  RADON TESTING CONTINGENCY                       ☐ Yes ☒ No  LEAD - BASED PAINT INSPECTION CONTINGENCY
☐ Yes  ☒ No  SALE OF HOME CONTINGENCY                        ☐ Yes ☒ No  FHA HOME INSPECTION NOTICE
☐ Yes  ☒ No  CONDO/COOP ADDENDUM (DC and MD)
☐ Yes  ☒ No  HOME WARRANTY POLICY paid for by: ☐ Purchaser or ☐ Seller.
                                 Cost not to exceed $_____ Warranty provider to be _____
☐ Yes  ☒ No  OTHER (specify): _____

33. OTHER TERMS. _Property conveys in "AS IS" Condition._
_Commission 3% to be paid to WC & AN Miller at settlement._
_Purchaser requests permission to do a home inspection for_
_information purposes only. Contract shall not be contingent_
_on such inspection._
_Seller as to allow access for buyers inspector._

34. ENTIRE AGREEMENT. This Contract will be binding upon the parties, and such of their respective heirs, executors, administrators, successors and personal assigns. The provisions hereof will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the appropriate jurisdiction.

SELLER:                                              PURCHASER:
4/15/02  _Carol Forti_              (SEAL)      4/15/02  _[signature]_              (SEAL)
Date        Signature                                   Date         Signature
_____  _____           (SEAL)      April 15 2002  _[signature]_       (SEAL)
Date        Signature                                   Date         Signature

Date of Ratification (see DEFINITIONS PARAGRAPH) _____

For Information purposes only:
Listing Company's Name and Address:                Selling Company's Name and Address:
                                                   WC & AN Miller
_Carol Forti_                                      4701 Sangamore Road
                                                   Bethesda, MD. 20816
Office # _202-462-1847_ FAX # _____              Office # _301-229-4000_ FAX # _301-229-48_
MRIS Broker Code: _____ MRIS Office ID: _____      MRIS Broker Code: _____ MRIS Office ID: _____
Agent Name _____                               Agent Name _June C. Humbert_
Agent MRIS ID# _____                           Agent MRIS ID# _7911_ _(30893)_
Agent Email Address _____                      Agent Email Address _Bhum36@erols.com_

© 200_. This is a copyright form issued by certain REALTOR® Associations (Associations®). This copyright form must be completed exclusively for the use of REALTORS® and members of the Associations who are REALTORS®. Any use or reproduction which does not have the express authorization of the copyright holder and/or Local Association being set forth in a clearly visible manner for any such reproduction. Any reproduction of this form by REALTORS® or members of Associations, or any use of this form that has not been authorized is a violation of Association.

Regional Sales Contract - 9/99 K1285              Page 5 of 5



**Washington, DC Jurisdictional Addendum**
(REQUIRED NOTICE AND DISCLOSURE ADDENDUM
FOR USE WITH THE REGIONAL CONTRACT)



**Greater Capital Area Association of REALTORS®, Inc.**

The Contract of Sale between _Carol Forti_ , Seller, and
_Alberto Chong and Diana Gorodin_ , Buyer, dated _April 15, 2002_
for the sale of Lot _56_ , Square _11_ , Parking Space _1_
Subdivision/Condominium Project , also known as
_2936 Norfolk Terrace_ etc), Washington, DC, _20008_
(Address) (Zip)
is hereby amended by the incorporation of the following paragraphs, which shall supersede any provisions in the Contract.

1. **LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residence Property ☒ was built prior to 1978 OR ☐ was not built prior to 1978 OR ☐ building date is uncertain. If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratifiable unless it includes, and the Seller and Buyer both accept, the following two mandatory forms: A. Lead-Based Paint Disclosure Form, AND B. Lead-Based Paint Inspection Contingency Addendum OR Waiver of Lead-Based Paint Inspection Contingency. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_Cdf_ Seller's Initials     _AC / DG_ Buyer's Initials

2. **SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-951 prior to the submission of the offer ☒ Yes ☐ No.

