## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CAROL A. FORTI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:06CV00613** |
| v. | ) | **Judge:  James Robertson** |
| | ) | **Deck Type:  Contract** |
| **W.C. & A.N. MILLER** | ) | |
| **DEVELOPMENT COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF JOINT MOTION TO DISMISS COMPLAINT
### OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Co-Defendants Alberto Chong ("Chong"), Luisa Zanforlin ("Zanforlin"), Richard

Aguglia ("Aguglia") and Jeffrey Hardie ("Hardie") have jointly moved to dismiss the Complaint

filed in this case or, in the alternative, for summary judgment and, as reasons therefore, state as

follows:

### PRELIMINARY STATEMENT

This is yet another chapter in the seemingly never-ending saga of meritless and

sanctionable cases filed by attorney Carol A. Forti, plaintiff *pro se* herein (hereinafter "Forti").[1]

---

[1] Upon information and belief, Forti is a member of the Pennsylvania bar but not the District of Columbia bar.  Forti's application for membership in the D.C. bar was not recommended by the Committee on Admissions.  See Findings of Facts, Conclusions of Law and Recommendations of the D.C. Court of Appeals Committee on Admissions (the "Committee") (In re: Carol A. Forti; No. M 44137 (May 30, 1997)).  The Committee recommended that her application be denied because she knowingly engaged in the unauthorized practice of law in the District of Columbia, that portions of her testimony reflected a lack of candor with the Committee, and that she wrongfully accused her former attorneys (whom she retained to represent her before the Committee and also the Committee on Unauthorized Practice of Law) of "conspiring" to harm her.  See Exhibit A attached hereto.

Four years ago, Forti sold her house to Chong and Zanforlin. Prior to closing, a dispute arose with respect to the payment by Forti of the real estate commission owed to the real estate broker, W.C. & A.N. Miller ("Miller"). To facilitate closing, the $28,500 commission in dispute was placed in escrow. Miller then sued Forti for the commission in the Civil Division of the Superior Court, D.C. on June 13, 2002. In connection with that case, Forti dragged Chong and Zanforlin into court by filing a mean-spirited and malicious third-party complaint alleging that they conspired to breach their contract with Forti by either persuading or colluding "with the settlement attorney to deduct a 3 percent broker's commission, $28,500, from the $950,000 owed to Seller as net proceeds." Judge Melvin Wright granted summary judgment for Chong and Zanforlin on Forti's breach of contract and conspiracy claims, as well as awarded attorneys' fees and costs to Chong and Zanforlin under the purchase contract at issue. Forti's motion for attorneys' fees was denied. Forti also attempted to assert a Rule 11 claim against the Hunton & Williams attorneys (and the firm itself) representing Chong and Zanforlin claiming that the legal advice they rendered was improper. This motion was denied. On August 6, 2004, the D.C. Court of Appeals summarily affirmed the trial court's decision. Forti filed numerous requests for reconsideration of its decision with the D.C. Court of Appeals, all of which were denied. Miller, Chong and Zanforlin requested and obtained additional attorneys' fees from the trial court for prevailing on appeal.

Refusing to acknowledge she is not entitled to the monies awarded to Miller and attorneys fees awarded to Miller and Chong and Zanforlin, Forti continues her meritless assault against the parties—this time including Hunton & Williams attorneys Aguglia and Hardie as defendants for somehow "conspiring" with their clients while rendering legal advice in this matter. An attorney cannot be subject to a conspiracy allegation when his or her conduct falls

2

within the scope of the representation of his client, and as such, the complaint fails to state a claim upon which relief can be granted. Furthermore, Forti's claims are barred by the doctrine of *res judicata,* voluntary payment, and the statute of limitations. Defendants ask that this action be dismissed with prejudice and that their attorneys' fees and costs be awarded in this matter.

## STATEMENT OF CASE

In early April, 2002, Forti ran an advertisement in *The Washington Post* for the sale of her house in the District of Columbia. That advertisement included the statement "Co-op 3%", standard language in the real estate industry to indicate that she would pay a commission of 3% to a broker who secured a buyer. On or about April 15, 2002, June Humbert ("Humbert"), an agent for Miller, tendered an offer to Forti for $915,000 on behalf of Chong and Zanforlin. The purchase contract contained an Escalator Clause Addendum whereby Chong and Zanforlin agreed to increase automatically their offer by $5,000 over any other bona fide offer which resulted in net proceeds to Forti higher than their original offer, but not to exceed a purchase price of $975,000. Forti claims to have received another offer on the same day from one J.W. Silas, a principal with no broker/agent, for $945,000,[2] thereby increasing Chong and Zanforlin's purchase price to $950,000 in net proceeds. The parties agreed on the purchase price of $950,000.

Settlement was to take place on April 29, 2002 in the offices of the settlement attorney, Nathan Finkelstein ("Finkelstein"). Forti refused to pay the $28,500 or 3% commission to

---

[2] During discovery in the suit that followed, discussed *supra*, Forti was unable to produce any copy of the alleged Silas offer. In addition, counsel for Chong and Zanforlin discovered that, based on information supplied by Forti, the hotel where he was allegedly staying when he made the offer had no record of a room for him and the company where he allegedly worked in Cambridge, Massachusetts had no such employee on its payroll.

3

Humbert, as set forth on the settlement statement by Finkelstein. Instead, Forti offered to pay $4,000 to Humbert for arranging the sale in a letter dated and delivered to Humbert on April 29, 2002 at Finkelstein's office. In her letter, Forti asserted that she placed the ad in the paper at the request of the Anti-Trust Division of the Justice Department, which was planning to bring criminal action against real estate agents for fixing commissions. Nevertheless, because she liked Humbert and the buyers, she would overlook the matter in consideration of the reduced fee. Humbert refused and the settlement was delayed.

Chong and Zanforlin retained Hunton & Williams to represent them in the matter. Miller retained George Masson of Hamilton & Hamilton. On the advice of counsel and with the consent of Forti, the disputed commission was placed in escrow by Finkelstein, and the closing took place on or about May 8, 2002. See Exhibit B attached hereto (Settlement statement showing adjustment to Line 700 - Seller disputes commission of 3% - $28,500.00; commission held in escrow for resolution per escrow agreement.) (All of these facts are set forth in the Superior Court Order of Judge Wright attached hereto for the convenience of the court and discussed *supra*).[3]

---

[3] In deciding whether to dismiss, the Court may consider documents attached as exhibits to, incorporated by reference in, or relied upon as a basis for the cause of action in the pleadings without converting a Rule 12(b)(6) motion to a Rule 56(c) motion for summary judgment. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996); *see also Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 431 (6th Cir. 1997) (court properly considered plan documents that a defendant attached to a motion to dismiss in an ERISA claim because such documents are considered part of the pleadings as they were referenced in the complaint or were central to the adjudication of the ERISA claim). For example, Forti references the prior litigation throughout her Complaint. To the extent the Court considers any of these documents are outside of the Complaint, Defendants move in the alternative for summary judgment under Fed. R. Civ. P. 56.

4

Miller sued Forti for the commission in the Civil Division of the Superior Court, D.C. on June 13, 2002. (*Miller v. Forti*, Case No. 02-4745). Forti filed a third-party complaint against Chong and Zanforlin as part of that suit for alleged breach of contract conspiracy to force her to pay the disputed commission. See Exhibit C attached hereto where Forti's sole grievance with Chong and Zanforlin was that they "possibly" either persuaded or colluded with the settlement attorney to deduct the commission from her net proceeds. Forti also sought attorneys' fees and costs against Aguglia and Francine Friedman, the Hunton & Williams associate then assisting on the case, the law firm of Hunton & Williams, Masson and the law firm of Hamilton & Hamilton, under Rule 11 for the legal advice they provided their clients. The court denied this motion on March 14, 2003. See Exhibit D attached hereto.

On October 31, 2003, the Superior Court (Wright, J.) granted summary judgment to third-party defendants Chong and Zanforlin and plaintiff Miller for Forti's breach of contract and conspiracy claims and denied summary judgment to defendant and third party plaintiff Forti. See Exhibit E attached hereto. Forti appealed. On June 10, 2004, during the pendency of the appeal, Judge Wright granted attorneys' fees and costs to Chong and Zanforlin and Miller since they were the prevailing parties entitled to attorneys fees and costs under the purchase contract and subsequently denied Forti's motions for same. See Exhibit F attached hereto. The D.C. Court of Appeals: (i) summarily affirmed the trial court's decision in favor of Miller and Chong and Zanforlin on August 6, 2004; (ii) issued its mandate on August 31, 2004; (iii) denied Forti's motion to supplement the record on September 21, 2004; (iv) denied Forti's motion to recall

5

mandate on October 6, 2004; and (v) denied Forti's motion for rehearing en banc.[4]  See Exhibit
G attached hereto.

Counsel for Miller and Chong and Zanforlin requested and obtained additional attorneys'
fees from the trial court for prevailing on appeal. See Exhibit H attached hereto. Forti took no
appeal from either decision of Judge Wright granting Chong and Zanforlin's request for
attorneys fees and costs. Forti refused to pay the fees awarded by the trial court. Counsel for
Miller and Chong and Zanforlin recorded the judgments as liens on property she owned in
Arnold, Maryland and initiated a sheriff's foreclosure sale to pay off these liens. Forti brought a
suit to halt the sale which was eventually settled by payment of Chong and Zanforlin's attorneys
fees with statutory interest. See Exhibit I attached hereto.

After years of tedious but successful litigation over a disputed commission that did not
relate to them, co-defendants Chong and Zanforlin —and this time their counsel as well--once
again find themselves faced with another frivolous and sanctionable conspiracy suit by Forti.

### 1.    The Complaint Also Fails To State a Claim Upon Which Relief Can Be Granted

Viewed in a light most favorable to Forti, her complaint fails to state a claim upon which
relief can be granted, as she has failed to allege any wrongful conduct by Chong and Zanforlin
and their counsel sufficient to state a claim for breach of contract conspiracy. In the previous
litigation, she sued and lost. Chong and Zanforlin had every right to defend against her lawsuit
and, upon prevailing, to seek attorneys fees and costs, and record a lien and levy on her property
for her failure to pay those fees and costs. Even accepting that the plaintiff and third party

---

[4] In fact, the D.C. Court of Appeal barred Forti from filing any further pleadings with that
court in that case after denying yet another one of her requests to void judgment. See Exhibit G.

6

defendants and their lawyers in the prior case coordinated their efforts to defeat Forti's lawsuit to require her to pay a commission, such action was lawful.[5]

Furthermore, Forti fails to mention that she "pulled" Chong and Zanforlin into the litigation by filing a third-party complaint against them. Chong and Zanforlin paid the agreed purchase price of $950,000 at closing. They were neutral parties as to whether the commission would be paid. It was solely Forti's malicious and frivolous third party complaint that brought them into the Superior Court case. As such, the complaint on its face viewed in the light most favorable to Forti fails to state an action for "litigation" conspiracy against Chong and Zanforlin and their counsel, Aguglia and Hardie. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In addition, under the intracorporate conspiracy doctrine, it is impossible to conspire with oneself. *See Gladden v. Barry*, 558 F.Supp. 676 (D.D.C. 1983) (the weight of authority holds that there can be no conspiracy if the conduct complained of is essentially a single act by a single entity) and *Brown v. Sim*, 2005 WL 3276190 (D.D.C.). Several courts have recognized an attorney cannot conspire with his or her client when the attorney's conduct falls within the scope of the representation. *Fischer v. Estate of Flax*, 816 A.2d (D.C. 2003); *Fraidin v. Weitzman*, 611 A.2d 1046 (MD. 1993). There is no allegation in the complaint that Aguglia or Hardie did anything other than provide legal advice and represent Chong and Zanforlin in litigation commenced against them by Forti.

---

[5] The elements of a civil conspiracy are:

"(1) an agreement between two or more persons;
(2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and
(3) an injury caused by an unlawful overt act performed by one of the parties to the agreement,
(4) pursuant to, and in furtherance of, the common scheme."

Griva v. Davison, 637 A.2d 830, 848 (D.C. 1994)

7

Finally, there is no recognized independent tort action for civil conspiracy in the District of Columbia. *Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C. 1980). Civil conspiracy depends on performance of some underlying tortious act. *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). It is thus not independently actionable. There is no unlawful act upon which Forti can base a claim of conspiracy. To the contrary, as set forth below, the courts have repeatedly rejected Forti's claims. Thus, the complaint fails to state a claim upon which relief can be granted for civil fraud and conspiracy.

## 2. The Complaint is Barred by Principles of *Res Judicata*, Accord and Satisfaction, and Voluntary Payment

Forti is suing Chong and Zanforlin because they prevailed in litigation brought against them by Forti herself. She is suing Chong and Zanforlin's counsel for representing them in that litigation. Specifically, Forti alleges that Chong, Zanforlin, Aguglia and Hardie engaged in a civil conspiracy through "their common actions in litigating against Forti for a commission when Forti owed Miller no commission pursuant to D.C. Code and D.C. case law showed that there was an agreement between eight parties to act unlawfully and their overt tortious acts caused extensive injury to Forti." Complaint ¶ 3. As such, Forti was allegedly forced by the court to pay a commission that she did not owe. Complaint ¶ 4. According to Forti, defendants compounded their malice by seeking attorneys fees (Complaint ¶ 14) and placing a lien on property that Forti owns in Maryland (Complaint ¶ 15) to collect those fees after they were awarded to defendants by the court. Under this ludicrous "conspiracy" theory, Forti seeks unknown consequential damages, attorneys fees and costs and refund of such fees paid by Forti in the prior case. She also requests punitive damages against Chong and Zanforlin in the total amount of $2,000,000 and against Aguglia and Hardie in the amount of $4,000,000 each.

8

As set forth above, both the Superior Court and the D.C. Court of Appeals have previously ruled against Forti on her breach of contract conspiracy claim against Chong and Zanforlin. In addition, the Superior Court rejected her claim for attorneys fees and costs against Aguglia and Friedman and Hunton & Williams (as well as George Masson and Hamilton & Hamilton) for representing Chong and Zanforlin in that litigation and she took no appeal from that decision.[6] Under the doctrine of *res judicata*, "a prior judgment on the merits raises an absolute bar to the re-litigation of the same cause of action between the original parties or those in privity with them." *Goldkind v. Snider Brothers*, 467 A.2d 468, 473 (D.C. 1983), citing *Montana v. U.S.* 440 U.S. 147 (1979). As such, all of her claims against Chong, Zanforlin, Aguglia and Hardie are now barred by the principles of *res judicata*.

