UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. FORTI,
    Plaintiff,

v.                         Civil Action No. 1:06CV00613
                          Judge James Robertson

W.C. & A.N. MILLER DEVELOPMENT CO. et al.
    Defendants,

**OPPOSITION TO CO-DEFENDANTS ALBERTO CHONG, LUISA ZANFORLIN, RICHARD AGULIA, AND JEFFREY HARDIE'S AFFIRMATIVE DEFENSES AS INAPPLICABLE; OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT; AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. Plaintiff has clearly stated a cause of action for civil fraud and conspiracy to commit civil fraud.**

Defendants allege that the complaint fails to state a claim upon which relief can be granted. This allegation is completely false for the following reasons. June Humbert, an agent of W.C. & A.N. Miller drew up a Purchase offer for Buyers Chong and Zanforlin which included an Escalator Clause Addendum. According to the terms of the Escalator Clause Addendum, Chong and Zanforlin offered to pay Forti $5,000 in Net Proceeds above the Net Proceeds of the next highest offer for title to her home at 2936 Garfield Terrace, N.W. Webster's New Collegiate Dictionary defines "net" as "free from all charges and deductions." Since the next highest offer was for 945,000 in Net Proceeds, Chong and Zanforlin contracted to pay Forti $950,000 in Net Proceeds. That

RECEIVED

MAY 16 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

this amount was the contract price is admitted by Chong, Zanforlin, Agulia, and Hardie in their Answer, p.3, line 15. According to first sentence of the text of the Escalator Clause Addendum, "the parties agree that the following provisions are incorporated into the referenced Contract and shall supercede any provisions to the contrary in said Contract." (Thus, even if Humbert meant to assign herself a three percent commission at settlement on the $950,000 in Net Proceeds, it could not come from the $950,000 in Net Proceeds contractually owed to Forti at settlement.) In addition, Humbert identified herself as the buyer's exclusive broker and stated that she represented their interests exclusively, an identification that she memorialized on page 1 of 1 of the Disclosure of Brokerage Relationship of the Purchase Offer. Based on the clear language of the Purchase Offer/Contract and Humbert's assurances that the Buyers would pay her 950,000 in Net Proceeds, Forti told Humbert that she would select the Chong/Zanforlin Offer over the next highest offer purchase offer for $945,000. Since the seller of the townhouse that Forti was buying had insisted that Forti go to settlement on the townhouse on April 29, 2002, that settlement date was made a specific provision in the Purchase Offer that Humbert prepared for Chong and Zanforlin. What Forti envisaged was "back to back" settlements—first on her property, then on the townhouse.

Having received Humbert's assurances that Chong and Zanforlin would pay her $950,000 in Net Proceeds and would go to settlement on April 29, 2002, Forti told Humbert that she would select the Chong/Zanforlin Purchase Offer over the next highest offer.

About one week prior to settlement, Forti told Finkelstein's wife (who prepares

2

settlement papers for him) that she did not owe Miller a commission and told her make sure that the HUD Settlement Sheet reflected that fact. She also left a second message for Finkelstein, directing him to fax to her the HUD Settlement Sheet five days in advance of settlement. Finkelstein, however, ignored both of these instructions. He informed Humbert that there was an Assignment of Proceeds on the transaction in which part of the proceeds to be received by Forti at settlement on her house would go directly to the settlement company to pay the balance that Forti owed on the townhouse that she was buying. Finkelstein and Humbert apparently concluded that the Assignment of Proceeds on the sale of Forti's property could provide leverage in extorting a commission from Forti for Miller. Apparently, this is why Forti did not receive the HUD Settlement Sheet in advance of settlement as she had requested.

After inducing Forti to select the Chong/Zanforlin offer over the next highest offer, Humbert, Miller (through its agent Humbert), Chong, and Zanforlin ignored the existence and terms of the Escalator Clause Addendum. All the these defendants made false representation of a material fact that Chong and Zanforlin would pay $950,000 in Net Proceeds for title to Forti's property with knowledge of its falsity and with intent to deceive. Forti took justifiable reliance upon the misrepresentation, which resulted in substantial financial injury. These facts contain all the elements of civil fraud. These facts also contain all the elements of conspiracy to commit civil fraud. From the facts, it can be inferred that there was an agreement among Humbert, Miller, Chong, and Zanforlin to act unlawfully and their overt tortious acts caused substantial financial injury to Forti.

Settlement attorney Nathan Finkelstein became part of the conspiracy by drawing up a HUD Settlement Sheet that treated the $950,000 in Net Proceeds as Sales Price and assigned a $28,500 commission to Miller out of Forti's Net Proceeds of $950,000. He drew up the HUD Settlement Sheet in this manner although there was no employment contract between Forti and Miller and no written seller-broker agreement in which Forti agreed to pay Miller a commission for procuring buyers. He informed Humbert that there was an Assignment of Proceeds on the transaction in which part of the proceeds to be received by Forti at settlement would go directly to the settlement company to pay the balance that Forti owed on the townhouse that she was buying. Finkelstein and Humbert apparently concluded that the Assignment of Proceeds on the sale of Forti's property could provide leverage in forcing Forti to pay a commission to Miller. Apparently, Finkelstein did not fax the HUD Settlement Sheet to Forti in advance of settlement as she had requested, because Humbert and Finkelstein did not want her to see that the HUD Settlement Sheet deducted a commission for Miller.

