SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| W.C. & A.N. MILLER DEVELOPMENT CO. : <br>     Plaintiff/Counterclaim Defendant : <br> : <br> v. : <br> : <br> : <br> CAROL FORTI : <br>     Defendant/Counterclaimant & : <br>     Third-Party Plaintiff : <br> : <br> v. : <br> : <br> JANE HUMBERT : <br>     Third-Party Defendant : <br> : <br> and : <br> : <br> ALBERTO CHONG : <br> and LUISA ZANFORLIN : <br>     Third-Party Defendants : | Case No. 02CA4745 <br> Calendar 13 <br> Judge Melvin R. Wright |

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff/Counterclaim Defendant W.C. & A.N. Miller and Third-party Defendant Jane Humbert's Motion for Summary Judgment. Defendant has filed an Opposition. Upon review of the pleadings, as well as the entire record of this case, the Court concludes that Plaintiff is entitled to summary judgment for the reasons that follow.

### Background

This case involves a dispute over a broker's commission for the sale of Defendant's real property located at 2936 Garfield Terrace, N.W., Washington, D.C.

In April, 2002, Defendant ran an advertisement in *The Washington Post* for the sale of her property. That advertisement included the statement "Co-op 3%," which is language commonly used in the real estate industry to indicate that the seller will pay a commission of 3%

DEFENDANT'S EXHIBIT 6

to a broker who secures a ready, willing and able buyer. Plaintiff's agent, third-party Defendant Janet Humbert ("Humbert"), acted as a buyer's broker for third-party Defendants Luisa Zanforlin and Alberto Chong ("Buyers") and brokered a contract for the sale of the property between Defendant and the Buyers. Settlement was scheduled to occur on April 29, 2002, and all parties were present at the settlement, but Defendant refused to pay the 3% commission, or $28,500, to Plaintiff and Humbert.

Instead, Defendant tendered a letter to Humbert, dated April 29, 2002, stating that "you will be receiving a commission of $4,000 [for] introducing Luisa and Alberto to my home and assisting in arranging the sale." Def.'s Mot. for Summ. J. at Ex. 1.D. As the basis for deducting approximately $24,500 from the commission, Defendant argued that "the home sold itself" and that Plaintiff and Humbert were only entitled to compensation "for introducing such pleasant and creditworthy clients to [her] home." *Id.* Defendant asserted that she

> put the "coop [sic] 3 percent" in the ad . . . at the request of an official in the Anti-trust Division of the Justice Department, which plans to bring a criminal enforcement action against agents in the metropolitan D.C. area for violating anti-trust laws by fixing commissions and communicating among themselves about what commissions to charge.

*Id.* Defendant further posited that the language was included in the advertisement "to identify real estate agents actively engaged in these practices" but that "after getting to know you, I decided not to put you or W.C. & A.N. Miller in such an undesirable position" by reporting their conduct to the Department of Justice. *Id.*

Based on this dispute over the broker's commission, the settlement did not occur that day. However, settlement was completed on May 8, 2002. The parties also agreed to place $29,850.70 in an escrow account pursuant to an Escrow Agreement by and between the Buyers, Defendant, and Plaintiff's representative.

Unable to agree on the distribution of the escrow funds, Plaintiff filed the instant action for Defendant's breach of the alleged contract to pay a 3% commission.

### Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law based upon the pleadings, discovery, and any affidavits or other materials submitted. *Grant v. May Department Stores Co.*, 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56 (c). A trial court considering a motion for summary judgment must view the pleadings, discovery materials, and affidavits or other materials in the light most favorable to the non-moving party, and the court may grant the motion only if a reasonable jury could not find for the non-moving party based upon the evidence in the record, having drawn all reasonable inferences in favor of the non-moving party. *Grant*, 786 A.2d at 583 (citing *Nader v. De Toledano*, 408 A.2d 31, 42 (D.C. 1979)); *Bailey v. District of Columbia*, 668 A.2d 812, 816 (D.C. 1995). The moving party has the initial burden of proving that there is no issue of material fact in genuine dispute. If the moving party carries its initial burden, then the non-moving party assumes the burden of establishing that there is an issue of material fact in genuine dispute. *Grant*, 786 A.2d at 593 (citing *O'Donnell v. Associated Gen. Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994)).

### Analysis

The issue before the Court is whether Defendant's advertisement created an enforceable contract, entitling Plaintiff to collect a 3% commission. Plaintiff contends that Defendant's advertisement was a unilateral contract, while Defendant argues that the advertisement was a mere solicitation or invitation to offer.

A unilateral contract is one in which "the promisor . . . makes his promise . . . in exchange for a proposed act . . . So long as that act remains unperformed, the promisor is not bound. The act which the offer seeks, however, is the consideration for the promise. Performance of the act constitutes acceptance of the offer, and that point a contract comes into being." *King v. Industrial Bank of Washington*, 474 A.2d 151, 156 (D.C. 1984) (citing WILLISTON, CONTRACTS § 65 (3d ed. 1957)).

The Court concludes that the advertisement was a unilateral contract that was created and enforceable against Defendant upon Plaintiff's performance of the specific act requested. Plaintiff, through its agent, performed the specific act requested by Defendant, which was the procurement of ready, willing and able buyers, who eventually purchased the property. While Defendant argues extensively that she never intended to be bound by any obligation to pay a commission and that her advertisement in *The Washington Post* was not intended to be a unilateral contract, these arguments are simply without merit, especially in light of Defendant's letter of April 29, 2002, agreeing to pay a commission based on Plaintiff's "assist[ance] in arranging the sale." Accordingly, Defendant's failure to pay Plaintiff a 3% commission as established by the record constituted a breach of contract. Having concluded that Defendant was responsible for the breach and thus prevented settlement from occurring on April 29, the Court further concludes that Defendant's Counterclaim and Third-party Complaint are without record or legal support.

## Conclusion

Based on the foregoing, it is by the Court this 31st day of October 2003,

4

ORDERED that the Plaintiff/Counterclaim Defendant W.C. & A.N. Miller and Third-party Defendant Jane Humbert's Motion for Summary Judgment be and hereby is GRANTED and it is further

ORDERED that Defendant's Counterclaim against Plaintiff is hereby DISMISSED with prejudice; and it is further

ORDERED that Defendant's Third-party Complaint is hereby DISMISSED with prejudice; and it is further

ORDERED that final judgment be and is hereby entered in favor of Plaintiff on its Complaint; and it is further

ORDERED that final judgment be and is hereby entered in favor of Plaintiff on Defendant's Counterclaim; and it is further

ORDERED that final judgment be and is hereby entered in favor of all third-party Defendants on Defendant's Third-party Complaint; and it is further

ORDERED that the funds in the escrow account created by the May 8, 2002 Escrow Agreement be and hereby are released to Plaintiff.

Melvin R. Wright
Associate Judge    10/31/03

Copies to:

All parties in open court

5