_AC / DG_ Buyer's Initials

3. **RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

4. **D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____.
For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

5. **TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.
   a. If the Property is tenant occupied, Buyer hereby certifies that Buyer ☒ will ☐ will not occupy the Property.

   b. The Property is sold and shall be conveyed free of existing tenancy except as follows:
   _n/a_
   (hereinafter the "Tenancy)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld) Seller shall not modify the terms of or terminate such tenancy, except for non-payment of rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _____ (date), Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.

©2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

GCAAR # 118  Washington DC Jurisdictional Addendum     PAGE 1 OF 2

Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property or shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

**6. UNDERGROUND STORAGE TANK DISCLOSURE.** (Applicable to single family sales only.)
In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows:

_____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract.
Buyer _____

**7. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) or the purchase price is less than or equal to Three Hundred Thousand Dollars ($300,000.00) and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

**8. CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property ☐ is ☐ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is $ _N/A_ per _N/A_

**9. NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent or Designated Representative assigned to the Seller.) Notices to the Purchaser shall be effective when delivered to the Buyer or an Agent of the Purchaser named in the contract (including a Dual Agent or Designated Representative assigned to the Purchaser.) "Purchaser" means "Buyer" and vice versa.

**10. INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties acknowledge and authorize Escrow Agent to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to the Buyer at time of settlement. For accounting purposes, the Buyer's social security number is _____. A Processing fee may be charged to the party receiving the interest by the above Escrow Agent for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to the Seller.

_____    _____
Seller              Date        Buyer              Date
                                        Mach 11 02

_____    _____
Seller              Date        Buyer              Date
                                        4/15/02

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Document and Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

GCAAR # 11s  Washington DC Jurisdictional Addendum    Page 2 of 2    3/01

06/13/02  10:34 FAX                                                    @007

## FEDERAL LEAD PAINT DISCLOSURE
### (Sales)
Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

RE: 2936 GARFIELD TERRACE, N.W.
    Property Address

### LEAD WARNING STATEMENT
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such real property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### SELLER'S DISCLOSURE
(a)  Presence of lead-based paint and/or lead-based paint hazards (check one below):
☐  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

☒  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the seller (check one below):
☐  Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

☒  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### PURCHASER'S ACKNOWLEDGMENT
(c)  Purchaser has received copies of all information listed above.  ☒Yes  ☐No  ☐None Above
(d)  Purchaser has received the pamphlet Protect Your Family From Lead In Your Home.  ☒Yes  ☐No
(e)  Purchaser has (check one below):
☐  Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
☒  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### AGENT'S ACKNOWLEDGMENT
Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

### CERTIFICATION OF ACCURACY
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | |
|---|---|---|
| Seller _Carol R. Fati_  Date 4/8/02 | Buyer _ACKMO_  Date 4/8/02 |
| Seller | Date | Buyer _Dave_  Date April 8,2002 |
| Agent | Date | Agent _Jane C. Hubert_  Date 4/8/02 |

AUG-05-2002  15:04                                                    P.18

AUG-05-2002  15:04

01/23/02 13:02 PST                                                    B006

SELLER'S DISCLOSURE STATEMENT

Property Address: 2936 Garfield Terra, N.W. Wash, DC-20008

Condominium Unit: _____    Cooperative Unit: _____

Purpose of Statement: This Statement is a disclosure by the Seller of the condition of the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering, or any other specific area related to the construction of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Seller's Disclosure: The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the Seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller is hereby required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent(s), if any, to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent(s), if any. This information is a disclosure only and is not intended to be part of any contract between Buyer and Seller.