Further, Forti's claims for a return of the attorneys fees she paid Chong and Zanforlin are barred by the doctrines of accord and satisfaction and voluntary payment. See *Laganas v. Installation Specialties, Inc.,* 291 A.2d 187 (D.C. 1972) and *Eagle Maintenance Services, Inc. v. DC CAB*, 2006 D.C. App. Lexis 88.

### 3.  The Complaint is Barred Under the Statute of Limitations

D.C. Code §12-301 (8) allows a three year statute of limitations to sue on matters for which a time period is not otherwise specifically set forth in that statute. With respect to fraud, the courts have held that the statute begins to run when a person knew or should reasonably have known of the alleged fraud. *See Hawkins v. Greenfield*, 797 F. Supp. 30 (D.D.C. 1992) (under District of Columbia law, action for fraud must be brought within three years of time right to maintain action accrues). In this case, there is no doubt that Forti's alleged cause of action for

---

[6] See various Orders signed by Judge Wright attached hereto as Exhibits F and H from which Forti filed no appeal.

9

fraud and conspiracy commenced in April or May of 2002 at the latest.  As such, this suit – some

four years later – is barred by the three year statute of limitations.

## CONCLUSION

For the reasons set forth herein, the court should dismiss the complaint filed in this case

with prejudice.

Respectfully submitted,

HUNTON & WILLIAMS, LLP

By: _____
John Jay Range
DC Bar No. 376028
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Suite 1200
Washington, D.C. 20006
(202) 955-1500
Counsel for Co-Defendants
Richard Aguglia and Jeffrey Hardie

Respectfully submitted,

HUNTON & WILLIAMS, LLP

By: _____
Richard L. Aguglia
DC Bar No. 53751
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Suite 1200
Washington, D.C. 20006
(202) 955-1500
Counsel for Co-Defendants
Alberto Chong and Luisa Zanforlin

10

# EXHIBIT A



DISTRICT OF COLUMBIA COURT OF APPEALS
COMMITTEE ON ADMISSIONS

In re:

Carol A. Forti

No. M44137

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION OF THE COMMITTEE

## INTRODUCTION

Carol A. Forti, a member of the Pennsylvania Bar, has applied for admission to the District of Columbia Bar pursuant to D.C. App. R. 46(c)(3). Because her application revealed that Ms. Forti has been acting as a lawyer in the District of Columbia for a number of years without being a member of the District of Columbia Bar, the Committee referred her application to the Committee on Unauthorized Practice of Law for its advice as to whether Ms. Forti was engaged in the unauthorized practice of law. After receiving that advice, this Committee held a formal hearing to consider whether: 1) Ms. Forti had engaged in such unauthorized practice; 2) if so, whether such unauthorized practice precludes a finding that she has demonstrated "good moral character and general fitness to practice law," D.C. App. R. 46(d); and 3) whether Ms. Forti's conduct during the admissions process, specifically the making of unsubstantiated charges against the attorneys who previously represented her, precludes a finding that she has demonstrated the necessary character and fitness. The Committee concludes that Ms. Forti knowingly engaged in the unauthorized practice of law, that portions of her testimony reflect a lack of candor with the Committee, and that she wrongfully accused her former attorneys of conspiring to harm her. As a result, she has failed to demonstrate by clear and

2

convincing evidence that she possesses good moral character and fitness to practice law as required by D.C. App. R. 46(e). Accordingly, we recommend that her application be denied.

## FINDINGS OF FACT

### A. Background

Ms. Forti is a 1987 graduate of the Georgetown University Law Center. R. 12, 500.[1] Upon graduation from law school, she took the Pennsylvania Bar Examination, but was not successful. R. 501. She took Pennsylvania's examination again in February 1988, and was successful. She was admitted to the Pennsylvania Bar in August, 1988. R. 13, 501.[2]

Ms. Forti had intended to apply for admission without examination to the District of Columbia Bar pursuant to D.C. App. R. 46(c)(3)(ii) after she was admitted in Pennsylvania, but her scaled score on the Multistate Bar Examination was not high enough for her to be admitted under that rule. R. 595. She took the July, 1988 District of Columbia Bar Examination, but did not pass. R. 13, 503-04. Ms. Forti made no further attempts to apply to the District of Columbia Bar until she submitted an application on October 18, 1993. R. 3. That application was returned to her because it was incomplete, as was a second application submitted on January 13, 1994. R. 5. She ultimately submitted an application in proper form on March 16, 1994. R. 1-2; 7-39. Ms. Forti applied pursuant to D.C. App. R. 46(c)(3)(i), which permits a

---

[1]    The Committee's record in this matter will be cited as "R." followed by the page number.

[2]    Ms. Forti's application to the District of Columbia Bar does not disclose that she failed the Pennsylvania Bar in 1987, even though the application form asks the details of each prior application to the bar of any jurisdiction. R. 13.

3

person who has been a member in good standing of the bar of another jurisdiction for five years to be admitted to this Bar without examination.

Ms. Forti's application stated that she had been a solo practitioner with offices in the District of Columbia from 1991 to present and from August 1988 to May 1989. She also stated that she had been employed as an associate with "Harker & Associates," a firm located in the District of Columbia from 1989 to 1991. R. 15-19.[1] Because of its concern that Ms. Forti may have engaged in the unauthorized practice of law, the Committee referred her application to the Court's Committee on Unauthorized Practice of Law ("CUPL") for further investigation. R. 75. There followed an initial series of telephone calls and letters between Ms. Forti and her then-counsel, on the one hand, and the Chair of the Committee on Unauthorized Practice, on the other. R. 77-88, 528. This process culminated in a May 24, 1995 letter from the Chair of the Committee on Unauthorized Practice of Law to the members of this Committee, concluding: 1) that Ms. Forti had acknowledged that she had committed unauthorized practice of law in violation of D.C. App. R. 49; 2) that her violation was unknowing and unintentional; 3) that she had discontinued the violation; and 4) that if the matter were referred to CUPL for action under Rule 49, that committee would conclude that it warrants no further action and would close the file. R. 82-83.

Shortly after receipt of that letter, Chairman Nettler of this Committee directed that Ms. Forti's application be referred to one of the Committee's two subcommittees.

---

[1]    At other portions of the record, Ms. Forti refers to this firm as "Harker and Associates," and we believe this to be the firm's correct name. See R. 176. We will hereafter refer to this firm as the "Harker Firm."

4

The application was randomly assigned to Subcommittee B, which consists of Mr. Nettler, Ms. Gere, Ms. Ludaway, and Mr. Dean, the Committee's Counsel. Meanwhile, Ms. Forti had submitted a cover letter and resume to Mr. Nettler seeking a position with his firm. R. 90-103. Upon reviewing that submission, Mr. Nettler telephoned Ms. Forti to ask where she was admitted to practice. Mr. Nettler had forgotten about his earlier reference of Ms. Forti's application to a Subcommittee.[4] Ms. Forti told Mr. Nettler that she was a member of the Pennsylvania and District of Columbia Bars.[5] R. 89. The resume that Ms. Forti sent to Mr. Nettler states that Ms. Forti worked in the "Law Office of Carol A. Forti" and describes a wide variety of matters in which she provided representation. R. 94-103.

This new information was brought to the attention of Subcommittee B, which referred the matter back to CUPL, asking for its advice as to whether Ms. Forti's conduct constituted unauthorized practice of law. R. 104. In response, the Chair of CUPL informed the Committee on July 17, 1995 that Ms. Forti's representation that she was a member of the District of Columbia Bar, along with the activities described on her resume, indicated that Ms. Forti's conduct was not unknowing and unintentional and that her violations of Rule 49 were continuing. R. 106. Ms. Forti and her counsel then wrote to CUPL disputing that Committee's

---

[4]    This is not unusual, as the Chairman of the Committee reviews numerous applications every month to decide whether the applicant should be certified for admission or whether the application should be referred to a subcommittee for its review.

[5]    Mr. Nettler submitted a memorandum to the Committee's Director describing his conversation with Ms. Forti and the surrounding circumstances. R. 89. Mr. Nettler did not testify at the Committee's hearing, but Ms. Forti's counsel has stipulated to the accuracy of Mr. Nettler's memorandum. R. 468. Mr. Nettler has not participated in any of the Committee's deliberations in this matter.

5

conclusion. R. 109-117. On September 26, 1995, CUPL reiterated its advice that Ms. Forti was violating Rule 49. Specifically, CUPL stated that Ms. Forti actively practiced law in the District of Columbia as the "Law Office of Carol A. Forti" when she was not a member of the Bar and had no application pending; that she represented that she was a member of the Bar when she was not; and that her resume misrepresented her activities during 1988-89 and 1991-95. CUPL also noted that Ms. Forti "genuinely desires to become a member of the D.C. Bar and put behind her any lingering questions about her authority to practice here." R. 108.

Based on this record, the members of Subcommittee B (other than Mr. Nettler) decided to meet informally with Ms. Forti, and that meeting occurred on December 13, 1995. After the meeting, and after reviewing additional materials submitted by Ms. Forti, the subcommittee decided that a formal hearing was necessary in this matter. The hearing was held on August 28, 1996.

The hearing focused upon the allegation that Ms. Forti had engaged in unauthorized practice of law, as well as upon charges of misconduct that Ms. Forti had made against two of her former attorneys in connection with this matter. Findings on these issues are set forth below.

## B. Ms. Forti's Activities From August, 1988 to May, 1989

Between August, 1988, when she was admitted to the Pennsylvania Bar, and May, 1989, when she took a position with the Harker Firm, Ms. Forti was unemployed. She was involved in two lawsuits in the District of Columbia Superior Court during this period, but these were matters in which she was proceeding _pro se_, and representing no one other than herself. R. 555-56.

95

6

## C. Ms. Forti's Activities As An Associate At the Harker Firm

From May, 1989 to January, 1991, Ms. Forti was an associate at the Harker
Firm. During that period, Ms. Forti represented the firm's clients in negotiations and in court and
gave them legal advice. R. 595-96. The firm's letterhead did not list her name, but Ms. Forti
regularly used that letterhead to send correspondence over her signature. When she did so, there
was no indication anywhere on the letter that she was not admitted to the District of Columbia
Bar. R. 176; 596-97.

## D. Ms. Forti's Activities From January, 1991 to June 1995

Ms. Forti resigned from the Harker Firm in January, 1991. At that time, one
of the clients for whom she worked at that firm asked her to continue her representation. That
client, Kemper Industries, d/b/a Lee Metal Products ("Kemper"), is located in Pennsylvania.
R. 507-09. Ms. Forti represented Kemper in connection with a claim by the United States
Environmental Protection Agency ("EPA") that Kemper and other companies were responsible
for disposing of hazardous materials at a site in Pennsylvania known as the Keystone Site.
R. 509-11. Ms. Forti advised the Company concerning its legal obligations, and represented it
both in negotiations concerning that site and in litigation that was filed by the United States in
the United States District Court for the Middle District of Pennsylvania. R. 511-13; 691-93. The
litigation was commenced late in 1993 and Ms. Forti was admitted pro hac vice to the District
Court's bar. R. 511-13; 691-93. Thus, Ms. Forti represented Kemper and provided legal advice
to that company for almost three years (January, 1991 to October, 1993) before the litigation
started.

7

Ms. Forti earned substantial revenues from her representation of Kemper. Her 1994 tax return reports revenues of more than $200,000 from her practice of law, all of which came from Kemper. R. 274-75. In 1995, she represented Kemper only for two months, and received revenues of more than $36,000 for her efforts. R. 523-24, 695.

Other than Kemper, Ms. Forti represented no clients during this period. She worked out of her home, had no telephone listing identifying her as an attorney, and displayed no signs or other indicia of her status as an attorney at her home. She used no letterhead, but simply typed a return address on plain white paper when she sent out correspondence. R. 513-19.

E. Ms. Forti's Interactions With CUPL Prior to May 24, 1995

Ms. Forti testified that her first contact with any representative of CUPL was a telephone call she received in November, 1994 from Stuart Pierson, Esquire, the Chair of CUPL, who told her of his belief that her activities constituted unauthorized practice of law. R. 520. Ms. Forti subsequently hired Mark Foster, Esquire, to represent her, and there were several meetings and exchanges of correspondence between Mr. Foster and Mr. Pierson concerning Ms. Forti's case. R. 77-88. As the result of these interactions, Ms. Forti decided that she would withdraw from her representation of Kemper. R. 623-25; 669-70. At the hearing, Ms. Forti insisted that she never believed that her representation of Kemper constituted unauthorized practice of law. She contended that, as a member of the Pennsylvania Bar she is entitled to represent a Pennsylvania client in a Pennsylvania matter even though her office was located in her home in the District of Columbia. R. 693-94. Ms. Forti contended that D.C. App. R. 49 requires an attorney to be admitted to the District of Columbia Bar only if she is providing advice on matters controlled by District of Columbia law. R. 530, 665.

8

Ms. Forti testified that she agreed to withdraw from her representation of Kemper pursuant to an agreement between Mr. Pierson and Mr. Foster, her counsel at the time. According to Ms. Forti, the terms of the agreement were that she should admit that she engaged in unauthorized practice of law and should withdraw from her representation of Kemper. In return, CUPL would advise this Committee that her violations were unintentional. R. 528-29, 600, 611-14.

### F. Ms. Forti's Withdrawal From Her Representation of Kemper

Ms. Forti did not inform her client of her decision to withdraw, but continued to represent Kemper until February, 1995. At that time, her client discharged her from further representation. When she was informed of that decision, she attempted to persuade the company's president to continue her services, as she believed that it was in the Company's best interest to do so because of several impending discovery deadlines and depositions in the Keystone matter. Her client was not persuaded, and Ms. Forti's representation ceased in late February, 1995. R. 520-21; 622-30; 669-72. As noted above, Ms. Forti earned more than $36,000 from her efforts on Kemper's behalf during the first two months of 1995.