In violation of the contract principle of mutual mistake, defendants took advantage of a mistake (known to both parties) when Seller Forti wrote in $950,000 next to NEW SALES PRICE on the printed form but did not cross out NEW SALES PRICE and write in NET PROCEEDS.

At settlement on April 29, 2002, Humbert, Chong, and Zanforlin refused to pay $950,000 in Net Proceeds as promised in the Chong/Zanforlin Purchase Offer, thereby preventing settlement on April 29, 2002.

Humbert, Finkelstein, Chong, and Zanforlin used the Assignment of Proceeds on

4

the sale of Forti's home in an attempt to force Forti to pay a commission or risk losing the townhouse that she was planning to buy using proceeds from the sale of her home.

Humbert engaged in tortious interference with contract by refusing the escrow the disputed commission and by persuading buyers Chong/Zanforlin to refuse to escrow the disputed commission, thereby preventing settlement on April 29, 2002.

Although Forti has asked that the HUD Settlement Sheet be faxed to her in advance of settlement, Finkelstein did not fax it to her, and she did not see the HUD Settlement Sheet until the day of settlement. When she saw the HUD Settlement Sheet, Forti was furious. She told Humbert, the buyers, and Finkelstein that she did not owe Miller any commission and would not sign any HUD settlement sheet that did not reflect Chong/Zanforlin's contractual agreement to pay her $950,000 in Net Proceeds. After inducing Forti to select the Chong/Zanforlin offer over the next highest offer, Humbert, Miller, Chong and Zanforlin all ignored the existence and terms of the Escalator Clause Addendum.

Finkelstein's fall-back position was to suggest that the disputed commission be escrowed, so that settlement could proceed. Forti agreed to this suggestion but only reluctantly, because she had not anticipated fraud and had not obtained a loan to pay the balance on the townhouse. Humbert, however, refused to escrow the disputed funds, and persuaded Chong and Zanforlin not to escrow the disputed funds. Thus, Chong and Zanforlin breached their contractual agreement to pay Forti $950,000 in Net Proceeds on April 29, 2001—the settlement date specified in the contract, and Humbert was liable for tortious interference with contract.

5

On or about May 8, 2002, Humbert and buyers Chong and Zanforlin decided that they were willing to escrow the disputed commission. An escrow agreement was signed and settlement took place on May 10, 2002.

By and through George Masson, Jr., W.C. & A.N. Miller sued Forti for a commission despite the fact that Miller was barred from receipt of a commission by D.C. Code and D.C. case law. Since Miller has operated as a real estate company in D.C. for 92 years, Miller's management and brokers knew that D.C. Code 42-1705 prohibited receipt of a commission absent proof that the seller and broker have voluntarily entered into an employment contract in which the seller had agreed to pay a commission for the procurement of buyers. There was no employment contract between Forti and Miller. Therefore, Forti did not owe Miller a commission.

Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie all knew that the Court of Appeals stated in Eggleston v. Vaughan, 45 A. 2d 362, 363 (D.C. App 1946) that "one seeking compensation as an agent must prove his contract of employment before he can recover for work done for an alleged principal. The fact that one is the procuring cause of a sale does not entitle him to a commission unless he had authority to sell." In the instant case, there was no employment contract between Forti and Miller. Therefore, Forti did not owe Miller a commission.

Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie all knew that the Court of Appeals stated in Fred Ezra Co. v. Pedas, 682 A. 2d 173, 176 (D.C. App. 1996) that "in order for a broker, as agent, to recover against a seller as principal, the broker must first establish that they voluntarily entered into a principal-agent relationship that

6

gives rise to a broker's contractual right to a commission. In the instant case, there was no principal-agent relationship or contract. Therefore, Forti did not owe Miller a commission.

Nevertheless, in an egregious example of reversible error, the trial judge in Superior Court granted summary judgment to Miller regarding the commission and dismissed the actions for breach of contract and consequential damages against Chong and Zanforlin. As a result of the litigation, Forti was left with proceeds of $921,500. No reasonable seller would select an offer worth $921,500 in net proceeds when she had an offer for $945,000 in net proceeds, and Forti is a reasonable seller. Miller sought and obtained attorneys fees and costs in the amount of $49,585.49 for litigating for a commission from which it was barred by D.C. Code and D.C. case law. Despite a clear breach of contract by Chong and Zanforlin and Forti's undeniable right to consequential damages, Chong and Zanforlin were awarded attorney's fees and costs in the amount of $54,655.16.

Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie further compounded their malice against Forti further by placing a lien on property that Forti owns in Arnold, Maryland for the attorney's fees and costs and threatened to have the sheriff's office auction it off at less than market value to pay the lien. Forti had to pay a Maryland firm to represent her and work out a settlement agreement to avoid having her land sold for far less than it is worth. Miller, Humbert, Masson, Chong, Zanforlin, Agulia and Hardie are all liable for civil conspiracy. Their common actions in litigating against Forti for a commission when Forti owed Miller no commission pursuant to D.C. Code

7

and D.C. case law showed that there was an agreement between eight parties to act unlawfully and their overt tortious acts caused substantial financial injury to Forti. Miller, Humbert, Masson, Chong, Zanforlin, Agulia, and Hardie conspired to litigate a colorless, wanton, lawsuit against Forti and, by means of this litigation, forced her to pay a commission that she did not owe.

**II.     Defendants also falsely allege that the Complaint is barred by res judicata.**

By and through George Masson, Jr., W.C. & A.N. Miller filed suit against Forti for a commission. Forti counterclaimed that she did not owe a commission and impleaded as third party defendants Humbert, Chong, and Zanforlin. She sued Chong and Zanforlin for breach of contract and consequential damages. Forti did not claim a cause of action for civil fraud or conspiracy to commit civil fraud in the action in Superior Court. She pleaded these causes of action for the first time in United States District Court. Thus, defendants' purported defense of res judicata is inapplicable.

**III. The Statute of Limitations does not bar this claim.**

Although Defendant Miller filed suit in June 2002 for a commission, the acts of civil fraud and conspiracy to commit civil fraud continued through May 2005. Thus, Forti's cause of action for civil fraud and conspiracy to commit civil fraud is well within the three-year statute of limitations.

**IV. Accord and Satisfaction, Which Were Offered as Defenses by Agulia, Hardie, Chong, and Zanforlin , Are Inapplicable to Plaintiff's Causes of Action.**

Agulia, Hardie, Chong, and Zanforlin have raised accord and satisfaction as purported defenses, but they entirely without legal merit. The purported authority for reliance on accord and satisfaction is Pierola v. Moshonas, 687 A.2d 942 (D.C. App

1997), but the facts of Pieroli could not be more different from the facts of the instant case. The Court of Appeals held that the contractor's defense of accord and satisfaction had been satisfied when the contractor submitted a check to painter market "payment in full," and the painter negotiated the check. The Pieroli Court was careful to state the following. "Accord and satisfaction is a valid affirmative defense to a breach of contract claim when there is proof of: (1) a legitimately disputed or unliquidated claim; (2) <u>mutual agreement</u> that the debtor will pay and creditor will accept something other than the original amount due in satisfaction of the disputed claim; and 3 <u>actual giving and taking of agreed upon substitution</u>. Prong 2 was not satisfied because Forti did <u>not</u> agree to take something other than the original amount due in satisfaction of the disputed claim. Forti has never agreed to take less than $950,000 in Net Proceeds. Finally, there has been <u>no</u> substitution for Forti's original demand for $950,000 in Net Proceeds and no actual giving and taking of any agreed upon substitution.

### V. The attorneys named in the conspiracy knew of the wrongful conduct and were actively involved in the wrongful conduct.

To substantiate a conspiracy claim, the plaintiff must establish that the attorneys did not act within the role of an advisor and merely advise, but instead knew of the clients' wrongful conduct and were actively involved in the wrongful conduct. See McElhanon v. Hing, 728 P.2d 256, 264-265 (Ariz.App 1985) cert denied, 481 U.S. 1030, 107 S.Ct 1956, 95 L.Ed.2d 529 (1987). Attorneys are liable for the intentional torts of malicious prosecution and abuse of process. The privilege an attorney has for his actions in representing a client is a qualified one that does not extend to the intentional torts of malicious prosecution and abuse of process. Id. Nor should the privilege apply to the

9

intentional acts of furthering and participating in a fraudulent conveyance. Id. The attorneys named as part of the conspiracy did not merely advise. Finkelstein did the bidding of Miller and drew up a HUD Settlement Sheet that ignored the actual terms of the contract that Chong and Zanforlin signed with Forti. Masson filed a complaint against Forti for a commission, but deliberately omitted the page containing the Escalator Clause Addendum which controlled the contract. Masson, Agulia, and Hardie grossly misrepresented the facts in affidavits they write for their clients. Masson, Agulia, and Hardie litigated a completely colorless bad faith lawsuit against Forti and they did so wantonly and maliciously in willful disregard of Forti's rights.

Respectfully submitted,

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served John Jay Range, counsel for Richard Agulia and Jeffrey Hardie, and Richard Agulia, counsel for Alberto Chong and Luisa Zanforlin, . with a copy of this Opposition by first-class mail, postage prepaid on May 17, 2006.

Carol A. Forti