If this is a sale of a condominium unit or cooperative unit, or lot in a homeowners association, this disclosure form provides information only as to the unit as defined in the governing documents of the association or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

A.   Property Conditions, Improvements & Additional Information:

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Water System: | | | | |
| Well supplied | | | | |
| City supplied | | | | |
| Working order? | | | | |
| 2. Sewer System: | | | | |
| Septic tank | | | | |
| City supplied | | | | |
| Working order? | | | | |
| 3. Insulation | | | | |
| 4. Does formaldehyde foam insulation | | | | |
| 5. Leaks in roof | | | | |
| 6. Age of roof | | | | |
| 0-5 years | | | | |
| 5-10 years | | | | |
| 10-15 years | | | | |
| 15+ years | | | | |
| 7. Wall defects | | | | |
| 8. Floor defects | | | | |
| 9. Foundation defects | | | | |
| 10. Window defects | | | | |
| 11. Evidence of water in basement | | | | |
| 12. Heating system: | | | | |
| General | | | | |
| Gas | | | | |
| Oil | | | | |
| Electric | | | | |
| Heat pump | | | | |
| Working order? | | | | |
| Age of Heating System: | | | | |
| 0-5 years | | | | |
| 5-10 years | | | | |
| 10+ years | | | | |
| 13. Air Conditioning System: | | | | |
| General | | | | |
| Window | | | | |
| Gas | | | | |
| Electric | | | | |
| Heat Pump | | | | |
| Working order? | | | | |
| Age of Air Conditioning System: | | | | |
| 0-5 years | | | | |
| 5-10 years | | | | |
| 10+ years | | | | |
| 14. Plumbing System: | | | | |
| Copper | | | | |
| Galvanized | | | | |
| Other | | | | |
| Working order? | | | | |
| Any known problems? | | | | |

D7159W-DICAP

2

04/13/92 16:03 FAX ☐☐☐☐

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 15. Electrical System: |  |  |  |  |
| Working order? | ✓ | | | |
| Any known problems? | | ✓ | | |
| 16. History of Infestation  *None* | | | | |
| Termites | | ✓ | | |
| Carpenter Ants | | ✓ | | |
| Rodents | | ✓ | | |
| Other | | ✓ | | |
| 17. Environmental Problems  *None* | | | | |
| Asbestos | | ✓ | | |
| Radon Gas | | ✓ | | |
| Formaldehyde | | ✓ | | |
| Contaminated Soil | | ✓ | | |
| Other | | ✓ | | |

Provide explanations of the foregoing responses here. Attach additional sheets if necessary: *All outlets were replaced in zone 1 of entire trim was located in zone 1 would refinished. Oak floors were present — cleaned in zone zone! Oak floors were located and polyurethaned in 1st zone!*

B. Appliances/Systems/Services: The items below are in working order:

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Range/Oven | ✓ | | | |
| 2. Dishwasher | ✓ | | | |
| 3. Refrigerator | ✓ | | | |
| 4. Range Hood/Fan | ✓ | | | |
| 5. Disposal | ✓ | | | |
| 6. TV Antenna, TV rotor & controls | ✓ | | | |
| 7. Drapes & shades | ✓ | | | |
| 8. Garage door opener & remote control | | | | ✓ |
| 9. Alarm system | | | | ✓ |
| 10. Intercom system | | | | ✓ |
| 11. Central vacuum | | | | ✓ |
| 12. Attic fan | | | | ✓ |
| 13. Pool heater, wall liner & equip. | | | | ✓ |
| 14. Microwave oven | ✓ | | | |
| 15. Trash compactor | | | | ✓ |
| 16. Ceiling fan | ✓ | | | |
| 17. Sauna/Hot tub | | | | ✓ |
| 18. Lawn sprinkler system | | | | ✓ |
| 19. Water heater | ✓ | | | |
| 20. Water softener/conditioner | | | | ✓ |
| 21. Sump pump | ✓ | | | |
| 22. Furnace | ✓ | | | |
| 23. Humidifier | ✓ | | | |
| 24. Electronic air filter | | | | ✓ |
| 25. Solar heating system | | | | ✓ |
| 26. Fireplace & Chimney | ✓ | | | |
| 27. Wood burning system | ✓ | | | |
| 28. Smoke Detector(s) | ✓ | | | |
| 29. Carbon Monoxide Detector(s) | | | | ✓ |

Provide any explanation of the foregoing responses here. Attach additional sheets if necessary: *Cap on dishwasher sun poss leaks to dist. Water dishes unsuitably if easy to put in receptacle and cap is not elected*

UNLESS OTHERWISE AGREED, ALL DISCLOSABLE APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DAYS OF CLOSING.