Ms. Forti's representation of Kemper did not continue after February, 1995. There has been some question about whether Ms. Forti still was representing the company in June, when her conversation with Mr. Nettler occurred, and well after her counsel told CUPL that Ms. Forti was no longer representing her Pennsylvania client. R. 84. Originally, Ms. Forti had claimed that her conversation with Mr. Nettler occurred immediately before she was to join a conference call concerning the Keystone litigation. See R. 356-57, 239. Ms. Forti made the

9

same claim during her informal meeting with the subcommittee.[4] R. 545-48. Ms. Forti testified that she was mistaken, and that it was Mr. Pierson's November, 1994 call that occurred directly before a conference call relating to Keystone, not Mr. Nettler's June, 1995 call. Although the record is not free from all doubt, we credit Ms. Forti's explanation on this point for several reasons. First, Ms. Forti's bills to Kemper for November, 1994 indicate that several conference calls took place during that month. R. 850-52. Second, Kemper discharged Ms. Forti in February, 1995, and there is no apparent reason for Ms. Forti to have been involved in a conference call on Kemper's behalf four months later. Finally, Mr. Kemper states in an August 26, 1996 letter to Ms. Forti that he issued the "final payment" for her work in April, 1995. R. 858. Ms. Forti, therefore, received no payment for any efforts undertaken on Kemper's behalf in June, making it unlikely that any such efforts occurred.

### G. The Discussion With Mr. Nettler

Ms. Forti admits that she told Mr. Nettler that she was a member of the District of Columbia Bar. R. 537. She testified that when he called, she recognized that Mr. Nettler was both the addressee of her letter asking for a job and the Chairman of this Committee. R. 535-36. She testified that she "assumed that he would be very familiar with any application that had been logged in 15 months earlier." R. 536. She also testified that she had in mind Mr. Pierson's letter of May 24, 1995 and believed that his letter meant that she would be admitted to

---

[4]    Subcommittee meetings are intended to be informal. The applicant is not under oath, no reporter is present, and no record is made. In response to questioning from her own counsel at the formal hearing, Ms. Forti admitted having told the subcommittee that her conversation with Mr. Nettler occurred before she joined a conference call. R. 545-48. In light of her voluntary disclosure, we see no prejudice to her in considering that testimony.

96

10

the bar "within a week more or less." R. 537. She stated that Mr. Nettler told her that he had less than a minute to talk and, therefore, that she told him that she was admitted to the bars of Pennsylvania and the District of Columbia. R. 537. Ms. Forti says that she later realized that she should have said that she was admitted to the Pennsylvania Bar and that she had an application pending in the District of Columbia. R. 537. However, she never contacted Mr. Nettler to correct her erroneous statement[7]

Ms. Forti states that she had no reason to deceive Mr. Nettler, as she knew that he was Chairman of this Committee and believed that he knew the status of her application for admissions. R. 537-38. The Committee does not credit this explanation. Ms. Forti herself described the conversation with Mr. Nettler as extremely brief, and Mr. Nettler spoke with her only about her application for a job. We believe that during that brief conversation, she recognized Mr. Nettler only as a prospective employer and was not aware of his position with the Committee.

Moreover, even if Ms. Forti's explanation were credited, it does not excuse her misrepresentation. If she really believed that Mr. Nettler was familiar with her application, she should have referred to that in her response. "As you know, my application for admission to the D.C. Bar is pending" would have been a truthful answer. Falsely claiming admission to the

---

[7]    On July 13, 1995, almost a month after her June 19 conversation with Mr. Nettler, Ms. Forti wrote to Mr. Nettler in his capacity as Chairman of this Committee asking that her application be acted upon. R. 183. While Ms. Forti views this letter as a correction of the misrepresentation that she made on June 19, see R. 538-39, the letter contains no reference to the earlier conversation and evidences no awareness by Ms. Forti that she did not tell the truth about her bar membership. R. 183.

*q*

11

District of Columbia Bar was not truthful, regardless of whether Ms. Forti knew who Mr. Nettler was and vice versa. Ms. Forti knowingly misrepresented herself as a member of the District of Columbia Bar to a prospective employer and made no effort to correct that misrepresentation.

### H. Ms. Forti's Resume

The resume that Ms. Forti sent to Mr. Nettler states that she practiced law as the "Law Office of Carol A. Forti" from January 25, 1991 to present. R. 94. Her resume gives a District of Columbia address and office phone number, so it is clear that the so-called "Law Office of Carol A. Forti" was located in the District of Columbia. The resume does not include any reference to Ms. Forti's admission to any bar.

Ms. Forti's resume presents a very different picture of her practice than she what described in her testimony. She testified that she represented only one client in one matter after she left the Harker Firm, and the Committee credits that testimony. Her resume, however, describes a far broader range of professional activities attributed to this period. Among the entries are:

- "Have represented PRPs [potentially responsible parties] at 17 Superfund sites involving virtually all of the EPA regional offices";
- "Have negotiated actively with EPA Regional Counsel, Remedial Project Managers, and Justice Department attorneys regarding Superfund sites";
- "Have represented clients in 107 cost recovery actions and Section 106 orders."[1]

---

- The Committee understands this to be a reference to actions pursuant to §§ 106 and 107 of the federal Superfund statute, the Comprehensive Environmental Response, Compensation

12

> "I have successfully negotiated settlement agreements at 15 out of 17 Superfund sites where I have represented clients."

> "Currently represent a corporation at the Keystone Site in Pennsylvania."

> "I have experience litigating in federal and state courts. I have also successfully challenged Clean Air Act regulations in the U.S. Court of Appeals."

R. 94-95.

Ms. Forti admitted that it is reasonable to interpret that portion of her resume as describing work that she performed in the "Law Offices of Carol A. Forti" between January 25, 1991 and the present. R. 633-37. Her resume entry for the period November 1987 to May 1989 similarly describes a number of activities that she performed in the "Law Office of Carol A. Forti." She states: "I handled cases, including, but not limited to, breach of contract, property damage claims, and insurance claims. . . . Some of these cases went to trial. Others settled before trial." R. 96. In fact, this entry describes the pro se matters that Ms. Forti handled at the time, only one of which went to trial in small claims court. R. 649-52. The Committee finds that, by using this resume, Ms. Forti both misrepresented the extent of her efforts as a solo practitioner and held herself out as an attorney practicing law in the District of Columbia. The resume creates, by omission, the misleading impression that Ms. Forti is admitted to the D.C. Bar.

---

and Liability Act, 42 U.S.C. §§ 9606, 9607.

96

13

The Committee also finds that Ms. Forti used her misleading resume on several occasions before she sent it to Mr. Nettler. Ms. Forti originally gave evasive answers when asked about her prior use of the resume. She first denied applying to other law firms before sending her resume to Mr. Nettler, R. 630, then said that she "may have sent resumes to other firms" between her departure from the Harker Firm and her application to Mr. Nettler's firm but could not be sure whether she had done so, or if so, how many times she did. R. 631-33. Yet, she later attempted to explain the sentence in her resume that says "Currently represent a corporation at the Keystone Site in Pennsylvania" (emphasis added) as follows:

> Now, this has to be an old resume, . . . . March of 1995 I was no longer
> representing Kemper Industries. I corrected this in the employment and
> employment-related references on page 101. I neglected to change at the
> bottom here, it says, 'currently represent.' That slipped by me. That was
> not intentional. R. 635.

Ms. Forti's testimony that she "neglected to change" her "old resume" indicates that she previously had circulated this resume, making it clear that the misrepresentations in her resume were made to persons other than Mr. Nettler.

### I. Ms. Forti's Inconsistent Statements To This Committee About Violating Rule 49

CUPL's May 24, 1995 letter states that "Ms. Forti has acknowledged that her conduct was in violation of District of Columbia Court of Appeals Rule 49. . . ." R. 82. As noted above, Ms. Forti asserts that this acknowledgment did not represent her true beliefs. Instead, she claims that she made this admission only as part of an agreement whereby CUPL would advise this Committee that her violation of Rule 49 was unintentional. After CUPL retracted the advice in its May 24 letter, however, Ms. Forti continued to assert that she

14

recognized that her conduct violated Rule 49, but that she had acted unknowingly and unintentionally.

On August 17, 1995, Ms. Forti wrote to Mr. Pierson in an effort to persuade CUPL to change the conclusion in its July 17 letter. She stated: "I now understand that I was in violation of Rule 49 when I continued to represent my Pennsylvania client after I left the Harker Firm, but my violation was unknowing and unintentional." R. 115. In that same letter, Ms. Forti states: "I have since learned that my presence here in the District of Columbia did require that I be licensed here even though my activities were entirely confined to a single Pennsylvania matter and a Pennsylvania client." R. 112. Furthermore, in a draft letter that never was sent to Mr. Pierson, but which Ms. Forti cited as an example of a statement of her position that she was not required to be admitted to the District of Columbia Bar, R. 602, Ms. Forti wrote: "I sincerely regret having violated Rule 49." R. 216, 359.* On December 6, 1995, Ms. Forti's counsel wrote the Committee a letter, R. 128, which Ms. Forti reviewed before it was sent. R. 610. That letter refers to Ms. Forti's "acknowledged violation" of Rule 49. Ms. Forti herself wrote to the Committee on that same date expressing her "sincere regret that my conduct for a portion of my career as a lawyer violated Court of Appeals Rule 49," and stating, "I swear to you that my violation of Rule 49 was unintentional." R. 133.

---

* Ms. Forti identified these portions of the record as the draft that she originally wrote, and a subsequent revision. R. 614-19.

96

15

Taken together, Ms. Forti's statements are inconsistent with her claim that she never believed her conduct violated Rule 49.[10] Rather, they show someone who violated the Rule in the past, but was attempting to convince CUPL and this Committee that her violations were unintentional because she had been unaware of the Rule's requirements. Until the formal hearing in this matter, Ms. Forti never informed the Committee that her acknowledgment to CUPL that she violated Rule 49 did not reflect her actual beliefs at the time. It is unclear whether Ms. Forti expressed her true beliefs in the documents cited above or in her testimony at the hearing. It is clear, however, that her statements are, at a minimum, inconsistent and that she was not truthful on this issue at all times.

J.  Ms. Forti's Unsubstantiated Claims Against Her Former Attorneys

As noted above, Ms. Forti retained Mark Foster, Esquire, to represent her before CUPL and before this Committee. Their attorney-client relationship ended in October, 1995. R. 125. In November, Ms. Forti retained Steven Tabackman, Esquire, to represent her, R. 127-28, but discharged him in January, 1996. R. 152. Ms. Forti retained her present counsel, Mr. Trister, in February, 1996. R. 362.

In letters sent to the Committee's counsel in January, 1996, Ms. Forti accused both Mr. Foster and Mr. Tabackman of serious ethical violations. R. 144-51. Her complaint was that Mr. Foster had failed to send to CUPL a letter dated August 17, 1995 that Ms. Forti had written in response to CUPL's July 17, 1995 letter, and that Mr. Tabackman conspired with Mr.

---

[10]    Thus, the Committee rejects her effort during her testimony to persuade the Committee that her statements are consistent. R. 597-622.

16

Foster to conceal that omission. R. 145. Ms. Forti charged that Mr. Foster and Mr. Tabackman "knowingly and intentionally committed legal [mal]practice against me," and that they did so "deliberately to harm me professionally and hurt [my] prospects for approval of my application to the D.C. Bar." R. 144. See also R. 151. She further charged that Mr. Foster and Mr. Tabackman were close friends, so that Mr. Tabackman would have a motive to cover up for Mr. Foster. R. 145, 148. She also stated that she would file disciplinary complaints against both lawyers and that she would ask the United States Attorney's Office to bring mail fraud charges against Mr. Foster. R. 145.

Ms. Forti testified that her belief that Mr. Foster had not forwarded her August 17 letter first arose during her informal meeting with Subcommittee B, when she was asked about state and federal cases in which she had appeared. Because she had included that information in her August 17 letter,[11] and because one of the Subcommittee members took notes as she answered the questions, Ms. Forti assumed that the Subcommittee members did not have her August 17 letter. R. 640-41. Ms. Forti did not investigate the matter further before making her allegations about Mr. Foster's and Mr. Tabackman's conduct. R. 642.

In fact, Ms. Forti's August 17 letter was sent to CUPL. Mr. Pierson's September 26, 1995 letter to this Committee states: "Following our letter to you of July 17, 1995, we have received written submissions from Ms. Forti and her counsel, copies of which are attached hereto." R. 107. One of those attachments is Ms. Forti's August 17 letter. R. 109-15. Ms. Forti now admits that the letter was sent to Mr. Pierson. She testified that she learned this in

---

11    The information appears on pages 6 and 7 of that letter. R. 114-15.

17

February, 1996, when she obtained the enclosures to Mr. Pierson's letter, R. 640, but she did not promptly retract her charges against Mr. Foster or Mr. Tabackman. Instead, she waited until the formal hearing in August to inform the Committee that her charges against Mr. Foster and Mr. Tabackman were inaccurate.

Ms. Forti explained her conduct by testifying that she was extremely upset at the time, due to the pressures associated with her application for admission, as well as family difficulties. R. 566-67, 642.

### K. Other Evidence Presented by Ms. Forti

Robert Jordan, Esquire, testified on Ms. Forti's behalf. Based on information provided by Ms. Forti, Mr. Jordan offered the opinion that Ms. Forti's representation of her client in Pennsylvania did not constitute unauthorized practice of law. R. 575, 581. Mr. Jordan testified that he claimed no expertise in either the field of unauthorized practice of law or bar admissions. R. 573, 584-86. Accordingly, the Committee gives his testimony little weight.

## CONCLUSIONS OF LAW

In dealing with an application which reveals the possibility that the applicant has engaged in the unauthorized practice of law, the Committee believes that a two-step inquiry is appropriate. First, the Committee must determine whether the applicant has engaged in unauthorized practice. If so, the Committee must determine whether the unauthorized practice reflects adversely upon the applicant's character.

We recognize that those who engage in unauthorized practice, like those who violate other laws, may do so for a variety of reasons. Some may do so innocently (i.e., without

96ᶜ

18

knowledge or reason to know of their violation), while others may act negligently, recklessly or intentionally. An applicant's unauthorized practice may be accompanied by deceitful conduct or other evidence that an applicant lacks the character to qualify for admission to the Bar. The Committee does not believe that unauthorized practice of law should be a per se basis for denying an application for admission to the Bar, but rather that the facts of each case should be evaluated to determine whether, considering the totality of circumstances, the applicant's unauthorized practice is reflective of character flaws that require denial of an application for admission. For the reasons set forth below, we find that Ms. Forti engaged in the unauthorized practice of law to a degree that reflects adversely upon her character.

A. Ms. Forti Engaged In The Unauthorized Practice of Law In A Manner That Reflects Adversely Upon Her Character.

The starting point for evaluating Ms. Forti's conduct is the letters of CUPL of July 17, 1995 and September 26, 1995. CUPL of course has greater experience in administering D.C. App. R. 49, and we give its findings great weight and deference.