091399wdcwr                    3

04/13/02  15:93 FAX                                        🖂 008

C. Other items are you aware of the following?

3. Features of the property shared in common with the adjoining landowners?

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| Walls |  |  |  |  |
| Seller responsible for maintenance |  |  |  |  |
| Fences |  |  |  |  |
| Seller responsible for maintenance |  |  |  |  |
| Roads |  |  |  |  |
| Seller responsible for maintenance |  |  |  |  |
| Driveway |  |  |  |  |
| Seller responsible for maintenance |  |  |  |  |
| Other (list) |  |  |  |  |
| Seller responsible for maintenance |  |  |  |  |
| 3. Encroachments |  |  |  |  |
| 3. Easements |  |  |  |  |
| 4. Zoning violations |  |  |  |  |
| 5. Nonconforming uses |  |  |  |  |
| 6. Structural modifications |  |  |  |  |
| 7. Settling problems |  |  |  |  |
| 8. Flooding problems |  |  |  |  |
| 9. Drainage problems |  |  |  |  |
| 10. Structural problems |  |  |  |  |
| 11. Grading problems |  |  |  |  |
| 12. Damage to property from: |  |  |  |  |
| Fire |  |  |  |  |
| Wind |  |  |  |  |
| Floods |  |  |  |  |
| Land-slide |  |  |  |  |

Provide any explanations of the foregoing responses here. Attach additional sheets, if necessary: *No explanations necessary. Foregoing is self-explanatory*

The Seller has lived in the residence on the property from _Jaly 23, 1997_ (date) through (date) and _____ (date). The Seller has owned the property since _____ (date) and ____ the statements herein only since that date. The Seller has indicated above as to the condition of all the items based on information actually known to the Seller.

Seller certifies that the information in this Statement is true and correct to the best of Seller's actual knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY.

Seller _Carl W. Fox_                          Date _April 13, 2002_

Seller _____                  Date _____

BUYER HEREBY EXPRESSES AN INTENT TO RESIDE IN THE PROPERTY TO BE TRANSFERRED.

BUYER HAS READ AND ACKNOWLEDGES RECEIPT OF THIS STATEMENT AND ACKNOWLEDGES THAT THIS STATEMENT IS MADE BASED UPON THE SELLER'S ACTUAL KNOWLEDGE AS OF THE ABOVE DATES. THIS STATEMENT IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES WHICH BUYER MAY WISH TO OBTAIN; AND IS NOT A STATEMENT, REPRESENTATION OR WARRANTY BY ANY OF THE SELLER'S AGENTS OR ANY SUB-AGENTS AS TO THE PRESENCE OR ABSENCE OF ANY CONDITION, DEFECT OR MALFUNCTION OR AS TO THE NATURE OF ANY CONDITION, DEFECT OR MALFUNCTION.

Buyer _____                  Date _4/15/2002_

Buyer _____                  Date _April 15, 2002_

*"Property is sold in 'AS IS' condition"*

If either party does not agree to dual agency, the real estate company may withdraw the agency agreement for that particular property with either the buyer or seller, or both. If the seller's agreement is terminated, the seller must then either represent him or herself or arrange to be represented by an agent from another real estate company. If the buyer's agreement is terminated, the buyer or tenant may choose to enter into a written buyer agency agreement with an agent from a different company. Alternatively, the buyer or tenant may choose not to be represented by an agent of his or her own but simply to receive assistance from the seller's agent, from another agent in that company, or from a cooperating agent from another company.

No matter what type of agent you choose to work with, you have the following rights and responsibilities in selling or buying or renting property:

> Real estate agents are obligated by law to treat all parties to a real estate transaction honestly and fairly. They must exercise reasonable care and diligence and maintain the confidentiality of clients. They must not discriminate in the offering of properties; they must promptly present each written offer or counteroffer to the other party; and they must answer questions truthfully.

> Real estate agents must disclose all material facts that they know or should know relating to a property. An agent's duty to maintain confidentiality does not apply to the disclosure of material facts about a property.