In its July 17, 1995 letter, CUPL found that "[t]he . . . facts indicate that Ms. Forti has ignored the import and intent of the resolution reached with this Committee in May of this year. In consideration of those facts, this Committee has concluded that it can no longer agree with the representation in our letter of May 24, 1995 to you that Ms. Forti's prior conduct in violation of District of Columbia Court of Appeals Rule 49 was 'unknowing and unintentional.' Nor has she discontinued her violations of Rule 49." (emphasis added)

Between July 17 and September 26, Ms. Forti contested CUPL's July 17 findings. Notwithstanding her submissions, CUPL reiterated its July 17 findings. CUPL

19

"concluded that Ms. Forti has engaged in repeated violations of District of Columbia Court of

Appeals Rule 49 and that, at least since March 10, 1995, that violation has been knowing and

intentional."

        Although we believe we could rest on these findings, our independent review

of the evidence before us supports the conclusion that Ms. Forti engaged in the unauthorized

practice of law.

        D.C. App. R. 49(b)(1) provides:

> No person shall regularly engage in the practice of law in the District of
> Columbia or in any manner hold out as authorized or qualified to practice
> law in the District of Columbia unless enrolled as an active member of the
> Bar.

Rule 49(b)(2) contains additional prohibitions:

> (2) No person . . . shall, in the District of Columbia, advise
> or counsel any person on matters affecting legal rights . . ., or hold out to
> the public as being entitled to practice; or in any other manner assume to
> be an attorney at law, or assume, or use or advertise the title of lawyer,
> attorney or counselor, or any equivalent title, in such manner as to convey
> the impression that such person is entitled to practice law, or in any
> manner advertise that such person either alone or together with any other
> person or persons maintains an office for the practice of law in the District
> of Columbia, without being an enrolled active member of the Bar.

        Thus, Rule 49 contains several distinct prohibitions.[12] Rule 49(b)(1) provides

that a non-member of the Bar may not "regularly engage in the practice of law" nor may she "in

any manner hold out as authorized or qualified to practice law." Pursuant to Rule 49(b)(2), a

---

[12]     A proposed amendment to Rule 49 was published in the Bar Report
(December/January 1997) and is under consideration by the Court of Appeals. We consider Ms.
Forti's conduct under the Rule in effect as of the time of her conduct.

20

non-member must not "advise or counsel any person on matters affecting legal rights," "hold out to the public as being entitled to practice," use any title that conveys an impression that she is entitled to practice law, or advertise in any manner that she maintains an office for the practice of law in the District of Columbia. As set forth below, the Committee concludes that Ms. Forti violated Rules 49(b)(1) and (2) in several respects.

> 1. Ms. Forti intentionally held herself out as authorized to practice law in violation of Rule 49(b)(1).

Ms. Forti clearly and intentionally held herself out as authorized to practice law in the District of Columbia during her conversation with Mr. Nettler. She unequivocally misrepresented herself as a member of the District of Columbia Bar to a prospective employer. The misrepresentation was knowing and was material to her employment application. Any claim that this was a momentary slip of the tongue is refuted by Ms. Forti's failure to correct her misrepresentation promptly.

Moreover, Ms. Forti's misrepresentation to Mr. Nettler was not an isolated instance of improper "holding out." Her resume describes a thriving practice conducted by the "Law Office of Carol A. Forti," in the District of Columbia (both between 1987 and 1989 and again between 1991 and 1995) with no indication that she is not a member of the Bar. Combined with her use of the title of lawyer and equivalent references, as well as the omission of any mention of any bar membership, the resume leaves the erroneous impression that Ms. Forti is entitled to practice law in this jurisdiction. As noted above, Ms. Forti was evasive in her testimony about how many times she may have sent this resume to others, but the Committee has found that she did so on prior occasions.

972

21

In addition to its improper "holding out," the resume also deceptively describes Ms. Forti's work as a solo practitioner and, along with her conversation with Mr. Nettler, forms a pattern of deceptive activities in connection with her efforts to obtain employment.

We reject Ms. Forti's suggestion that it was reasonable for her to assume that Mr. Nettler was aware of her status when she spoke with him about employment. We also reject as untenable Ms. Forti's argument that she could properly hold herself out as a member of the D.C. Bar during that conversation because she believed that her application would be approved in the near future. Ms. Forti was obligated to be precise about her Bar status; it stretches credibility to suggest that Mr. Nettler would have known that Ms. Forti *really* meant that she was about to be admitted when she told him that she was already a member of the Bar.

2. Ms. Forti regularly practiced law in violation of Rule 49(b)(1) prior to the filing of the Keystone litigation.

The Committee also believes that Ms. Forti violated Rule 49(b)(1)'s prohibition against regularly practicing law without being a member of the Bar. "Practice of law" is defined to include:

> appearing for any other person as attorney in any court, or preparing for any other person any deeds, mortgages, contracts, assignments, discharges, leases, trust instruments or any other instruments affecting real or personal property or any interest therein, or any wills, codicils, or any other instrument affecting the disposition of property of decedents' estates, or any pleadings of any kind in any action brought before any court, or preparing or expressing formal opinions or consulting with respect to any of the foregoing or on any other matters of law.

22

D.C. App. R. 49(b)(3). The Committee believes that Ms. Forti's actions as an attorney at the Harker Firm and after she left that firm constituted the practice of law within the meaning of this definition.[13]

At the Harker Firm, Ms. Forti represented clients and provided them legal advice. We believe that this constitutes "expressing formal opinions or consulting . . . on any other matters of law" within the meaning of Rule 49(b)(3). We also believe that these activities violated Rule 49(b)(2)'s prohibition against advising or counseling any person on matters affecting legal rights. Contrary to Ms. Forti's belief, Rule 49(b)(3) does not define the practice of law as limited to giving advice on matters of District of Columbia law. A person who "express[es] formal opinions or consult[s] . . . on any other matter of law" (emphasis added) within the District of Columbia is practicing law regardless of whether the "matter of law" involves District of Columbia law, federal law, Pennsylvania law or the law of any other jurisdiction. Similarly, Rule 49(b)(2) forbids any person in the District of Columbia to advise or counsel another person on matters affecting legal rights. The term "legal rights" in the rule is not restricted to legal rights under District of Columbia law.[14]

Ms. Forti argues that her work at the Harker Firm was supervised at all times by members of the District of Columbia Bar. Rule 49, however, does not provide that all persons

---

[13]   Her activities before she joined the Harker Firm consisted of self-representation. Accordingly, those activities do not constitute the unauthorized practice of law.

[14]   Nor can we agree with Ms. Forti that she effectively practiced in Pennsylvania when she was working for Kemper after she left the Harker Firm, notwithstanding her physical presence in the District of Columbia.

974

23

supervised by members of the Bar are exempt from the prohibition against unauthorized practice.[15]

Ms. Forti's practice after she left the Harker Firm also violated Rule 49(b). Prior to the filing of the Keystone litigation in late 1993, Ms. Forti was providing advice to her client on its obligations under federal environmental law. She clearly was "consulting" on a matter of law within the meaning of Rule 49(b)(3) and was advising or counseling her client on matters affecting legal rights within the meaning of Rule 49(b)(2). Moreover, she was not supervised by any member of the District of Columbia Bar. Even if her "supervision" defense were meritorious, therefore, it would be inapplicable here.[16]

We believe that Ms. Forti erroneously believed that her practice at the Harker Firm was not unauthorized practice. We also believe that Ms. Forti was derelict in failing to seek admission for the period of practice after she left the Harker Firm, i.e., January, 1991 to late in 1993, and that her dereliction was more significant, because she no longer had even her

---

[15]    The only exception is for employees of non-profit legal services organizations, the Public Defender Service or the Corporation Counsel in certain circumstances. D.C. App. R. 49(c)(7).

[16]    Ms. Forti cites D.C. App. R. 49(c)(4), which allows non-members of the Bar to practice before "any department, commission or agency of the United States to the extent that such practice is authorized by any rule or regulation of any such department, commission or agency," provided that such a person is not practicing law "except as permitted by the license granted by such department, commission, or agency." Her argument appears to be that her practice of "federal environmental law" is authorized by that rule. Ms. Forti, however, has not cited any "rule or regulation" of the EPA or any other federal agency that authorized her activities at the Harker Firm or her non-litigation activities on behalf of Kemper. Rule 49(c)(4), therefore, is of no benefit to her.

24

purported reliance upon supervision by members of the Bar as her reason for not seeking admission.

Under the circumstances, however, we do not believe that Ms. Forti's violation of Rule 49(b)(1)'s prohibition against regularly practicing law without being a member of the Bar, considered by itself, is sufficient to preclude a finding of good moral character and fitness to practice law. Her violation came to the Committee's attention only because she sought admission to the Bar, and thus authorization to practice in this jurisdiction. Moreover, there is no evidence that her violation of that prohibition was accompanied by deceitful conduct, identified harm to clients, intentional disregard of the Rule, or other misconduct.[17] While standing alone, her violation of Rule 49(b)(1)'s prohibition against regularly practicing law without being a member of the Bar might not be sufficient to deny her present application for admission, the Committee believes that it is a negative factor to be considered along with our other conclusions.

3. Because the Rule is ambiguous, the Committee makes no finding about whether Ms. Forti engaged in the unauthorized practice of law with regard to her participation in the Keystone litigation.

For the period after the filing of the Keystone litigation, the situation is more complex. Rule 49(c)(3) permits non-members of the Bar to appear in federal court in certain circumstances.

---

[17] We recognize that a contrary ruling might well be a disincentive to attorneys who presently are engaged in unauthorized practice to come forward and to remedy their violations by becoming members of the Bar. We also do not want to appear to condone the conduct of those who are engaged in the unauthorized practice. Thus, because we expect a change to Rule 49 in the reasonably foreseeable future, we will give appropriate weight to the length of time an attorney has practiced in violation of Rule 49 before seeking admission to the Bar.

976

25

That rule provides:

> (3) Nothing herein shall prohibit any attorney from appearing and participating in a particular action or proceeding before any court of the United States to the extent that such appearance and participation is authorized by any rule or order of such court, provided the person is not otherwise regularly engaged in the practice of law in the District of Columbia or is not in any manner holding out as authorized or qualified to practice law in the District of Columbia without having become an enrolled active member of the Bar of this court. This rule shall not be construed to repeal, supersede or modify any law or rule which relates to practice before any court of the United States.

Thus, a lawyer may appear in federal court, provided he is not otherwise engaged in the practice of law in the District of Columbia. The rule may be interpreted narrowly to allow attorneys located outside the District of Columbia to appear regularly in the federal courts that are located here without such a pattern of conduct being deemed to be the practice of law. If, however, an attorney's activities in the District other than appearing in federal court constitute the practice of law (e.g., regularly expressing opinions or consulting on matters of federal law, or maintaining an office for providing legal services here) then the exemption does not apply. A broader interpretation of the Rule 49(b)(3) exemption is that all activities associated with a federal court appearance authorized by that court are permissible, and that an attorney may consult, express opinions, maintain an office and otherwise hold herself out as an attorney so long as her practice is limited to matters before federal courts. Due to this ambiguity, we do not believe that Ms. Forti's representation of Kemper after the filing of the litigation in late 1993 should reflect adversely upon her character.

977

26

B. Ms. Forti's Disavowal Of Her Previous Admissions That She Violated
   Rule 49 Raises Concerns About Her Character.

The Committee concludes that Ms. Forti lacked candor in defending herself against the charge of unauthorized practice. As described above, after her initial involvement with CUPL, Ms. Forti consistently sought to portray herself as someone who now realized that she violated Rule 49, although her violations were unknowing and unintentional. It is clear that she believed that confessing to a violation and showing remorse was the most effective way for her application for admission to be granted. When the Committee decided to conduct a formal hearing, however, she disavowed her acknowledgment of wrongdoing and expressions of remorse and insisted that she had not violated the Rule.

We do not believe that Ms. Forti has satisfied an attorney's duty of candor toward a tribunal. We do not fault her initial decision to enter into an agreement with CUPL in an effort to put this matter behind her. Nor could we fault her reasoning that such a decision was the wisest course to take. However, the "agreement" with CUPL should have reflected her actual beliefs. If she believed that she did not violate Rule 49, she could have entered a consent order pursuant to D.C. App. R. 49(e)(5)(b), by which she could have agreed to cease and desist from the activities that CUPL believed were unlawful without admitting that the violation occurred. We do not believe it was necessary for her to admit to something that she now represents she then believed to be untrue.

Far more significant are Ms. Forti's continued representations to CUPL and to this Committee that she had violated Rule 49 but was sorry for the violations. The record contains at least six such written representations, R. 112, 115, 128, 133, 216, 359, and Ms. Forti

918

27

did not inform the Committee of what she now claims are her true beliefs until the formal hearing in this matter. It would have been a simple matter for Ms. Forti to inform this Committee that she acknowledged violating Rule 49 only to settle the matter before CUPL and that her acknowledgment did not represent her actual beliefs. We can surmise that she did not so inform the Committee because of a mistaken belief that such a statement would prolong the admissions process. But whatever her reason, we conclude that Ms. Forti has not been candid with the Committee in discussing her position on the Rule 49 issues, and that lack of candor precludes a finding of good moral character and fitness to practice law.

> C. Ms. Forti's Making Unsubstantiated Charges Against Her Former Attorneys Without Reasonable Inquiry Also Demonstrates Her Lack of Character And Fitness To Practice Law.

Ms. Forti has acknowledged that she made false charges against her former counsel. We have concluded that Ms. Forti leveled her charges against Mr. Foster and Mr. Tabackman without first conducting a sufficiently diligent investigation and without reasonable basis. We believe that Ms. Forti's assertion of those charges without a reasonable inquiry reflects adversely upon her character and fitness to practice law.

Contrary to Ms. Forti's current hypothesis, we have not attempted to weigh the merits of her charges against her former counsel. Nor have we considered the letter Mr. Tabackman wrote in response to her accusations. Rather, we have relied upon (a) Ms. Forti's belated admission that her charges were false and (b) the evidence she had, or appears to have had, at the time she made them. On that basis, we have concluded that her inquiry was grossly inadequate.