> All agreements with real estate agents should be in writing and should explain the duties and obligations of the agent. The agreement should explain how the agent will be paid and any fee-sharing agreements with other agents.

> You have the responsibility to protect your own interests. You should carefully read all agreements to make sure they accurately reflect your understanding. A real estate agent is qualified to advise you on real estate matters only. If you need legal or tax advice, it is your responsibility to consult a licensed attorney or accountant.

Any complaints about a real estate agent may be filed with the Real Estate Commission at 500 North Calvert Street, Baltimore, MD 21202. (410) 230-6200.

This notice is information required by law and is NOT A CONTRACT

We, the ☒ Sellers/Landlord ☐ Buyers/Tenants acknowledge receipt of a copy of this disclosure and

that _W C of Ann Millens_ _____ (firm name)

And _June C. Humbert_ _____ (salesperson) are working as:

☐ Seller/landlord's agent
☐ Cooperating agent
☒ Buyer's agent
☐ Dual agent (See Consent for Dual Agency form)
☒ (I) may check more than one box)

_Carol H. Fate_    _4/15/02_        _____    _____
Signature          Date            Signature          Date

I certify that on this date I made the required agency disclosure to the individuals identified below and they were unable or unwilling to acknowledge receipt of a copy of this disclosure statement.

_June C. Humbert_    _4/15/02_
Signature of agent    Date

_Carol Fatic PM_
Name of individual to whom disclosure was made        Name of individual to whom disclosure was made

Form # 1301G.1        1/99



**Greater Capital Area Association of REALTORS®, Inc.**



<u>DISCLOSURE OF BROKERAGE RELATIONSHIP</u>

THE UNDERSIGNED DO HEREBY ACKNOWLEDGE DISCLOSURE THAT:

THE LICENSEE _WC & An Miller_
(NAME OF FIRM)

REPRESENTS THE FOLLOWING PARTY IN A REAL ESTATE TRANSACTION:

_____ SELLER(S)    OR    ✓    BUYER(S)

_____ LANDLORD(S)    OR    _____ TENANT(S)

_4/15/02_    _Carl C. Forli_
DATE    NAME

_____    _____
DATE    NAME

"This is a temporary form – subject to future revision by the D.C. Real Estate Commission"

**GCAAR-143**    Page 1 of 1

# FEDERAL LEAD PAINT DISCLOSURE
## (Sales)
Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

RE: _2936 GARFIELD TERRACE, NW_
Property Address

## LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

## SELLER'S DISCLOSURE

(a)     Presence of lead-based paint and/or lead-based paint hazards (check one below):
        ☐  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

        _____

        ☒  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)     Records and reports available to the seller (check one below):
        ☐  Seller has provided the purchaser with all available records and report pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

        _____

        ☒  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

## PURCHASER'S ACKNOWLEDGMENT

(c)     Purchaser has received copies of all information listed above. ☒Yes   ☐ No      ☐ None listed

(d)     Purchaser has received the pamphlet Protect Your Family From Lead in Your Home. ☒Yes   ☐ No.

(e)     Purchaser has (check one below):
        ☐  Received a ~~10-day~~ 5-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

        ☒  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

## AGENT'S ACKNOWLEDGMENT

        Agent has informed the seller of the seller's obligations Under 42 U.SC. 4582(d) and is aware of his/her responsibility to ensure compliance.

## CERTIFICATION OF ACCURACY

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| _Paul A. Forti_   4/12/02 | | _Adams_   4/15/02 | |
| Seller                    Date | | Buyer                    Date | |
| | | _Gregory Clark_   4/15/02 | |
| Seller                    Date | | Buyer                    Date | |
| | | _Rene C. Humbert_   4/15/02 | |
| Agent                    Date | | Agent                    Date | |



# Washington, DC Jurisdictional Addendum
(REQUIRED NOTICE AND DISCLOSURE ADDENDUM
FOR USE WITH THE REGIONAL CONTRACT)



## Greater Capital Area Association of REALTORS®, Inc.

The Contract of Sale between _Carol Forty_ , Seller, and
_Alberto Chong and Luisa Zanforlin_ ,Buyer, dated _April 15, 2002_
for the sale of Lot _540_ Square _2118_ Parking Space _—_
Subdivision/Condominium Project _____ also known as
_2936 Banfield Terrace NW_ , Washington, DC, _20008_
     (Address)                                                    (Zip)
is hereby amended by the incorporation of the following paragraphs, which shall supersede any provisions to the contrary in the Contract.