979

28

CUPL's September 26 letter, which Ms. Forti apparently had in her possession, stated that CUPL had received written submissions from Ms. Forti and her counsel after July 17, 1995. R. 107. That statement should have alerted Ms. Forti that CUPL received her August 17 letter, as it was the only submission that she sent to CUPL after July 17. At the very least, the September 26 letter put her on notice that a further investigation was necessary before she could determine: 1) that CUPL did not receive the letter; 2) that Mr. Foster deliberately and maliciously failed to send it; and 3) that Mr. Foster and Mr. Tabackman then conspired to conceal Mr. Foster's supposed misdeed. The fact that the Subcommittee members were not instantly familiar with every specific detail of a record that comprised more than 100 pages when the informal hearing occurred in December 1995 was not a basis, without more, to conclude that Ms. Forti's lawyers were engaged in, of all things, a conspiracy to harm her interests before the Committee.

It is particularly revealing — and troubling — that Ms. Forti never considered asking Mr. Foster, Mr. Tabackman, or CUPL whether the August 17 had been received. R. 642. While Ms. Forti's relationship with her counsel may have deteriorated over time, they were not adversaries as of the Subcommittee meeting, and her counsel was duty-bound to respond honestly to her, had she inquired.

No attorney should make charges that persons intentionally withheld favorable evidence and conspired against her without a good faith basis after a reasonable inquiry. If Ms. Forti's charges had been made in a document filed in a federal court or in Superior Court, they could have subjected Ms. Forti to sanctions under Fed. R. Civ. P. 11 or SCR-Civil 11. While Ms. Forti now attempts to excuse her behavior by citing the stresses to

30

## CONCLUSION

Ms. Forti has not produced clear and convincing evidence that she possesses the requisite character and fitness for admission to the Bar. She both intentionally violated the prohibition against holding herself out as authorized to practice law and practiced law in the District of Columbia without authorization. She was not candid with the Committee about whether she believed that she had violated D.C. App. R. 49. She attacked her counsel without reasonable inquiry. The Committee, therefore, recommends that her application be denied.[16]

Respectfully submitted,

Mark S. Carlin
Acting Chairman
Committee on Admissions

---

[16]    Mr. Carlin, Ms. Gere, Mr. Hyman, and Ms. Ludaway participated in this decision.

31

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to

Michael B. Trister, Esq., Lichtman, Trister, Singer & Ross, Suite 500, 1666 Connecticut Avenue,

N.W., Washington, D.C. 20009.

Mark S. Carlin
Acting Chairman
Committee on Admissions

983

DISTRICT OF COLUMBIA
COURT OF APPEALS



No. 97-BG-895

IN RE: CAROL A. FORTI,

        Applicant.

**_1._**    **RESPONSE OF THE COMMITTEE ON ADMISSIONS
TO THE PETITION FOR HEARING EN BANC**

       The Committee on Admissions (the "COA") respectfully submits this response to petitioner, Carol A. Forti's self-styled petition for hearing <u>en banc</u>.[1] The COA requests that the petition be denied.

**ISSUE PRESENTED**

       In the opinion of the COA the petition presents the following issue: Whether an applicant for admission to the Bar who receives an adverse recommendation from the COA and thereafter elects to withdraw her application instead of seeking review of the COA's recommendation by this Court, nevertheless may obtain judicial review of her application more than two years after her decision to withdraw. The COA respectfully submits that the division that considered Ms. Forti's request for such review correctly denied it and that this case does not meet the standards for rehearing <u>en banc</u> set forth in D.C. App. R. 40(e).

---

[1]    As Ms. Forti's petition in this matter already has been denied by a division of this Court, the petition is more accurately styled a petition for rehearing <u>en banc</u>.

## STATEMENT OF FACTS

Ms. Forti applied for admission to the Bar in March 1994. Based on information contained in her application, the COA referred her application to the Committee on Unauthorized Practice of Law ("CUPL") for its advice as to whether Ms. Forti had engaged in the unauthorized practice of law for several years prior to the submission of her application. There followed a series of interactions between Ms. Forti and CUPL, which are described in more detail in the COA's Findings of Fact, Conclusions of Law and Recommendation, filed with this Court on May 30, 1997 (attached as Exhibit 1 and hereinafter cited as "Opinion") at 3-5. The COA then conducted a formal hearing pursuant to D.C. App. R. 46(f) to consider whether, as required by D.C. App. R. 46(d), Ms. Forti possessed the requisite good moral character and general fitness to practice law.

The COA's hearing focused on three general issues: 1) whether Ms. Forti had engaged in the unauthorized practice of law; 2) if so, whether such unauthorized practice precluded a finding that she possessed the character and fitness required by the Court's rules; and 3) whether Ms. Forti had made unsubstantiated charges against the attorneys who had represented her in the admissions process. On May 30, 1997, the COA issued its opinion, finding that Ms. Forti engaged in the unauthorized practice of law in the District of Columbia in several respects. Specifically, it found:

- In a conversation with Richard Nettler, Chairman of the COA, in which she was seeking employment with Mr. Nettler's firm, Ms. Forti falsely stated that

-2-

she was a member of the District of Columbia Bar, thereby holding herself out as a member of the Bar[2]. Opinion at 9-11, 20.

- Ms. Forti had sent a resume to Mr. Nettler and others stating that she had practiced in the District of Columbia as the "Law Office of Carol A. Forti" from January 25, 1991 forward, thereby holding herself out as an attorney in the District of Columbia even though she was not admitted here. Opinion at 11-13, 20-21.

- Ms. Forti gave legal advice to at least one client, Kemper Industries, out of her home office in the District of Columbia, between January 1991 and October 1993, thereby acting as an attorney within the District of Columbia. Opinion at 6-7, 21-24.[3]

- Ms. Forti was employed at a District of Columbia law firm between May 1989 and January 1991, during which time she gave clients of the firm legal advice and represented them in negotiations. Opinion at 6, 21-24.

The COA did not, however, recommend that Ms. Forti's application be denied merely because she had engaged in unauthorized practice. Instead, it judged her conduct by the following standard:

---

[2]  Mr. Nettler did not participate in the COA's deliberations concerning Ms. Forti.

[3]  Ms. Forti also represented Kemper Industries in litigation in the United States District Court for the Middle District of Pennsylvania that was commenced in 1993. That Court admitted her pro hac vice. The COA found former D.C. App. R. 49(C)(3) ambiguous about whether her pro hac vice admission in Pennsylvania authorized her to undertake activities ancillary to that litigation in the District of Columbia. Accordingly, it decided that those activities did not reflect adversely upon her character. Opinion at 25.

-3-

0107721.01

>       We recognize that those who engage in unauthorized practice, like those who
>       violate other laws, may do so for a variety of reasons. Some may do so
>       innocently (i.e., without knowledge or reason to know of their violation), while
>       others may act negligently, recklessly or intentionally. An applicant's
>       unauthorized practice may be accompanied by deceitful conduct or other evidence
>       that an applicant lacks the character to qualify for admission to the Bar. The
>       Committee does not believe that unauthorized practice of law should be a per se
>       basis for denying an application for admission to the Bar, but rather that the facts
>       of each case should be evaluated to determine whether, considering the totality of
>       circumstances, the applicant's unauthorized practice is reflective of character
>       flaws that require denial of an application for admission.

Opinion at 17-18.

Applying this standard, the COA concluded that some, but not all, of Ms. Forti's

actions in connection with her unauthorized practice of law reflected adversely upon her

character. It found that she "unequivocally misrepresented herself as a member of the District of

Columbia Bar to a prospective employer" during her conversation with Mr. Nettler. Opinion at

20.[4] It also found that her resume described an ongoing "thriving" practice that she conducted

from the "Law Office of Carol A. Forti" in the District of Columbia, leaving "the erroneous

impression that Ms. Forti is entitled to practice law in this jurisdiction". Id. Furthermore, the

resume deceptively describes her work as a solo practitioner, making it appear that she had many

clients and had conducted numerous professional activities when, in fact, her practice was far

more limited. The COA concluded that the resume, along with her conversation with Mr.

Nettler, "forms a pattern of deceptive activities in connection with her efforts to obtain

employment." Opinion at 21.

---

[4]     The COA specifically rejected Ms. Forti's explanation, repeated in her present petition,
        that she had no reason to deceive Mr. Nettler because she knew he was the Chairman of
        the COA. "Falsely claiming admission to the District of Columbia Bar was not truthful,
        regardless of whether Ms. Forti knew who Mr. Nettler was and vice versa." Opinion at
        10-11.

0107781.01

The COA, however, also found that several instances of Ms. Forti's unauthorized practice did not reflect adversely upon her character. Specifically, her work at the law firm and her work on behalf of Keystone constituted advising other persons on matters affecting legal rights in violation of D.C. App. R. 49(b)(3) as it then existed. The COA nevertheless concluded that those violations were unaccompanied by evidence of "deceitful conduct, identified harm to clients, intentional disregard of the Rule or other misconduct." Opinion at 24.

The COA also found that Ms. Forti's testimony at the hearing varied significantly from her representations to CUPL and that this was additional negative evidence about her character.

> [A]fter her initial involvement with CUPL, Ms. Forti consistently sought to portray herself as someone who now realized that she violated Rule 49, although her violations were unknowing and unintentional. It is clear that she believed that confessing to a violation and showing remorse was the most effective way for her application for admission to be granted. When the [COA] decided to conduct a formal hearing, however, she disavowed her acknowledgment of wrongdoing and expressions of remorse and insisted that she had not violated the Rule.

Opinion at 26.

The COA concluded that Ms. Forti's behavior was inconsistent with an attorney's duty of candor toward a tribunal. Id. Simply put, she told one story to CUPL about whether she in fact had violated Rule 49 and a different one to the COA, depending upon her assessment of which story would best serve her interests in obtaining admission. The COA quite properly concluded that she had not been candid with it and that her lack of candor precluded a favorable finding on her character and fitness. Opinion at 26-27.

Finally, the COA discussed the false charges that Ms. Forti had made about the conduct of her former attorneys. She had claimed that her former attorneys had conspired to harm her professionally and to hurt her prospects for admission by not forwarding a letter that

-5-

she had written to the CUPL and by covering up that supposed fact. Opinion at 15-16. At the COA's hearing, however, Ms. Forti admitted that her charges were false, because the letter in fact had been sent to the CUPL. Opinion at 17-18. The COA found that Ms. Forti had made her charges without a reasonable basis and concluded that this reflected adversely upon her character. Opinion at 27-29.

## PRIOR PROCEEDINGS

After issuance of the COA's opinion on May 30, 1997, Ms. Forti obtained several extensions of the fifteen-day deadline provided in D.C. App. R. 46(f)(4) for deciding whether or not to withdraw her application in light of the COA's recommendation. After she decided not to withdraw, this Court, in accordance with D.C. App. R. 46(g)(2), issued an order for her to show cause, on or before September 15, 1997, why her application should not be denied. Ms. Forti then obtained several extensions of that deadline from the Court. Finally, on November 7, 1997, more than five months after issuance of the COA's opinion, Ms. Forti filed a response to the order to show cause. At the same time, she also filed a notice of withdrawal of her application. This Court treated her notice of withdrawal as a motion for leave to withdraw and granted that motion on November 18, 1997, thereby terminating her application.

Ms. Forti now comes to this Court seeking an "investigation" of the COA's handling of her application, although her petition makes clear that she is really asking this Court to review the record of her case and to admit her to the Bar -- the precise relief that she could have obtained had she not withdrawn her application more than two years ago. A division of this Court, without requesting a response from the COA, denied her request on January 6, 2000 and Ms. Forti now seeks en banc consideration.

-6-

## ARGUMENT

Ms. Forti's request for *en banc* review of her application faces two formidable obstacles. The first is D.C. App. R. 46(g)(3), which provides. *inter alia*, that review of the COA's record by this Court after issuance of an order to show cause is the *exclusive* means of obtaining judicial review of proceedings before the COA unless there are "extraordinary circumstances for instituting such review." Ms. Forti has failed to satisfy this standard.

To the extent that Ms. Forti had any complaints about the handling of her application, Rule 46(g)(2) provided her an adequate opportunity to bring them to the Court's attention. Indeed, she had more than five months from the issuance of the COA's opinion to consider the COA's recommendation and decide what to do. For reasons best known to herself, Ms. Forti deliberately bypassed her opportunity for review of the COA's record by this Court. Her response to the order to show cause, along with the COA's reply to that response, could have been considered by the Court more than two years ago, but Ms. Forti knowingly and willingly decided to forgo that opportunity. Ms. Forti now asserts that she withdrew her application because she feared that this Court would not believe her, although she apparently has changed her mind. Petition at 9.[5] Surely, a litigant's doubts about her chances for success do not satisfy the "extraordinary circumstances" test of Rule 46(g)(3). Otherwise, an applicant would be able

---

[5]   Ms. Forti's extremely serious charge that she feared that CUPL's Chairman and COA's Counsel would commit perjury at a hearing, Petition at 9, is wholly unsubstantiated. Moreover, it reflects a misunderstanding of the scope of this Court's proceedings in bar admission matters. Pursuant to D.C. App. R. 46(g)(2), the Court reviews the record compiled by the COA, and does not receive any new testimony.

-7-

to ignore deadlines at will until whatever time that she believed, for whatever reason, that the outcome would be more favorable.[6]

Two years ago, this Court afforded Ms. Forti the same opportunity for judicial review it affords all applicants for admission who have received an unfavorable recommendation from the COA. At that time, this Court could have reviewed all of her claims about the COA's and the CUPL's supposedly improper actions in connection with her application. She freely decided not to take advantage of that opportunity. Her belated change of heart falls far short of the "extraordinary circumstances" specified by Rule 46(g)(3).

The second obstacle faced by Ms. Forti is D.C. App. R. 40(c), which provides that rehearing en banc "is not favored" unless there is a need to secure or maintain uniformity of the Court's decisions or there is a question of exceptional public importance. Ms. Forti has satisfied neither requirement. She has identified no decision of this Court interpreting the "extraordinary circumstances" standard of Rule 46(g)(2) (or any similar requirement) that even suggests that consideration of her application by this Court is justified at this late date. Ms. Forti's citation of other bar admission decisions by this Court is beside the point. None of them involved an applicant who waited two years to seek judicial review, and none of them suggests that there are any extraordinary circumstances in this case. To be sure, Ms. Forti disagrees with the COA's

---

[6]     Ms. Forti's other excuse for her two year delay in seeking judicial review is that she was "seriously incapacitated" starting in November 1996. Petition at 9. That claim is not credible, for at least two reasons. First, she never mentioned it in any of her 1997 filings when she sought (and received) significant extensions of time for required filings. Second, her alleged incapacitation did not prevent her from preparing a 34 page single-spaced brief that accompanied her notice of withdrawal and set forth her objections to the COA's actions. This record shows that Ms. Forti was unwilling, not unable, to proceed with review of the record by this Court in 1997.

recommendation and apparently believes that decisions of this Court support her position. The COA, on the other hand, believes that its recommendation was proper based upon both the law and the evidence before it. That dispute is beside the point at this juncture, as Ms. Forti must show that extraordinary circumstances justify her delay in seeking review. She has not done so, and none of the cases she cites holds otherwise.