**1. LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residential Property ☒ was built prior to 1978 OR ☐ was not built prior to 1978 OR ☐ building date is uncertain. If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratified unless it includes, and the Seller and Buyer both accept, the following two amendatory forms: A. Lead-Based Paint Disclosure Form, AND B. Lead-Based Paint Inspection Contingency Addendum, OR Waiver of Lead-Based Paint Inspection Contingency. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_Caf_ / _____ Seller's Initials          _AL_ / _XX_ _____ Buyer's Initials

**2. SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-951 prior to the submission of the offer ☒ Yes ☐ No.

_XX_ / _XX_ _____ Buyer's Initials

**3. RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

**4. D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____
_Urban Land Sassafras_ .
For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

**5. TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.
     a.  If the Property is tenant occupied, Buyer hereby certifies that Buyer ☒ will ☐ will not occupy the Property.

     b.  The Property is sold and shall be conveyed free of existing tenancy except as follows:
_N/A_
     (hereinafter the "Tenant(s)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld) Seller shall not modify the terms of or terminate such tenancy, except for non-payment of rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _N/A_ (date), Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

04/13/06  18:50:55

SELLER'S DISCLOSURE STATEMENT

Property Address: 2936 Garfield Terrace, N.W., Wash, DC 20008

Condominium Unit: _____   Cooperative Unit: _____

**Purpose of Statement:** This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering, or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the Seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's agent is required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent(s) to provide a copy of this statement to any prospective buyer or agent of such prospective buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent(s), if any. This information is a disclosure only and is not intended to be part of any contract between Buyer and Seller.

If this is a sale of a condominium unit or cooperative unit, or lot in a homeowners association, this disclosure form provides information only as to the unit (as defined in the governing documents of the association) or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

A.   **Property Conditions, Improvements & Additional Information:**

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Water system: |  |  |  |  |
|     Well supplied |  |  |  |  |
|     City supplied | ✓ |  |  |  |
|     Working order? | ✓ |  |  |  |
| 2. Sewer system: |  |  |  |  |
|     Septic tank | ✓ |  |  |  |
|     City supplied | ✓ |  |  |  |
|     Working order? | ✓ |  |  |  |
| 3. Insulation | ✓ |  |  |  |
| 4. Urea formaldehyde foam insulation |  | ✓ |  |  |
| 5. Leaks in roof |  | ✓ |  |  |
| 6. Age of roof |  |  |  |  |
|     0-5 years |  |  |  |  |
|     5-10 years |  |  |  |  |
|     10-15 years |  |  |  |  |
|     15+ years | ✓ |  |  |  |
| 7. Wall defects |  | ✓ |  |  |
| 8. Floor defects |  | ✓ |  |  |
| 9. Foundation defects |  | ✓ |  |  |
| 10. Window defects | A few storm windows need small repair |  |  |  |
| 11. Evidence of water in basement |  | ✓ |  |  |
| 12. Heating system: |  |  |  |  |
|     Central | ✓ |  |  |  |
|     Gas | ✓ |  |  |  |
|     Oil |  | ✓ |  |  |
|     Heat Pump |  | ✓ |  |  |
|     Working order? | ✓ |  |  |  |
|     Age of Heating System: |  |  |  |  |
|     0-5 years   6 yrs old |  |  |  |  |
|     5-10 years | ✓ |  |  |  |
|     10+ years |  |  |  |  |
| 13. Air Conditioning System: |  |  |  |  |
|     Central | ✓ |  |  |  |
|     Window |  |  |  |  |
|     Gas | ✓ |  |  |  |
|     Electric |  | ✓ |  |  |
|     Heat Pump |  |  |  |  |
|     Working order? | ✓ |  |  |  |
|     Age of Air Conditioning System: |  |  |  |  |
|     0-5 years | ✓ |  |  |  |
|     5-10 years   6 yrs old |  |  |  |  |
|     10+ years |  |  |  |  |
| 14. Plumbing System: |  |  |  |  |
|     Copper |  |  | ✓ |  |
|     Galvanized |  |  |  |  |
|     Other | ✓ |  |  |  |
|     Working order? | ✓ |  |  |  |
|     Any known problems? |  | ✓ |  |  |