Ms. Forti also has not shown that there is a question of exceptional importance in this case. There has not been a flood of applicants seeking to obtain judicial review of the Committee's actions years after those actions have become final. While this case is important to Ms. Forti, there is no general public interest in the interpretation of Rule 46(g)(3) that would justify the attention of the full Court at this time. Ms. Forti undoubtedly will assert that her unfounded charges against the COA and CUPL raise issues of great public importance, but that argument is misplaced. Her failure to take advantage of the available opportunity for this Court to hear those charges is substantial evidence that they lack credibility. Moreover, the COA's opinion carefully and thoroughly evaluates the evidence, considers Ms. Forti's explanations of unfavorable evidence (repeated in this Court), and resolves some issues against her and some in her favor.[7] A litigant should not be entitled to en banc review simply by making outrageous claims at a late date and then asserting that those claims are exceptionally important.

---

[7]   Although the COA does not speak for the CUPL, we note that the COA's opinion states that it relied upon its "independent review of the evidence" in reaching its conclusions on the unauthorized practice issues. Opinion at 19. Thus, even if there were procedural errors in the CUPL proceedings, any such errors did not affect the COA's deliberations. Moreover, not even Ms. Forti claims that the COA's findings about her lack of candor at the hearing and her unsubstantiated claims against her attorneys were influenced in any way by the alleged errors in the CUPL proceedings.

## CONCLUSION

For the reasons stated herein, the COA respectfully requests that Ms. Forti's

petition be denied.

Respectfully submitted

Dated: *March 1, 2000*

John P. Dean
Counsel
Committee on Admissions

-10-

# EXHIBIT B

A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☒ Conv. Ins. | | 2002070 | 0013303052 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Alberto E. Cheng and Luisa Zanforlin
   ADDRESS: 2936 Garfield Terrace, Washington, D.C. 20008

E. NAME OF SELLER: Carol A. Forti
   ADDRESS: 2936 Garfield Terrace, N.W., Washington, D.C. 20008

F. NAME OF LENDER: Charter One Mortgage
   ADDRESS: 6011 Executive Boulevard, #300, Rockville, Maryland 20852

G. PROPERTY ADDRESS: 2936 Garfield Terrace, N.W., Washington, D.C. 20008

H. SETTLEMENT AGENT: Nathan L. Finkelstein, Phone: 301-951-9400/Fax : 301-951-8401
   PLACE OF SETTLEMENT: 7315 Wisconsin Avenue, Suite 400 East, Bethesda, MD 20814

I. SETTLEMENT DATE: 04/29/2002

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | 950,000.00 | 401. Contract sales price | 950,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 46,151.37 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | 963,942.83 | **420. GROSS AMOUNT DUE TO SELLER:** | 950,000.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 40,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 650,000.00 | 502. Settlement charges to seller (line 1400) | 46,630.70 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff #8801637 19612 | 450,742.63 |
| | | Greenpoint Mortgage Corp. | |
| 205. | | 505. Payoff of Second Mortgage Loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes  04/01/02 to 04/29/02 | 414.26 | 510. City/town taxes  04/01/02 to 04/29/02 | 414.26 |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | 690,414.26 | **520. TOTAL REDUCTION AMOUNT DUE SELLER:** | 501,831.57 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 963,942.83 | 601. Gross amount due to seller (line 420) | 950,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 690,414.26 | 602. Less reduction amount due seller (line 520) | 501,831.57 |
| **303. CASH FROM BORROWER:** | 273,428.27 | **603. CASH TO SELLER:** | 448,168.43 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

The undersigned hereby acknowledges receipt of a completed copy of pages 1 & 2 of this statement & any attachments referred to herein.

TIN  025281782   SELLERS SIGNATURE   Carol A Forti

SELLERS NEW MAILING ADDRESS:

MAY 27 2003 13:17          301 951 8401          PAGE.02

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $350,000.00 | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 704. $ 40,000.00 POC, Earnest Money required as part of commission by W.C. & A.N. Miller Realtors | | | |
| 705. Disputed Commission of 3%-held in escrow per escrow agreement | | | 28,500.00 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee   1.000 %Charter One Mortgage | | 6,500.00 | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee | to Richard Gill | 400.00 | |
| 804. Credit Report | | | |
| 805. | | | |
| 806. Underwriting Fee | to Charter One Mortgage | 150.00 | |
| 807. Flood Certification Fee | to Charter One Mortgage | 20.00 | |
| 808. Tax Related Service Fee | to 1st American | 48.00 | |
| 809. Doc Processing Fee | to Charter One Mortgage | 300.00 | |
| 810. | | | |
| 811. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from 04/29/2002 to 05/01/2002  @$ 120.2058 /day   3 Days | | 240.41 | |
| 902. Mortgage Insurance Premium for | to | | |
| 903. Hazard Insurance Premium for   1 year to Geico   (P.O.C.) 1,829.00 Buyer | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance | 3 mo @$   160.87 /mo | 482.61 | |
| 1002. Mortgage Insurance | mo @$   /mo | | |
| 1003. City Property Taxes | mo @$   434.53 /mo | | |
| 1004. County Property Taxes | 7 mo @$   434.53 /mo | 3,041.57 | |
| 1005. Annual assessments | mo @$   /mo | | |
| 1006. Aggregate Analysis Adjustment   to Charter One Mortgage | | 916.52- | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement Fee | to Nathan I. Finkelstein, Attorney at Law | | 175.00 |
| 1102. Abstract or title search | to Capital Abstracts, L.P./NIF | 155.00 | |
| 1103. Title examination | to Nathan I. Finkelstein, Attorney at Law | 295.00 | |
| 1104. Title Insurance binder | to Nathan I. Finkelstein, Attorney at Law | 50.00 | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | | |
| (includes above items No: | ) | | |
| 1108. Title Insurance | to Commonwealth Land Title Insurance Company | 1,867.00 | |
| (includes above items No: | ) | | |
| 1109. Lender's Coverage $ | 650,000.00   - 1,387.50 | | |
| 1110. Owner's Coverage $ | 850,000.00   - 879.50 | | |
| 1111. Release Fee(s) | to Nathan I. Finkelstein, Attorney at Law | | 90.00 |
| 1112. | | | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees: Deed $   ; Mortgage $ 80.00   ; Release $ 40.00 | | 80.00 | 40.00 |
| 1202. City/County Tax/Stamps:   Deed $10,450.00; Mortgage $ | | | 10,450.00 |
| 1203. City Recordation Tax   Deed $10,650.00; Mortgage $ | | 10,450.00 | |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. Overnight/Courier/Fax/Copies  to Nathan I. Finkelstein, Attorney at Law | | 80.00 | 25.00 |
| 1304. Water test paid by Lender  to Nathan I. Finkelstein, Attorney/Sun Trust 160.00 Buyer | | | |
| 1305. Prepared Amortization  to Chevy/Sanford in | | 63,406.94- | |
| 1306. Property Taxes adjustment  to NIF Escrow | | | 328.61 |
| 1307. Interest Adjustment - 1st Mtg   to NIF Escrow | | | 1,081.85 |
| 1308. Interest Adjustment - 2nd loan   to NIF Escrow Account | | | 160.26 |
| 1400. TOTAL SETTLEMENT CHARGES   (enter on lines 103, Section J and 502, Section K) | | 46,157.37- | 40,630.70 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.



WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

## ADJUSTMENTS TO HUD-1 SETTLEMENT STATEMENT

**Cash to Seller from Settlement Statement as shown on Line 603: $450,833.41**

Adjustment to Line 700: Seller disputes commission of 3%-$28,500.00: commission held in escrow for resolution per escrow agreement

Adjustment to Line 210/510: Property Taxes adjusted ($14.29 per day for 9 days) Credit to purchasers for $128.61 held in escrow

Adjustment to Line 901(1st Trust) : Interest adjusted for nine (9) days at $120.205 per day. Credit to Purchasers for $1,081.85 held in escrow

Adjustment to Line 901(2nd Trust) : Interest adjusted for nine (9) days at $15.582 per day. Credit to Purchasers for $140.24 held in escrow

Adjustment to Line 504: (Interest added to payoff of old loan) $460,792.61

Adjusted Cash to Seller from Settlement Statement as shown on Line 603: **$419,662.43**

We the undersigned acknowledge receipt of a true, correct and conformed copy of original.

PURCHASERS:                                  SELLER:

_____                      _____
Alberto E. Chong                             Carol A. Forti

_____
Luisa Zanforlin

                                             SETTLEMENT ATTORNEY:
Date- May 7, 2002

                                             _____
                                             Nathan I. Finkelstein

# EXHIBIT C

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

W.C. & A.N. Miller Development Company
      Plaintiff

         v.                                      Case No. 02ca0004745
                                                  Calendar 13, Judge Abrecht

Carol A. Forti
      Defendant/Third Party Plaintiff

         v.

June Humbert
4901 Scarsdale Road
Bethesda, Maryland 20816
      Third Party Defendant

         v.

Luisa Zanforlin
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
      Third Party Defendant

         v.

Alberto Chong
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
      Third Party Defendant

RECEIVED
Civil Clerk's Office

AUG 0 6 2002

Superior Court of the
District of Columbia
Washington, D.C.

## THIRD PARTY COMPLAINT

### PREFACE TO THE THIRD PARTY COMPLAINT

The issues in the instant case are breach of contract and damages.

Defendant/Third Party Plaintiff asks the court to note that Plaintiff failed to submit
the entire Contract when Plaintiff filed the Complaint. In fact, Plaintiff failed to
include the most important provisions of the Contract, which are contained in the

Escalator Clause Addendum. According to the first sentence of text in the Escalator

Clause Addendum: "The parties agree that the following provisions [of the

Escalator Clause Addendum] shall supercede any provisions to the contrary

contained in said Contract. Defendant/Third Party Plaintiff furnished a true and

complete copy of the Contract as Exhibit 1 to her Answer.


## BEGINNING OF THIRD PARTY COMPLAINT

1. This Court has jurisdiction over this civil action under D.C. Code Section 11-921

(2001).

2. On or about April 15, 2002, June Humbert, a Buyer-Broker for Luisa Zanforlin and

Alberto Chong (hereafter "Chong/Zanforlin") drafted a Contract Offer by

Chong/Zanforlin to purchase Defendant Forti's residence at 2936 Garfield Terrace,

N.W., Washington, D.C. 20008. The Contract Offer included an Escalator Clause

Addendum. The first line of text of the Escalator Clause Addendum specifically states:

> The parties (namely Chong, Zanforlin, and Forti) agree that the following
> provisions are incorporated into the referenced Contract and shall supercede any
> provisions to the contrary in said Contract:
>
> 1. In the event that Seller receives one or more additional bonafide offers to
> purchase the Property with terms acceptable to Seller (the 'Other Offers'), but
> which result in net proceeds of sale payable to the Seller equal to or greater than
> the net proceeds of sale payable to the Seller under this Contract, then the sales
> price stated in this Contract shall automatically increase, without further action on
> the part of Buyer, to an amount which generates net proceeds of sale to Seller
> equal to $5,000 dollars in excess of the highest net proceeds of sale generated in
> such Other Offers. Notwithstanding the foregoing, the sales price under this
> Contract shall in no event exceed $975,000.

3. The Offer to buy began at $915,000 and escalated automatically up to but not to

exceed $975,000.

4. June Humbert told the Seller that this Escalator Clause Addendum was drafted by an attorney for W.C. & A.N. Miller.

5. After reviewing Contract Offers on the evening of April 15, 2002, Seller called Humbert to inform her that she was accepting the Chong/ Zanforlin Contract Offer to pay $950,000 for the property. Forti informed Humbert of the following facts. The next highest contract offer was for $945,000. It was between principals and no broker was involved. This "Other Offer" would have provided net proceeds to Seller of $945,000. This "Other Offer" automatically invoked the Escalator Clause Addendum of the Chong/Zanforlin Contract, whereby Chong/Zanforlin agreed to pay net proceeds of $5,000 above the net proceeds of the next highest offer, i.e., $950,000 in net proceeds.

6. The next day, June Humbert reviewed the next highest Contract Offer at her leisure, page by page, in the presence of Seller Forti (in Forti's kitchen). Satisfied that it was a bona fide offer, she handed the "Other Offer" back to Forti together with the other Buyer's earnest money check.

7. Humbert then arranged for Chong and Zanforlin to initial their Contract Offer to pay net proceeds of $5,000 above the net proceeds of the next highest offer, i.e., $950,000.

8. The settlement attorney failed to provide Seller Forti with the HUD settlement statement with the allocation of costs to Buyers and Seller in advance of the date of settlement. Not until the day of settlement, April 29, 2002, did Seller Forti discover that Buyers' Broker Humbert and possibly, the Buyers, either persuaded or colluded with the settlement attorney to deduct a 3 percent broker's commission, $28,500, from the $950,000 owed to Seller as net proceeds.

9. Deduction of $28,000 from the proceeds due Seller conflicted directly with the

- 3 -

provisions of the Escalator Clause Addendum, which promised to pay Seller $5,000 in net proceeds above the net proceeds of the next highest offer.

10. Seller Forti never signed any agreement with Broker Humbert to pay her a three percent commission.

11. Paragraph 21 of the Contract addresses the issue of the broker's fee. It states: "Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") as set forth in the listing agreement...." There was no listing agreement, and there was no agreement between Seller Forti and Buyers' Broker Humbert regarding payment of a commission.

12. In Paragraph 33, "OTHER TERMS," handwritten by Humbert, was the phrase: "Commission 3% to be paid to W.C. & A.N. Miller at settlement." The phrase written in by Humbert does not specify who will pay a 3 % commission.

13. Given the terms of the Escalator Clause Addendum, which both parties agreed takes precedence over any conflicting contract terms, Seller Forti reasonably assumed that Buyers had agreed to pay a 3 % commission.

14. Webster's New Collegiate Dictionary defines "net" as "free from all charges or deductions." By definition, net proceeds excludes a commission of $28,500.