071599wdcar                    2

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 15. Electrical System: | | | | |
|     Working order? | ✓ | | | |
|     Any known problems? | | ✓ | | |
| 16. History of Infestation *None* | | | | |
|     Termites | | *None* | | |
|     Carpenter Ants | | ✓ | | |
|     Rodents | | ✓ | | |
|     Other | | ✓ | | |
| 17. Environmental Problems *None* | | | | |
|     Asbestos | | ✓ | | |
|     Radon Gas | | ✓ | | |
|     Formaldehyde | | ✓ | | |
|     Contaminated soil | | ✓ | | |
|     Other | | ✓ | | |

Provide explanations of the foregoing responses here. Attach additional sheets if necessary: *All gutters were replaced in 2000. All outside trim was painted in 2000 Terraced patio was pressure - cleaned in Sept 2001. Oak floors were sanded and polyurethaned in late 2001*

**B.    Appliances/Systems/Services:  The items below are in working order:**

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Range/Oven | ✓ | | | |
| 2. Dishwasher | ✓ | | | |
| 3. Refrigerator | ✓ | | | |
| 4. Range hood/fan | ✓ | | | |
| 5. Disposal | ✓ | | | |
| 6. TV antenna, TV rotor & controls | ✓ | | | |
| 7. Storm Windows | ✓ | | | |
| 8. Garage door opener & remote control | ✓ | | | |
| 9. Alarm system | | | | ✓ |
| 10. Intercom system | | | | ✓ |
| 11. Central vacuum | | | | ✓ |
| 12. Attic fan | | | | ✓ |
| 13. Pool heater, wall liner & equip. | | | | ✓ |
| 14. Microwave oven | ✓ | | | |
| 15. Trash compactor | | | | ✓ |
| 16. Ceiling fan | | | | ✓ |
| 17. Sauna/hot tub | | | | ✓ |
| 18. Lawn sprinkler system | | | | ✓ |
| 19. Water heater | ✓ | | | |
| 20. Water softener/conditioner | | | | N/A |
| 21. *Sump pump* | | | | ✓ |
| 22. Furnace | ✓ | | | |
| 23. Humidifier | | | | ✓ |
| 24. Electronic air filter | | | | ✓ |
| 25. Solar heating system | | | | ✓ |
| 26. Fireplace & chimney | ✓ | | | |
| 27. Wood burning system | | | | ✓ |
| 28. Smoke Detector(s) | ✓ | | | |
| 29. Carbon Monoxide detector(s) | | | | ✓ |

Provide any explanations of the foregoing responses here. Attach additional sheets if necessary: *Cap on dishwasher soap dish tends to stick. Washes dishes superbly if soap is put in receptacle and cap is not closed.*

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

071599wdcar

3

C. **Other items: Are you aware of the following:**

1. Features of the property shared in common with the adjoining landowners:

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| Walls | | | | ✓ |
|   Seller responsible for maintenance | | | | |
| Fences | ✓ | | | |
|   Seller responsible for maintenance | | | | |
| Roads | | | | |
|   Seller responsible for maintenance | | ✓ | | |
| Driveways | | | | |
|   Seller responsible for maintenance | ✓ | | | |
| Other (list) | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
|   Seller responsible for maintenance | | | | |

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 2. Encroachments | | | | ✓ |
| 3. Easements | | | | ✓ |
| 4. Zoning violations | | | | ✓ |
| 5. Nonconforming uses | | | | ✓ |
| 6. Structural modifications | | | | ✓ |
| 7. Settling problems | | | | ✓ |
| 8. Flooding problems | | | | ✓ |
| 9. Drainage problems | | | | ✓ |
| 10. Structural problems | | | | ✓ |
| 11. Grading problems | | | | ✓ |
| 12. Damage to property from: | | | | |
|   Fire | | ✓ | | |
|   Wind | | ✓ | | |
|   Floods | | ✓ | | |
|   Landslides | | ✓ | | |