15. Seller verbally and specifically agreed at the settlement table on April 29, 2002 to accept the settlement attorney's recommendation to escrow the disputed commission and proceed with settlement, but Buyers' Broker Humbert, loudly and emphatically, but without any legal basis, refused to escrow the disputed amount of the commission and proceed with settlement. In addition, she encouraged Buyers Chong/Zanforlin to refuse to escrow the disputed commission and proceed to settlement.

- 4 -

16. Humbert announced imperiously that Seller Forti would have to negotiate with W.C. & A.N. Miller's outside counsel, Don Hadley.

17. From the offices of the settlement attorney, Seller Forti tried to reach Hadley by phone, but he was not available, and no one in his office knew when he would be available. Since Humbert and Buyers refused to escrow the disputed commission, Seller told the Buyers, Buyers' Broker, and the settlement attorney that she would not sign the HUD settlement statement in its current form. She also informed them that she was leaving to keep previously scheduled appointments known to all three other parties: an 11:00 a.m. "walkthrough" of 14 West Chapman Street, Alexandria, Virginia, on which she had a contract to buy, and a 12:00 noon settlement on 14 West Chapman Street.

18. Since there was an Assignment of Proceeds from the sale of 2936 Garfield Terrace, N.W. towards the purchase of 14 West Chapman Street, Buyers and the Buyers' Broker apparently thought that they had Seller "over a barrel" and that Seller would, by necessity, have to sign any HUD settlement statement put in front of her—no matter how much she disagreed with the allocation of costs.

19. Although Seller tried to reason with Buyer Chong that the Buyers and Buyer Broker's interpretation of the Contract was illogical, the Buyers refused to listen to reason and engaged Richard Aguglia, an attorney with Hunton & Williams. On behalf of Buyers, Aguglia threatened to sue Seller for specific performance.

20. Seller engaged the firm of Paley Rothman to represent her. Counsel for Seller told Agulia that Seller was ready and willing to proceed to settlement immediately--provided the Buyers agreed to escrow the disputed commission.

21. Finally, on May 8, 2002, Buyers and Buyers' Broker agreed to do what they had

- 5 -

previously refused to do, i.e., escrow the disputed commission. Thus, it was the Buyers and Buyers' Broker--not the Seller--who delayed settlement from June 29, 2002 until May 8, 2002.

22. Under terms of the Escrow Agreement, the prevailing party in this litigation will receive the amount of the escrowed commission, all costs associated with the delay in going to settlement from June 29, 2002 until May 8, 20002, interest, attorney's fees, and court costs.

23. W.C. & A.N. Miller and its agent, June Humbert, are bound by the terms of the Escrow Agreement by the signature of Don Hadley, W.C. & A.N. Miller's outside counsel.

WHEREFORE, Defendant/Third Party Plaintiff asks this Court to recognize that the conduct of the Plaintiff and Third Party Defendants constitute an egregious breach of contract, that they caused the delay in going to settlement, and to award Defendant/Third Party Plaintiff all damages caused directly and indirectly by this breach of contract.

Respectfully submitted,

Carol A. Forti
Defendant/Third Party Plaintiff pro se
14 West Chapman Street
Alexandria, Virginia 22301
703/535-5449

- 6 -

# EXHIBIT D

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

W.C. & A.N. Miller Development Company,
                            Plaintiff

              v.

Carol A. Forti,
           Defendant

:      Civil No. 02CA4745
:      Calendar Number 13
:      Judge Melvin R. Wright
:
:
:
:
:

### ORDER

Upon consideration of defendant/third party plaintiff Forti's Motion for Rule 11 Sanctions against George Masson, Jr., the law firm of Hamilton & Hamilton, LLP, Richard Agulia, Francine Friedman, and the law firm of Hunton and Williams, it is this _14th_ day of March 2003,

ORDERED that the Motion be and the same is DENIED. This Court finds absolutely no basis in fact upon which the motion can be granted and determines that each party shall bear the costs associated with the filing and opposition of the motion.

COPIES MAILED FROM CHAMBERS:

3-19-03

_Melvin R Wright_
MELVIN R. WRIGHT

Copies to:

Carol A. Forti, Esq
14 West Chapman Street
Alexandria, VA 22301

George T. Masson, Jr., Esq.
1775 Pennsylvania Avenue, NW
Suite 1100
Washington, D.C. 20006-4605

Richard L. Aguglia, Esq
1900 K Street, NW
Washington, D.C. 20006

# EXHIBIT E

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

W.C. & A.N. MILLER                          :
DEVELOPMENT CO.                             :
    Plaintiff/Counterclaim Defendant  :
                                  :    **Case No. 02CA4745**
    v.                                  :    **Calendar 13**
                                    :    **Judge Melvin R. Wright**
                                    :
CAROL FORTI                                 :
    Defendant/Counterclaimant &          :
    Third-Party Plaintiff                :
                                    :
    v.                                  :
                                    :
JANE HUMBERT                                :
    Third-Party Defendant                :
                                    :
and                                         :
                                    :
ALBERTO CHONG                               :
and LUISA ZANFORLIN                         :
    Third-Party Defendants               :

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

       This matter is before the Court on Plaintiff/Counterclaim Defendant W.C. & A.N. Miller

and Third-party Defendant Jane Humbert's Motion for Summary Judgment. Defendant has filed

an Opposition. Upon review of the pleadings, as well as the entire record of this case, the Court

concludes that Plaintiff is entitled to summary judgment for the reasons that follow.

### Background

       This case involves a dispute over a broker's commission for the sale of Defendant's real

property located at 2936 Garfield Terrace, N.W., Washington, D.C.

       In April, 2002, Defendant ran an advertisement in *The Washington Post* for the sale of

her property. That advertisement included the statement "Co-op 3%," which is language

commonly used in the real estate industry to indicate that the seller will pay a commission of 3%

to a broker who secures a ready, willing and able buyer. Plaintiff's agent, third-party Defendant Janet Humbert ("Humbert"), acted as a buyer's broker for third-party Defendants Luisa Zanforlin and Alberto Chong ("Buyers") and brokered a contract for the sale of the property between Defendant and the Buyers. Settlement was scheduled to occur on April 29, 2002, and all parties were present at the settlement, but Defendant refused to pay the 3% commission, or $28,500, to Plaintiff and Humbert.

Instead, Defendant tendered a letter to Humbert, dated April 29, 2002, stating that "you will be receiving a commission of $4,000 [for] introducing Luisa and Alberto to my home and assisting in arranging the sale." Def.'s Mot. for Summ. J. at Ex. 1.D. As the basis for deducting approximately $24,500 from the commission, Defendant argued that "the home sold itself" and that Plaintiff and Humbert were only entitled to compensation "for introducing such pleasant and creditworthy clients to [her] home." *Id.* Defendant asserted that she

> put the "coop [sic] 3 percent" in the ad . . . at the request of an official in the Anti-trust Division of the Justice Department, which plans to bring a criminal enforcement action against agents in the metropolitan D.C. area for violating anti-trust laws by fixing commissions and communicating among themselves about what commissions to charge.

*Id.* Defendant further posited that the language was included in the advertisement "to identify real estate agents actively engaged in these practices" but that "after getting to know you, I decided not to put you or W.C. & A.N. Miller in such an undesirable position" by reporting their conduct to the Department of Justice. *Id.*

Based on this dispute over the broker's commission, the settlement did not occur that day. However, settlement was completed on May 8, 2002. The parties also agreed to place $29,850.70 in an escrow account pursuant to an Escrow Agreement by and between the Buyers, Defendant, and Plaintiff's representative.

2

Unable to agree on the distribution of the escrow funds, Plaintiff filed the instant action for Defendant's breach of the alleged contract to pay a 3% commission.

## Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law based upon the pleadings, discovery, and any affidavits or other materials submitted. *Grant v. May Department Stores Co.*, 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56 (c). A trial court considering a motion for summary judgment must view the pleadings, discovery materials, and affidavits or other materials in the light most favorable to the non-moving party, and the court may grant the motion only if a reasonable jury could not find for the non-moving party based upon the evidence in the record, having drawn all reasonable inferences in favor of the non-moving party. *Grant*, 786 A.2d at 583 (citing *Nader v. De Toledano*, 408 A.2d 31, 42 (D.C. 1979)); *Bailey v. District of Columbia*, 668 A.2d 812, 816 (D.C. 1995). The moving party has the initial burden of proving that there is no issue of material fact in genuine dispute. If the moving party carries its initial burden, then the non-moving party assumes the burden of establishing that there is an issue of material fact in genuine dispute. *Grant*, 786 A.2d at 593 (citing *O'Donnell v. Associated Gen. Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994)).

## Analysis

The issue before the Court is whether Defendant's advertisement created an enforceable contract, entitling Plaintiff to collect a 3% commission. Plaintiff contends that Defendant's advertisement was a unilateral contract, while Defendant argues that the advertisement was a mere solicitation or invitation to offer.

3

A unilateral contract is one in which "the promisor . . . makes his promise . . . in exchange for a proposed act . . . So long as that act remains unperformed, the promisor is not bound. The act which the offer seeks, however, is the consideration for the promise. Performance of the act constitutes acceptance of the offer, and that point a contract comes into being." *King v. Industrial Bank of Washington*, 474 A.2d 151, 156 (D.C. 1984) (citing WILLISTON, CONTRACTS § 65 (3d ed. 1957)).

The Court concludes that the advertisement was a unilateral contract that was created and enforceable against Defendant upon Plaintiff's performance of the specific act requested. Plaintiff, through its agent, performed the specific act requested by Defendant, which was the procurement of ready, willing and able buyers, who eventually purchased the property. While Defendant argues extensively that she never intended to be bound by any obligation to pay a commission and that her advertisement in *The Washington Post* was not intended to be a unilateral contract, these arguments are simply without merit, especially in light of Defendant's letter of April 29, 2002, agreeing to pay a commission based on Plaintiff's "assist[ance] in arranging the sale." Accordingly, Defendant's failure to pay Plaintiff a 3% commission as established by the record constituted a breach of contract. Having concluded that Defendant was responsible for the breach and thus prevented settlement from occurring on April 29, the Court further concludes that Defendant's Counterclaim and Third-party Complaint are without record or legal support.

## Conclusion

Based on the foregoing, it is by the Court this 31st day of October 2003,

4

**ORDERED** that the Plaintiff/Counterclaim Defendant W.C. & A.N. Miller and Third-party Defendant Jane Humbert's Motion for Summary Judgment be and hereby is **GRANTED**; and it is further

**ORDERED** that Defendant's Counterclaim against Plaintiff is hereby **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendant's Third-party Complaint is hereby **DISMISSED** with prejudice; and it is further

**ORDERED** that final judgment be and is hereby entered in favor of Plaintiff on its Complaint; and it is further

**ORDERED** that final judgment be and is hereby entered in favor of Plaintiff on Defendant's Counterclaim; and it is further

**ORDERED** that final judgment be and is hereby entered in favor of all third-party Defendants on Defendant's Third-party Complaint; and it is further

**ORDERED** that the funds in the escrow account created by the May 8, 2002 Escrow Agreement be and hereby are released to Plaintiff.

Melvin R. Wright                    10/31/03
Melvin R. Wright
Associate Judge

Copies to:

All parties in open court

5

# EXHIBIT F

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

W.C. & A.N. MILLER  :
DEVELOPMENT CO.  :
    Plaintiff/Counterclaim Defendant  :
      :  **Case No. 02CA4745**
    v.  :  **Calendar 13**
      :  **Judge Melvin R. Wright**
      :
CAROL FORTI  :
    Defendant/Counterclaimant &  :
    Third-Party Plaintiff  :
      :
    v.  :
      :
JANE HUMBERT  :
    Third-Party Defendant  :
      :
and  :
      :
ALBERTO CHONG  :
and LUISA ZANFORLIN  :
    Third-Party Defendants  :

## ORDER GRANTING THRID-PARTY DEFENDANTS CHONG AND ZANFORLIN'S MOTION TO RECOVER REASONABLE ATTORNEY'S FEES AND COSTS FROM DEFENDANT/COUNTERCLAIMANT/THIRD-PARTY PLAINTIFF CAROL A. FORTI

This matter is before the Court on Third-Party Defendants Chong and Zanforlin's Motion

to Recover Reasonable Attorney's Fees and Costs from Defendant/Counterclaimant/Third-Party

Plaintiff Carol A. Forti. Defendant/Counterclaimant/ Third-Party Plaintiff has filed an

Opposition.

Paragraph 23 of the April 15, 2002 Regional Sales Contract by and between the parties,

which formed the basis of the underlying dispute, provides, in relevant part, as follows:

> ATTORNEY'S FEES. In any action or proceeding involving a dispute between
> the Purchaser and the Seller arising out of this Contract, the prevailing party will
> be entitled to receive from the other party reasonable attorneys fees to be
> determined by the court or arbitrator(s).

The plain language of the Contract entitles Third-Party Defendants, the Purchasers, to recover their reasonable attorney's fees and costs. Accordingly, finding Third-Party Defendants' attorney's fees and costs to be reasonable, it is by the Court this 9th day of June 2004,

**ORDERED** that Third-Party Defendants Chong and Zanforlin's Motion to Recover Reasonable Attorney's Fees and Costs from Defendant/Counterclaimant/Third-Party Plaintiff Carol A. Forti be and is hereby **GRANTED**; and it is further

**ORDERED** that Third-Party Defendants Chong and Zanforlin are entitled to recover attorney's fees and costs in the amount of $54,655.16 from Defendant/Counterclaimant/Third-Party Plaintiff Carol A. Forti.

Melvin R. Wright
Associate Judge

Copies to:

Carol A. Forti
14 West Chapman St.
Alexandria, VA 22301

Richard Agulia, Esq.
HUNTON & WILLIAMS
1900 K St., NW
Washington, DC 20006-1109

George T. Masson, Jr., Esq.
HAMILTON AND HAMILTON, LLP
1775 Pennsylvania Ave., NW
Washington, DC 20006-4645

DOCKETED  JUN 1 0 2004

MAILED  JUN 1 0 2004

2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| W.C. & A.N. MILLER | : | |
| DEVELOPMENT CO. | : | |
| Plaintiff/Counterclaim Defendant | : | |
| | : | Case No. 02CA4745 |
| v. | : | Calendar 13 |
| | : | Judge Melvin R. Wright |
| | : | |
| CAROL FORTI | : | |
| Defendant/Counterclaimant & | : | |
| Third-Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JANE HUMBERT | : | |
| Third-Party Defendant | : | |
| | : | |
| and | : | |
| | : | |
| ALBERTO CHONG | : | |
| and LUISA ZANFORLIN | : | |
| Third-Party Defendants | : | |

## ORDER DENYING DEFENDANT FORTI'S MOTION FOR ATTORNEY'S FEES AND COSTS

Upon consideration of Defendant Forti's Motion for Attorney's Fees and Costs, it is by

the Court this 29th day of July 2004,

**ORDERED** that Defendant Forti's Motion for Attorney's Fees and Costs be and is

hereby **DENIED.** There is simply no contractual, or other, basis on which the Court could make

such an award, especially since Defendant was not the prevailing party.