Provide any explanations of the foregoing responses here. Attach additional sheets, if necessary. *No explanations necessary. Foregoing is self-explanatory.*

_____

_____

The Seller has lived in the residence on the property from *July 3 1995* (date) through *Present* (date). The Seller has owned the property since *July 3 1995* (date) and makes the statements herein only since that date. The Seller has indicated above as to the condition of all the items *based on information actually known to the Seller.*

Seller certifies that the information in this statement *is* true and correct to the best of Seller's actual knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTION OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY.

Seller *Carol A. Forte*    Date *April 13 2002*

Seller _____    Date _____

BUYER HEREBY EXPRESSES AN INTENT TO RESIDE IN THE PROPERTY TO BE TRANSFERRED.

BUYER HAS READ AND ACKNOWLEDGES RECEIPT OF THIS STATEMENT AND ACKNOWLEDGES THAT THIS STATEMENT IS MADE BASED UPON THE SELLER'S ACTUAL KNOWLEDGE AS OF THE ABOVE DATE; IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES WHICH BUYER MAY WISH TO OBTAIN; AND IS NOT A STATEMENT, REPRESENTATION OR WARRANTY BY ANY OF THE SELLER'S AGENTS OR ANY SUB-AGENTS AS TO THE PRESENCE OR ABSENCE OF ANY CONDITION, DEFECT OR MALFUNCTION OR AS TO THE NATURE OF ANY CONDITION, DEFECT OR MALFUNCTION.

Buyer _____    Date *4/18/02*

Buyer _____    Date *4/18/02*

*Property is sold in "AS IS" condition.*

071599wdcaz

4

 

**Greater Capital Area Association of REALTORS®, Inc.**

<u>DISCLOSURE OF BROKERAGE RELATIONSHIP</u>

THE UNDERSIGNED DO HEREBY ACKNOWLEDGE DISCLOSURE THAT:

THE LICENSEE _WC & AN Miller_
                    (NAME OF FIRM)

REPRESENTS THE FOLLOWING PARTY IN A REAL ESTATE TRANSACTION:

_____  SELLER(S)      OR      __✓___  BUYER(S)

_____  LANDLORD(S)    OR      TENANT(S)

_4/15/02_____                 _Carl A. Foster_
DATE                              NAME

_____                 _____
DATE                              NAME

"<u>This is a temporary form</u> - subject to future revision by the D.C. Real Estate Commission"

GCAAR-143

Page 1 of 1

Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property or shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

**6. UNDERGROUND STORAGE TANK DISCLOSURE. (Applicable to single family sales only.)**
In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows:_____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract.
Buyer: _____

**7. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) or the purchase price is less than or equal to Three Hundred Thousand Dollars ($300,000.00) and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

**8. CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property ☐ is ☐ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is ___N/A___ per ___N/A___.

**9. NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent or Designated Representative assigned to the Seller.) Notices to the Purchaser shall be effective when delivered to the Buyer or an Agent of the Purchaser named in the contract (including a Dual Agent or Designated Representative assigned to the Purchaser.) "Purchaser" means "Buyer" and vice versa.

**10. INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties hereto agree and authorize Escrow Agent to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to the Buyer at time of settlement. For accounting purposes, the Buyer's social security number is _____. A Processing fee may be charged to the party receiving the interest by the above Escrow Agent for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to the Seller.

| | | | |
|---|---|---|---|
| _Carol G. Forte_ | _4/15/02_ | _[signature]_ | _4/15/02_ |
| Seller | Date | Buyer | Date |
| | | _[signature]_ | _4/15/02_ |
| Seller | Date | Buyer | Date |

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

GCAAR # 114   Washington DC Jurisdictional Addendum          Page 2 of 2                                    9/01