_Melvin R. Wright_
Melvin R. Wright
Associate Judge

DOCKETED AUG 0 2 2004

MAILED AUG 0 2 2004

Copies to:

Carol A. Forti
14 West Chapman St.
Alexandria, VA 22301

Richard Agulia, Esq.
HUNTON & WILLIAMS
1900 K St., NW
Washington, DC 20006-1109

George T. Masson, Jr., Esq.
HAMILTON AND HAMILTON, LLP
1775 Pennsylvania Ave., NW
Washington, DC 20006-4645

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **W.C. & A.N. MILLER** | : | |
| **DEVELOPMENT CO.** | : | |
|    **Plaintiff/Counterclaim Defendant** | : | |
| | : | **Case No. 02CA4745** |
|    **v.** | : | **Calendar 13** |
| | : | **Judge Melvin R. Wright** |
| | : | |
| **CAROL FORTI** | : | |
|    **Defendant/Counterclaimant &** | : | |
|    **Third-Party Plaintiff** | : | |
| | : | |
|    **v.** | : | |
| | : | |
| **JANE HUMBERT** | : | |
|    **Third-Party Defendant** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ALBERTO CHONG** | : | |
| **and LUISA ZANFORLIN** | : | |
|    **Third-Party Defendants** | : | |

## ORDER DENYING DEFENDANT FORTI'S MOTION FOR THE MONIES FORMERLY IN ESCROW, ATTORNEY'S FEES FOR ATTORNEY'S BILLABLE HOURS, AND COSTS

Upon consideration of Defendant Forti's Motion for the Monies Formerly in Escrow,

Attorney's Fees for Attorney's Billable Hours, and Costs, it is by the Court this 29th day of July

2004,

ORDERED that Defendant Forti's Motion for the Monies Formerly in Escrow,

Attorney's Fees for Attorney's Billable Hours, and Costs be and is hereby **DENIED**.

Melvin R. Wright
Associate Judge

DOCKETED AUG 0 2 2004

MAILED AUG 0 2 2004

Copies to:

Carol A. Forti
14 West Chapman St.
Alexandria, VA 22301

Richard Agulia, Esq.
HUNTON & WILLIAMS
1900 K St., NW
Washington, DC 20006-1109

George T. Masson, Jr., Esq.
HAMILTON AND HAMILTON, LLP
1775 Pennsylvania Ave., NW
Washington, DC 20006-4645

# EXHIBIT G

District of Columbia
Court of Appeals



No. 03-CV-1254

CAROL A. FORTI,

Appellant,

v.                                                    CA4745-02

W.C. AND A.N. MILLER
DEVELOPMENT COMPANY, ET AL.,

Appellees.

BEFORE:    Farrell and Ruiz, Associate Judges, and Nebeker, Senior Judge.

## JUDGMENT

On consideration of appellees' motion for summary affirmance, no opposition having been filed and the briefs filed by the parties, it is

ORDERED AND ADJUDGED that the judgment on appeal is hereby affirmed. *See King v. Industrial Bank of Washington*, 474 A.2d 151, 156 (D.C. 1984) and *Facchina v. Sullivan*, 109 A.2d 581, 582 (D.C. 1954).

FOR THE COURT:

JOY A. CHAPPER
Acting Clerk of the Court

Copies to:

Honorable Melvin R. Wright

Clerk, Superior Court

Carol A. Forti
14 West Chapman Street
Alexandria, VA 22301

George T. Masson, Jr., Esquire
1900 M Street, N.W.
Suite 410 Washington, D.C. 20036-3532

Richard L. Aguglia, Esquire
1900 K Street, N.W.
Suite 1200
Washington, D.C. 20036

jb

**District of Columbia
Court of Appeals**

No. 03-CV-1254

CAROL A. FORTI,

Appellant,

v.

CA4745-02

W.C. & A.N. MILLER DEVELOPMENT
COMPANY, *et al.*

Appellees.

**O R D E R**

On consideration of appellant's motion to supplement the record on appeal, the oppositions thereto, and the mandate issued by this court on August 31, 2004, it is

ORDERED that appellant's motion to supplement the record is denied as moot.

BY THE COURT:

ANNICE M. WAGNER
Chief Judge

Copies to:

Carol A. Forti
14 West Chapman Street
Alexandria, VA 22301

George T. Masson, Esquire
1900 M Street, NW - Suite 410
Washington, DC 20036

Richard L. Aguglia, Esquire
1900 K Street, NW - Suite 1200
Washington, DC 20006

lw

# District of Columbia
# Court of Appeals

No.   03-CV-1254

CAROL A. FORTI,

Appellant,

CA4745-02

v.

W.C. & A.N. MILLER DEVELOPMENT
COMPANY, INC., ET AL.,

Appellees.

BEFORE:  Wagner, Chief Judge; Terry, Schwelb, Farrell, Ruiz, Reid, *Glickman, and
Washington, Associate Judges.

## ORDER

On consideration of appellant's *pro se* petition for rehearing en banc; and it
appearing that no judge of this court has called for a vote on the petition for rehearing en
banc, it is

ORDERED that the petition for rehearing en banc is denied.

## PER CURIAM

*Associate Judge Glickman has recused himself from this case.

Copies to:

Honorable Melvin R. Wright          George T. Masson, Esquire
                                    1900 M Street, NW, Suite 410
Clerk, Superior Court               Washington, DC 20036

Carol A. Forti                      Richard L. Aguglia, Esquire
14 West Chapman Street              1900 K Street, NW, Suite 1200
Alexandria, VA 22301                Washington, DC 20006

sl

# District of Columbia
# Court of Appeals



No.  03-CV-1254

CAROL A. FORTI,

                              Appellant,

                                          CA4745-02

      v.

W.C. & A.N. MILLER DEVELOPMENT
COMPANY, INC., ET AL.,

                              Appellees.

BEFORE: Farrell and Ruiz, Associate Judges; Nebeker, Senior Judge.


## ORDER

On consideration of appellant's *pro se* motion to void the judgment and other relief and the responses of appellees, it is

ORDERED that the motion is denied.  It is

FURTHER ORDERED that appellant is hereby prohibited from filing any further motions or pleadings in this appeal and the Clerk shall not accept for filing any further pleadings, papers or motions in this appeal.


### PER CURIAM

Copies to:

Carol A. Forti
14 West Chapman Street
Alexandria, VA  22301

George T. Masson, Esquire
1900 M Street, NW, Suite 410
Washington, DC  20036

aj

Richard L. Aguglia, Esquire
1900 K Street, NW, Suite 1200
Washington, DC  20006

# EXHIBIT H

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

W.C. and A.N. MILLER )
DEVELOPMENT COMPANY )
 )
Plaintiff/Counterclaim Defendant, )
 )
 )
v. )
 ) Case No. 02ca0004745
CAROL A. FORTI, ) Calendar #13
 ) Judge Melvin Wright
Defendant/Counterclaim and Third-Party )
    Plaintiff, )
 ) Next Court Event:
v. ) Not Applicable
 )
JUNE HUMBERT, )
 )
    Third-Party Defendant, )
 )
ALBERTO CHONG )
and LUISA ZANFORLIN )
 )
    Third-Party Defendants. )

## ORDER

Upon consideration of Third Party Defendants Chong and Zanforlin's Motion to Recover

Reasonable Attorneys Fees and Costs from Defendant and Third Party Plaintiff Carol Forti As a

Result of Prevailing On Appeal, and the memorandum of points and authorities in support

thereof including a detailed listing of fees and costs incurred, and

Defendant and Third Party Plaintiff's opposition thereto, it is this 9/12 day of

November , 2004.

ORDERED that Third Party Defendants Chong and Zanforlin's Motion be and the same

is hereby granted; and it is further

ORDERED that Third Party Defendants Chong and Zanforlin are entitled to recover attorneys fees and costs in the total amount of $12,683.15, to be paid forthwith by Defendant and Third Party Plaintiff Carol A. Forti.

_____
Melvin R. Wright, Associate Judge

2004

Copies to:

Richard L. Aguglia (D.C. Bar No. 53751)
HUNTON & WILLIAMS
1900 K Street, N.W., Suite 1200
Washington, D.C. 20006

George T. Masson, Jr., Esq.
Hamilton and Hamilton, LLP
1775 Pennsylvania Ave., NW
Suite 1100
Washington, DC 20006-4645

Carol A. Forti, Esq., *pro se*
14 West Chapman Street
Alexandria, VA 22301

2

# EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. FORTI,                          )
                                         )
            Plaintiff,                   )
                                         )        Case No. 1:06CV00613
        v.                               )        Judge:  James Robertson
                                         )        Deck Type:  Contract
W.C. & A.N. MILLER                       )
DEVELOPMENT COMPANY, et al.,             )
                                         )
            Defendants.                  )

DECLARATION OF
RICHARD L. AGUGLIA

Richard L. Aguglia, being first duly sworn under oath, deposes and says as follows:

1.      I am a citizen of the United States over the age of 21 of sound mind to give this
affidavit.

2.      I am an attorney with the firm of Hunton & Williams LLP and have been
employed by the firm for the past 16 years as counsel.

3.      I represented Alberto Chong and Luisa Zanforlin in the case of Miller v. Forti,
D.C. Superior Court Case No. 02-4745, as third party defendants. The trial court granted
summary judgment for my clients which was upheld on appeal by the D.C. Court of Appeals in
Case No. 03-CV-1254. In addition, the trial court awarded my clients attorneys fees and costs as
a result of prevailing at trial and an appeal in the total amount of $67,348.31.

4.      Upon Forti's refusal to pay those fees, I recorded the judgments as liens on
property owned by Forti in Arnold, Maryland on Riverdale Road. In addition, I requested a
sheriff's foreclosure sale to satisfy those liens.

5.    Forti filed suit in the Circuit Court for Anne Arundel County, Maryland for a temporary stay of execution upon judgment. Case No. 02-C-04-099031 FJ.

6.    The parties agreed that in consideration of payment by Forti of the total amount of attorneys fees and costs plus accrued statutory interest, that Chong and Zanforlin would file a notice of satisfaction of liens in the land records and withdraw their request for the foreclosure sale. See Exhibit 1.

7.    Forti made payment in full to Chong and Zanforlin and the notices of satisfaction were filed and the foreclosure was rescinded.

I declare under penalty of perjury that the foregoing is true and correct.


_Richard L. Aguglia_

Richard L. Aguglia

2

# EXHIBIT 1



**McNamee, Hosea, Jernigan, Kim,**
**Greenan & Walker, P.A.**

July 22, 2005

George T. Masson, Jr.
Hamilton and Hamilton, LLP
1900 M Street, NW
Suite 410
Washington, DC 20036

RE:    Carol Forti

Dear George:

Enclosed is a schedule of judgment interest accrual and payoffs. The payoff sums are calculated for a payment date of July 25, 2005. If payment is not delivered by that date, interest on the judgment principal will continue to accrue on a daily basis, as per the schedule, and the total owed will increase. Please confirm in writing that the payoff numbers are acceptable. Please also acknowledge that in addition to the filing of the notices of satisfaction, as noted in your letter of July 21, 2005, the writ issued by the Clerk of the Circuit Court for Anne Arundel County, Maryland will be withdrawn.

Please provide us with wiring instructions.

Very truly yours,

James M. Greenan

Enc.

cc:    Richard L. Aguglia, Esq.
       Carol A. Forti *(via Federal Express, Saturday Delivery)*
       Christopher L. Hamlin, Esq.

Greenbelt Office 6411 Ivy Lane • Suite 200 • Greenbelt • Maryland 20770 • 301.441.2420 • Fax: 301.982.9450 • Web: www.mhlawyers.com
Additional Offices Annapolis, Maryland • Falls Church, Virginia    Of Counsel Frank Safeekema

Judgment interest schedule.

| | |
|---|---|
| Chong and Zanforlin 54,655.16 | Entered on day 190 of 2004 |
| Chong and Zanforlin 12,683.15 | Entered on day 364 of 2004 |
| W.C. and A.N. Dev. Co. 49,585.49 | Entered on day 191 of 2004 |
| W.C. and A.N. Dev. Co. 28,005.24 | Entered on day 11 of 2005 |

| @ 10% interest | Per day interest | Number of days | As of end of 2004 |
|---|---|---|---|
| 5,465.516 / 366 | 14.9331038251 | (366-190)=176 | 2,828.22627322 ✓ |
| 1,268.315 / 366 | 3.46534153005 | (366-364)=2 | 6.9306830601 ✓ |
| 4,958.549 / 366 | 13.5479480874 | (366-191)=175 | 2,370.8909153 ✓ |
| 2,800.524 / 365 | 7.67266849315 | n/a | n/a |

| @ 10% interest | Per day interest | Number of days | For 2005 ending on July 25th |
|---|---|---|---|
| 5,465.516 / 365 | 14.9740164384 | 206 | 3,084.6473863 ✓ |
| 1,268.315 / 365 | 3.47483561644 | 206 | 715.816136986 ✓ |
| 4,958.549 / 365 | 13.5850657534 | 206 | 2,798.52354521 ✓ |
| 2,800.524 / 365 | 7.67266849315 | 206 | 1,580.56970959 ✓ |

Totals

| Judgment Principal | Judgment interest for 2004 | Judgment interest for 2005 | Judgment total owned (principal + interest) |
|---|---|---|---|
| Chong and Zanforlin 54,655.16 | 2,828.22627322 | 3,084.6473863 | 18,596.02 ✗  60,568.05 |
| Chong and Zanforlin 12,683.15 | 6.9306830601 | 715.816136986 | 13,405.90 ✓ |
| W.C. and A.N. Dev. Co. 49,585.49 | 2,370.8909153 | 2,798.52354521 | 54,754.90 ✓ |
| W.C. and A.N. Dev. Co. 28,005.24 | n/a | 1,580.56970959 | 29,585.81 ✓ |