EXHIBIT

1

tabbies

# SUMMARY OF OFFER FROM
## ALBERTO CHONG/LUISA ZANFORLIN

1. **PRICE:** $915,000  WITH ESCALATION

        A. $5,000 INCREMENTS OVER NEXT HIGHEST NET
        B. MAXIMUM $975,000.

2. Deposit $40,000

3. SETTLEMENT: April 29, 2002 to coincide with seller's settlement

4. PROPERTY:    CONVEYS "AS IS".  INSPECTION
REQUESTED FOR INFORMATION ONLY.

5. ALL DISCLOSURES SIGNED AND ATTACHED


ALBERTO CHONG:    ECONOMIST, INTERAMERICAN DEV.
BANK 202-623-1536

LUISA ZANFORLIN:  ECONOMIST, INTERNATIONAL
MONETARY FUND  202-623-8783

HOME PHONE:    202-338-1517  add: 3313 "Q" STREET, NW

Agent:  JUNE HUMBERT, W.C. & A.N. MILLER  301-229-4000
                                301-229-4051  h.

# ESCALATOR CLAUSE ADDENDUM
(Increase in Net Proceeds)

SPECIAL PROVISIONS attached to hereby made a part thereof, the Contract dated *April 15, 2002* on Lot/Unit _54_, Block/Square _2113_, in the subdivision known as _Woodley_, located at _2936 Garfield Terrace_ NW _Washington, DC 20008_ between _Carol Forti_ (Seller) and _Alberto Chong and Lucia Zanforlin_ (Buyer):

The parties agree that the following provisions are incorporated into the referenced Contract and shall supercede any provisions to the contrary contained in said Contract:

1.    In the event that Seller receives one or more additional bonafide offers to purchase the Property with terms acceptable to Seller (the "Other Offers"), but which result in net proceeds of sale payable to the Seller equal to or greater than the net proceeds of sale payable to the Seller under this Contract, then the sales price stated in this Contract shall automatically increase, without further action on the part of Buyer, to an amount which generates net proceeds of sale to Seller equal to $ _5,000.00_ dollars in excess of the highest net proceeds of sale generated in such Other Offers. Notwithstanding the foregoing, the sales price under this Contract shall in no event exceed $ _975,000._ dollars.

2.    In the event of an increase in the sales price under this Contract pursuant to this Addendum, the loan amount provided for in the Sales Contract (check one):

_____    Shall remain the same, and the Buyer shall pay any increase in cash at the time of settlement.

_____    Shall automatically increase to be _____ % of the new Sales Price of the Property, and Buyer shall pay any amount of the increase in Sales Price which is not included in the loan amount in cash at the time of settlement.

3.    Any change in the Sales Price under this Addendum shall be effective and binding upon Seller and Buyer when Seller presents the following to Buyer:

A.    A copy of this Contract in ratified form, with the new Sales Price written into the following blank:

NEW SALES PRICE = $ _950,000._

B.    A copy of the Other Offer which forms the basis for the Sales Price increase in the previous paragraph.

SELLER:                              BUYER:

_Carol A. Forti_                      _A Chong_

_____                      _____

Date: _11/15/02_



**REALTOR®**

## Greater Capital Area Association of REALTORS®, Inc.

### REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on ___April 15___ , ___2007___ ("Contract Date") between ___Alberto Chong and Luisa Zanforlin___ ("Purchaser") and ___Carol Forti___ ("Seller") who hereby confirm and acknowledge by their initials and signatures below the prior disclosure that in this real estate transaction ___Carol Forti___ ("Listing Company") represents the Seller, and ___WC & AN Miller___ ("Selling Company") represents ☒ the Purchaser OR ☐ the Seller. The Listing Company and Selling Company are collectively referred to as ("Broker"). (If the brokerage firm is acting as a dual representative for both the Seller and the Purchaser, then the appropriate disclosure form is attached to and made a part of this Contract.)

**1. REAL PROPERTY.** The Purchaser will buy and the Seller will sell for the sales price ("Sales Price"), the Seller's entire interest in the land (with all improvements, rights and appurtenances) described as follows: TAX Map/ID # ___2113/0054___ .

Legal Description: Lot(s) ___54___ , Block/Square ___2113___ , Section _____
Subdivision or ~~Condominium~~ ___Woodley___ , Unit # _____ , Parking Space(s) # _____
County/City ___Washington___ , Deed Book/Liber _____ , Page/Folio # _____
Street Address: ___2936 Garfield Terrace, NW___ , Washington, State ___DC___ , Zip Code ___20008___ , ("Property").

**2. PERSONAL PROPERTY, FIXTURES AND UTILITIES.** The Sales Price includes the following personal property and fixtures: A. Any existing built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, smoke and heat detectors, tv antennas, exterior trees and shrubs and, B. The items marked YES below as currently installed or offered. *Stain-glass decoration in Sun Room*

| YES NO | | YES NO | | YES NO | | YES NO | |
|---|---|---|---|---|---|---|---|
| ☒ ☐ | Stove or Range | ☒ ☐ | Disposer | ☐ ☐ | Ceiling Fan(s) # ___ | ☐ ☒ | Alarm System |
| ☒ ☐ | Cooktop | ☐ ☒ | Freezer | ☐ ☒ | Washer | ☐ ☒ | Intercom |
| ☒ ☐ | Wall Oven(s) # ___ | ☐ ☒ | Window Fan(s) # ___ | ☒ ☐ | Dryer | ☐ ☒ | Storage Shed(s) # ___ |
| ☒ ☐ | Refrigerator(s) # ___ | ☐ ☒ | Window A/C Unit(s) # ___ | ☐ ☒ | Furnace Humidifier | ☐ ☒ | Garage Opener(s) # 1 |
| ☒ ☐ | w/ Ice maker(s) # ___ | ☐ ☒ | Pool, Equip. & Cover | ☐ ☒ | Electronic Air Filter | | w/ remote(s) # as installed |
| ☒ ☐ | Dishwasher | ☐ ☒ | Hot Tub, Equip. & Cover | ☐ ☒ | Central Vacuum | ☐ ☒ | Playground Equipment |
| ☒ ☐ | Built-in Microwave | ☐ ☒ | Satellite Dish and Equip. | ☐ ☒ | Water Treatment System | ☐ ☒ | Wood Stove |
| ☐ ☒ | Trash Compactor | ☒ ☐ | Window Treatments | ☐ ☒ | Exhaust Fan(s) | ☐ ☒ | Fireplace Screen/ Doors |

Other: ___Will sell electric-powered lawn mower/mulcher with cord for additional $275.___

**WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING:** (Check all that apply)
Water Supply: ☒ Public ☐ Well _____   Hot Water: ☐ Oil ☒ Gas ☐ Elec. ☐ Other _____
Sewage Disposal: ☒ Public ☐ Septic # BR _____   Air Conditioning: ☐ Oil ☐ Gas ☒ Elec. ☐ Heat Pump ☐ Other _____
Heating: ☐ Oil ☒ Gas ☐ Elec. ☐ Heat Pump ☐ Other _____

**3. EQUIPMENT, MAINTENANCE AND CONDITION.** The Purchaser accepts the Property in the condition as of the Contract Date except as otherwise provided herein. The Seller warrants that the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as required), will be in normal working order as of the possession date. The Seller will deliver the Property in substantially the same condition as on the Contract Date and broom clean with all trash and debris removed. The Purchaser and the Seller will not hold the Broker liable for any breach of this paragraph.

**4. PRICE AND FINANCING**
A. Down Payment                              $ 915,000.00  /950,000.00
B. Financing  1. First Trust          $ _____
                  2. Second Trust        $ _____
                  3. Seller Held Trust - addendum attached   $ _____
TOTAL FINANCING                     $ _____
SALES PRICE                             $ 915,000.00 /950,000.00

**5. DEPOSIT.** A. The Purchaser has made a deposit ("Deposit") with ~~WC + AN~~ *Miller* ("Escrow Agent") or ___

☒ $ _40,000_ by check and/or ___ ~~by note due and payable on~~ ___

, receipt of which is hereby acknowledged. ~~(i) The Deposit will be placed in an escrow account on or before~~ *Date of Ratification* ___ Agent after *Date of Ratification* to conform with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction.

**6. DOWN PAYMENT.** The balance of the down payment will be paid at Settlement by certified or cashier's check or by bank wired funds.

**7. DEED(S) OF TRUST.**

A. FIRST DEED OF TRUST. The Purchaser will ☐ OBTAIN **OR** ☐ ASSUME: a ☐ Conventional ☐ FHA ☐ VA ☐ Other ___

First Deed of Trust loan amortized over ___ years at a ☐ FIXED **OR** an ☐ ADJUSTABLE rate bearing (initial) interest of ___% per year or market rate available. Special Terms (if any): ___

B. SECOND DEED OF TRUST. The Purchaser will ☐ OBTAIN, **OR** ☐ ASSUME a Second Deed of Trust loan amortized over ___ years at a ☐ FIXED **OR** an ☐ ADJUSTABLE rate bearing (initial) interest of ___% per year or market rate available. Special Terms (if any) ___

C. ASSUMPTION ONLY: Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser. If the Purchaser assumes the Seller's loan; (i) The Purchaser and the Seller ☐ will, **OR** ☐ will not obtain a release of the Seller's liability to the U.S. Government for the repayment of the loan by Settlement. (ii) The Purchaser and Seller ☐ will, **OR** ☐ will not obtain substitution of the Seller's VA entitlement by Settlement. (iii) Balances of any assumed loans, secondary financing and cash down payments are approximate.

**8. ADDITIONAL FINANCING TERMS.**

A. ☐ CONVENTIONAL FINANCING. Based on the financing terms specified in this Contract, the Seller will pay $ ___ toward the Purchaser's charges, (including but not limited to loan origination fees, discount fees, buydown or other charges as allowed by the lender). The Purchaser will pay all remaining Purchaser's charges. If applicable, the Purchaser will pay at Settlement, or finance any initial private mortgage insurance.

If the lender's appraisal is not equal to or greater than the Sales Price, the Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. The Purchaser's election to proceed with consummation of this Contract without regard to the amount of the appraised valuation will be made within 3 Days after the notification to the Purchaser of the appraised value. If the Purchaser does not make this election, it will be the Seller's option to lower the Sales Price to the appraised value and this Contract will remain in full force and effect at the lower Sales Price. If the Seller does not make this election, the parties may agree to mutually acceptable terms. Each election must be made by Notice within 3 Days after Notice from the other party. The parties will immediately sign any appropriate amendments. If the parties fail to agree, this Contract will become void.

B. ☐ VA **OR** ☐ FHA FINANCING.

The Purchaser will ☐ pay at Settlement, **OR** ☐ finance any VA Funding Fee or FHA initial Mortgage Insurance Premium. Based on the financing specified in this Contract, the Seller will pay $ ___ toward the Purchaser's charges, (including but not limited to loan origination fees, discount fees or subsidy fees, prepaids or other charges as allowed by the lender) except that the total amount of any lender charges which cannot by law or regulation be charged to the Purchaser will be paid by the Seller. These charges, if any, will first be deducted from any Seller credit, and the remaining balance, if any, will then be applied to the Purchaser's other charges. The Purchaser will pay all remaining Purchaser's charges. If VA or FHA financing applies, it is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner or Direct Endorsement Lender/Department of Veterans Affairs or the Lender Approval Processing Program (LAPP) underwriter setting forth the appraised value of the Property (excluding closing costs) of not less than $ ___. The Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. THE APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGE THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT /DEPARTMENT OF VETERANS AFFAIRS WILL INSURE/GUARANTEE. HUD/DEPARTMENT OF VETERANS AFFAIRS AND THE MORTGAGEE DOES NOT WARRANT THE VALUE NOR THE CONDITION OF THE PROPERTY. THE PURCHASER SHOULD SATISFY HIMSELF/HERSELF THAT THE PRICE AND CONDITION OF THE PROPERTY ARE ACCEPTABLE.

If VA Financing applies, the Purchaser agrees that should the Purchaser elect to complete the purchase at an amount in excess of the reasonable value established by the Department of Veterans Affairs, the Purchaser shall pay such excess amount in cash from a source which the Purchaser agrees to disclose to the Department of Veterans Affairs, and which the Purchaser represents will not be borrowed funds except as approved by the Department of Veterans Affairs. The Purchaser's exercise of the option shall be made in writing within 3 Days of the notification to the Purchaser of the appraised value, or this Contract shall become void.

If FHA financing applies, the Purchaser's exercise of the option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation shall be made in writing within 3 Days of the notification to the Purchaser of the appraised value, or this Contract shall become void. The FHA loan amount may be approximate because the financed acquisition costs cannot be determined until the Settlement.

**9. LOAN APPLICATION AND APPROVAL.**

A. FINANCING APPLICATION. The Purchaser will make written application for the financing or assumption called for in this Contract ("Specified Financing") within 7 days after Date of Ratification. The Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information about the progress of the loan application and loan approval process.

B. LENDER'S APPROVAL CONTINGENCY. This Contract is contingent until 9 p.m. ___ Days after Date of Ratification ("Deadline") upon the Purchaser Delivering to the Seller a letter from the lender stating that the Purchaser is approved for the Specified Financing ("Lender's Letter"). Upon Seller's receipt of the Lender's Letter, this Contract is no longer contingent on the Purchaser being approved for the Specified Financing and this Contract will remain in full force and effect. TIME IS OF THE ESSENCE.

(i) If the Purchaser does not Deliver the Lender's Letter by the Deadline, the lender's approval contingency will continue, unless the Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If the Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time:

    a. Purchaser Delivers to Seller the Lender's Letter; **OR**

    b. Purchaser removes this LENDER'S APPROVAL CONTINGENCY and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.

(ii) The Purchaser may substitute alternative financing for Specified Financing provided:

    a. There is no additional expense to the Seller; and

    b. The Settlement Date is not delayed.

(iii) If prior to satisfaction or removal of the LENDER'S APPROVAL CONTINGENCY the Purchaser receives a written rejection for the Specified Financing and Delivers a copy of the written rejection to the Seller, this Contract will become void.

C. **DEFAULT.** The Purchaser will be in default if Settlement does not occur on the Settlement Date because the Purchaser:

  (i) Fails to lock-in the interest rate(s) as specified above and the rate(s) increase so that the Purchaser no longer qualifies for such financing; **OR**

  (ii) Applies for, and fails to obtain, alternative financing instead of the Specified Financing, unless the Seller consents in writing to the alternative financing terms, in which case the alternative financing becomes the Specified Financing; **OR**

  (iii) Fails to comply with the lender's reasonable requirements in a timely manner; **OR**

  (iv) Fails to immediately give Notice to the Seller or the Broker of any material adverse changes in the Purchaser's assets, liabilities, or income; **OR**

  (v) Does not have the down payment, closing fees and any other funds to settle as provided in this Contract; **OR**

  (vi) Does or fails to do any act following the Date of Ratification that prevents the Purchaser from obtaining the financing; **OR**

  (vii) Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing.

**10. PURCHASER'S REPRESENTATIONS.** The Purchaser ☒ will, OR ☐ will not occupy the Property as the Purchaser's principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property. The Selling Company ☒ is, OR ☐ is not authorized to disclose to the Listing Company and Seller the appropriate financial or credit information statement provided to the Selling Company by the Purchaser. The Purchaser acknowledges that the Seller is relying upon all of the Purchaser's representations including without limitation the accuracy of financial or credit information given to the Seller, Broker or the lender by the Purchaser.

**11. ACCESS TO PROPERTY.** The Seller will provide the Broker, the Purchaser, inspectors representing the Purchaser and representatives of lending institutions for appraisal purposes, reasonable access to the Property to comply with this Contract. The Purchaser and/or the Purchaser's representative will have the right to make an inspection prior to Settlement and/or occupancy, at which time the Seller will have all utilities in service.

**12. WELL AND SEPTIC.** If the Property is on well and/or septic systems, the ☐ Purchaser, at Purchaser's expense OR ☐ Seller, at Seller's expense, will furnish the Purchaser on or before Settlement with a certificate dated not more than 30 days prior to Settlement from the ☐ appropriate local government authority, or ☐ a private company, indicating that: A. The well water contains no more than the acceptable level of coliform bacteria and; B. The septic system appears to be functioning satisfactorily, and if known by public records, was installed pursuant to a valid health department permit. If either system is found defective or substandard according to the certificate, the Seller will take appropriate remedial action at the Seller's expense.

**13. TERMITE INSPECTION.** The ☐ Purchaser at the Purchaser's expense OR the ☐ Seller at the Seller's expense, will furnish a written report from a pest control firm dated not more than ☐ 30 OR ☐ 60 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites and other wood-destroying insects, and free from visible structural insect damage. Any extermination and structural repairs identified in the inspection report will be at the Seller's expense.

**14. REPAIRS.** If, as a condition of providing financing under this Contract, the lender requires repairs to be made to the Property, then the Purchaser will give Notice to the Seller of the lender's required repairs. Within 5 Days after Notice, the Seller will give Notice to the Purchaser whether the Seller will make the repairs. If the Seller will not make the repairs, the Purchaser will give Notice to the Seller within 5 Days after the Seller's Notice whether the Purchaser will make the repairs. If neither the Seller nor the Purchaser will make the repairs, then this Contract will become void. This clause will not release the Seller from any responsibilities set forth in the paragraphs titled PERSONAL PROPERTY, FIXTURES AND UTILITIES; EQUIPMENT, MAINTENANCE AND CONDITION; WELL AND SEPTIC; TERMITE INSPECTION; or OTHER TERMS, or any terms specifically set forth in this Contract and any addenda.

**15. DAMAGE OR LOSS.** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with the Seller until the execution and delivery of the deed of conveyance.

**16. TITLE.** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of the Seller, may be terminated and the Deposit will be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by the Purchaser. The Seller will pay any special assessments and will comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, the Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by the Seller at the Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. The Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland). The Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders.

**17. POSSESSION DATE.** Unless otherwise agreed to in writing between the Seller and the Purchaser, the Seller will give possession of the Property at the Settlement. If the Seller fails to do so and occupies the Property beyond the Settlement, the Seller will be a tenant by sufferance of the Purchaser and hereby expressly waives all notice to quit as provided by law. The Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. The Seller will pay any damages and costs incurred by the Purchaser including reasonable attorney fees.

**18. SETTLEMENT.** The Seller and the Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, _April 29, 2002_ ("Settlement Date") except as otherwise provided in this Contract.

**19. SETTLEMENT AGENT.** (Not for use in Virginia; see the Virginia Jurisdictional Addendum) The Purchaser selects _Nathan Finkelstein to be designated by Purchaser and Associates_ (Settlement Agent) to conduct the Settlement. Either party may retain their own counsel. The Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement. The Settlement Agent will order the title exam and survey if required.

_9:00 a.m. April 29, 2002_
_address: 7315 Wisconsin Ave Suite 400 East_
_Bethesda, MD 20814_

20. **FEES.** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to the Seller, costs of releasing existing encumbrances, appropriate legal fees and any other proper charges assessed to the Seller will be paid by the Seller. The title exam (except as otherwise provided) survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to the Purchaser, appropriate legal fees and any other proper charges assessed to the Purchaser will be paid by the Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda).

21. **BROKER'S FEE.** The Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

22. **ADJUSTMENTS.** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of the Purchaser. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by the Seller or allowance made at Settlement. If a Deed of Trust is assumed, interest will be adjusted to the Settlement Date and the Purchaser will reimburse the Seller for existing escrow accounts, if any.

23. **ATTORNEY'S FEES.** In any action or proceeding involving a dispute between the Purchaser and the Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s). In the event a dispute arises resulting in the Broker being made a party to any litigation or if the Broker is required to bring litigation to collect the Broker's Fee, the Purchaser and Seller agree to indemnify the Broker, its employees, and/or licensees for all attorney fees and costs of litigation, unless the litigation results in a judgment against the Broker, its employees and/or licensees.

24. **PERFORMANCE.** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

25. **DEFAULT.** If the Purchaser fails to complete Settlement, at the option of the Seller, the Deposit may be forfeited as liquidated damages and not as a penalty, in which event the Purchaser will be relieved from further liability to the Seller. If the Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of the Purchaser's liability in the event of a default. ~~If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between the Seller and Purchaser, the Broker may accept and the Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement).~~ If the Seller or Purchaser refuses to execute a release of Deposit when requested to do so in writing and a court finds that they should have executed the agreement, the party who so refused to execute a release of Deposit will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. The Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit, or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that the Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either the Purchaser or the Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, appraisal, survey and the Broker's Fee in full.

26. **OTHER DISCLOSURES. The Purchaser and Seller are advised to seek professional advice concerning the condition of the Property or other legal and tax matters.** The following subparagraphs disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

A. PROPERTY CONDITION. See EQUIPMENT, MAINTENANCE AND CONDITION Paragraph. Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water, sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. LEGAL REQUIREMENTS. All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and delivery, this Contract becomes a legally binding agreement. Any changes must be made in writing.

C. FINANCING. Mortgage rates and associated charges vary with financial institutions and the marketplace. The Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. The Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

D. BROKER. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction. The Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, home inspector or other professional service provider.

27. **ASSIGNABILITY.** This Contract may not be assigned without the written consent of the Purchaser and the Seller. If the Purchaser and the Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

28. **DEFINITIONS.** "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day. "Date of Ratification" means the date of final acceptance in writing of all the terms of this Contract (not the date of expiration or removal of any contingencies). "Delivery" means hand-carried, sent by overnight delivery service, by facsimile transmission as provided for in the NOTICES Paragraph, or when receipt is acknowledged in writing. In the event of overnight delivery service, Delivery will be deemed to have been made on the Day following the sending. The masculine includes the feminine and the singular includes the plural.

**29. NOTICES.** All notices ("Notice") required to ~ given by this Contract will be in writing and will be ~ffective as of the date on which such Notice is Delivered:

A. Addressed to the Seller at _____ 3135 Garfield Terrace, Washington DC 20008 ____ OR
, transmitted by facsimile to (___) _____
B. Addressed to the Purchaser at: ___ 3313 "Q" St. NW   Washington DC 20007 ____ OR
, transmitted by facsimile to (___) _____

**30. MISCELLANEOUS.** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

**31. VOID CONTRACT.** If this Contract becomes void, both parties will immediately execute a release directing that the Deposit be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph.

**32. ADDITIONS.** The appropriate JURISDICTIONAL ADDENDUM and LEAD BASED PAINT ADDENDA (if applicable) must be attached and made a part of this Contract. The following are made a part of this Contract:

☒Yes   STATE JURISDICTIONAL ADDENDUM ☒DC ☐ VA ☐ MD ☐WVA ☐ Other_____
☐ Yes ☒No   HOME INSPECTION CONTINGENCY                    ☒Yes ☐ No  LEAD - BASED PAINT DISCLOSURE FORM
☐ Yes ☒No   RADON TESTING CONTINGENCY                      ☐ Yes ☒No  LEAD - BASED PAINT INSPECTION CONTINGENCY
☐ Yes ☒No   SALE OF HOME CONTINGENCY                        ☐ Yes ☒No  FHA HOME INSPECTION NOTICE
☐ Yes ☒No   CONDO/COOP ADDENDUM (DC and MD)
☐ Yes ☒No   HOME WARRANTY POLICY paid for by: ☐ Purchaser or ☐ Seller.
Cost not to exceed $_____. Warranty provider to be_____
☐ Yes ☒No   OTHER (specify):_____

**33. OTHER TERMS.** _Property Conveys in "As is" Condition._
_Commission 3% to be paid to W.C. & A.N. Miller at settlement._
_Purchaser requests permission to do a home inspection for_
_information purposes only. Contract shall not be contingent_
_on such inspection._
_Seller agrees to allow access for Lender's appraisal._

**34. ENTIRE AGREEMENT.** This Contract will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions hereof will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the appropriate jurisdiction.

**SELLER:**                                                          **PURCHASER:**

9/15/02 _Carol A Forti_ (SEAL)          4/15/02 _A Clark_ (SEAL)
Date        Signature                                  Date        Signature

_____ (SEAL)          9/15/04 _____ (SEAL)
Date        Signature                                  Date        Signature

**Date of Ratification** (see DEFINITIONS PARAGRAPH) _____, _____

**********************************************************************
**For information purposes only:**

Listing Company's Name and Address:                     Selling Company's Name and Address:
                                                         W C & A N Miller
_Carol Forti_                                            4701 Sangamore Road
                                                         Bethesda, Md. 20816

Office # _202-462-1843_ FAX # _____          Office # _301-229-4000_ FAX # _301-229-4052_
MRIS Broker Code: _____ MRIS Office ID# _____     MRIS Broker Code:_Mil-01_ MRIS Office ID# _____
Agent Name _____                                        Agent Name _June C. Humbert_
Agent MRIS ID# _____                                    Agent MRIS ID# _7911_ (_3089_)
Agent Email Address _____                               Agent Email Address _Rhum36@ EROLS. COM_

©1999. This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form by REALTORS® or members of Associations, or any use of this form whatsoever by non-members of Associations, is prohibited without prior written authorized consent of the Associations.


REALTOR

Regional Sales Contract - 9/99  K1265          Page 5 of 5



# Washington, DC Jurisdictional Addendum
### (REQUIRED NOTICE AND DISCLOSURE ADDENDUM
### FOR USE WITH THE REGIONAL CONTRACT)



## Greater Capital Area Association of REALTORS®, Inc.

The Contract of Sale between _Carol Fortas_____, Seller, and
_Alberto Chong and Luisa Zan forlin_____,Buyer, dated _April 15, 2002_
for the sale of Lot _540_ Square _2115_ Parking Space _—_
Subdivision/Condominium Project _____ also known as
_2936 Garfield Terrace NW_ Washington, DC, _20008_
(Address)                                                        (Zip)
is hereby amended by the incorporation of the following paragraphs, which shall supersede any provisions to the contrary in the Contract.

**1. LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residential Property ☒ was built prior to 1978 OR ☐ was not built prior to 1978 OR ☐ building date is uncertain. If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratified unless it includes, and the Seller and Buyer both accept, the following two amendatory forms: A. Lead-Based Paint Disclosure Form, AND B. Lead-Based Paint Inspection Contingency Addendum OR Waiver of Lead-Based Paint Inspection Contingency. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_Caf/_____ Seller's Initials            _AL / XG_____ Buyer's Initials

**2. SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-951 prior to the submission of the offer ☒ Yes ☐ No.

_XL / XG_ Buyer's Initials

**3. RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

**4. D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____ _urban land Sassafras_ _____
For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

**5. TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.
  a. If the Property is tenant occupied, Buyer hereby certifies that Buyer ☒ will ☐ will not occupy the Property.

  b. The Property is sold and shall be conveyed free of existing tenancy except as follows: _N/A_
(hereinafter the "Tenant(s)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld) Seller shall not modify the terms of or terminate such tenancy, except for non-payment of rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _N/A_ (date), Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property or shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

---

**6. UNDERGROUND STORAGE TANK DISCLOSURE. (Applicable to single family sales only.)**
In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows:_____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract.
Buyer:_____

---

**7. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) or the purchase price is less than or equal to Three Hundred Thousand Dollars ($300,000.00) and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

**8. CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property ☐ is ☐ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is _____N/A_____ per _____N/A_____.

**9. NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent or Designated Representative assigned to the Seller.) Notices to the Purchaser shall be effective when delivered to the Buyer or an Agent of the Purchaser named in the contract (including a Dual Agent or Designated Representative assigned to the Purchaser.) "Purchaser" means "Buyer" and vice versa.

**10. INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties hereto agree and authorize Escrow Agent to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to the Buyer at time of settlement. For accounting purposes, the Buyer's social security number is _____. A Processing fee may be charged to the party receiving the interest by the above Escrow Agent for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to the Seller.

| | | | |
|---|---|---|---|
| _Carol L. Forte_  4/15/02 | | _(signature)_  4/15/02 | |
| Seller  Date | | Buyer  Date | |
| | | | |
| _____  _____ | | _(signature)_  4/15/02 | |
| Seller  Date | | Buyer  Date | |

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

# FEDERAL LEAD PAINT DISCLOSURE
## (Sales)
Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

**RE:** _2936 GARFIELD TERRACE NW_
Property Address

## LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

## SELLER'S DISCLOSURE

(a)     Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)     Records and reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and report pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

## PURCHASER'S ACKNOWLEDGMENT

(c)     Purchaser has received copies of all information listed above. ☒ Yes     ☐ No     ☐ None listed

(d)     Purchaser has received the pamphlet Protect Your Family From Lead in Your Home. ☒ Yes   ☐ No.

(e)     Purchaser has (check one below):

☐ Received a ~~10-day~~ _5 day_ opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

## AGENT'S ACKNOWLEDGMENT

Agent has informed the seller of the seller's obligations Under 42 U.SC. 4582(d) and is aware of his/her responsibility to ensure compliance.

## CERTIFICATION OF ACCURACY

The signatory parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | | |
|---|---|---|---|---|
| _Carol A. Forte_ | 4/10/02 | | _signature_ | 4/15/02 |
| Seller | Date | | Buyer | Date |
| | | | _signature_ | 4/15/02 |
| Seller | Date | | Buyer | Date |
| | | | _Jane C. Humbert_ | 4/15/02 |
| Agent | Date | | Agent | Date |

## SELLER'S DISCLOSURE STATEMENT

Property Address: _2936 Garfield Terrace, N.W., Wash, D.C. 20008_

Condominium Unit: _____   Cooperative Unit: _____

**Purpose of Statement:** This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering, or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the Seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's agent is required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent(s) to provide a copy of this statement to any prospective buyer or agent of such prospective buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent(s); if any. This information is a disclosure only and is not intended to be part of any contract between Buyer and Seller.

If this is a sale of a condominium unit or cooperative unit, or lot in a homeowners association, this disclosure form provides information only as to the unit (as defined in the governing documents of the association) or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

A.   **Property Conditions, Improvements & Additional Information:**

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Water system: | | | | |
|     Well supplied | | | | |
|     City supplied | ✓ | | | |
|     Working order? | ✓ | | | |
| 2. Sewer system: | | | | |
|     Septic tank | ✓ | | | |
|     City supplied | ✓ | | | |
|     Working order? | ✓ | | | |
| 3. Insulation | ✓ | | | |
| 4. Urea formaldehyde foam insulation | | ✓ | | |
| 5. Leaks in roof | | ✓ | | |
| 6. Age of roof | | | | |
|     0-5 years | | | | |
|     5-10 years | | | | |
|     10-15 years | | | | |
|     15+ years | ✓ | | | |
| 7. Wall defects | | ✓ | | |
| 8. Floor defects | | ✓ | | |
| 9. Foundation defects | | ✓ | | |
| 10. Window defects | ✓ | | | A few storm windows need small repair |
| 11. Evidence of water in basement | | ✓ | | |
| 12. Heating system: | | | | |
|     Central | | | | |
|     Gas | ✓ | | | |
|     Oil | | | | |
|     Heat Pump | | ✓ | | |
|     Working order? | ✓ | | | |
|     Age of Heating System: | | | | |
|     0-5 years  _6 yrs old_ | | | | |
|     5-10 years | ✓ | | | |
|     10+ years | | | | |
| 13. Air Conditioning System: | | | | |
|     Central | ✓ | | | |
|     Window | | | | |
|     Gas | | | | |
|     Electric | ✓ | | | |
|     Heat Pump | | ✓ | | |
|     Working order? | ✓ | | | |
|     Age of Air Conditioning System: | | | | |
|     0-5 years | ✓ | | | |
|     5-10 years  _6 yrs old_ | | | | |
|     10+ years | | | | |
| 14. Plumbing System: | | | | |
|     Copper | | | | |
|     Galvanized | | | | |
|     Other | | | | |
|     Working order? | ✓ | | | |
|     Any known problems? | | ✓ | | |

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 15. Electrical System: | | | | |
| Working order? | ✓ | | | |
| Any known problems? | | ✓ | | |
| 16. History of Infestation  *None* | | | | |
| Termites | | *None* | | |
| Carpenter Ants | | ✓ | | |
| Rodents | | ✓ | | |
| Other | | ✓ | | |
| 17. Environmental Problems  *None* | | | | |
| Asbestos | | ✓ | | |
| Radon Gas | | ✓ | | |
| Formaldehyde | | ✓ | | |
| Contaminated soil | | ✓ | | |
| Other | | ✓ | | |

Provide explanations of the foregoing responses here. Attach additional sheets if necessary: _All gutters were replaced in 2000. All outside trim was painted in 2000 Terraced patio was pressure-cleaned in Sept 2001 Oak floors were sanded and polyurethened in late 2001_

**B.** **Appliances/Systems/Services:** **The items below are in working order:**

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Range/Oven | ✓ | | | |
| 2. Dishwasher | ✓ | | | |
| 3. Refrigerator | ✓ | | | |
| 4. Range hood/fan | ✓ | | | |
| 5. Disposal | ✓ | | | |
| 6. TV antenna, TV rotor & controls | ✓ | | | |
| 7. Storm Windows | ✓ | | | |
| 8. Garage door opener & remote control | ✓ | | | |
| 9. Alarm system | | | | ✓ |
| 10. Intercom system | | | | ✓ |
| 11. Central vacuum | | | | ✓ |
| 12. Attic fan | | | | ✓ |
| 13. Pool heater, wall liner & equip. | | | | ✓ |
| 14. Microwave oven | ✓ | | | |
| 15. Trash compactor | | | | ✓ |
| 16. Ceiling fan | | | | ✓ |
| 17. Sauna/hot tub | | | | ✓ |
| 18. Lawn sprinkler system | | | | ✓ |
| 19. Water heater | ✓ | | | |
| 20. Water softener/conditioner | | | | N/A |
| 21. Sump pump | | | | ✓ |
| 22. Furnace | ✓ | | | |
| 23. Humidifier | | | | ✓ |
| 24. Electronic air filter | | | | ✓ |
| 25. Solar heating system | | | | ✓ |
| 26. Fireplace & chimney | ✓ | | | |
| 27. Wood burning system | ✓ | | | ✓ |
| 28. Smoke Detector(s) | ✓ | | | |
| 29. Carbon Monoxide detector(s) | | | | ✓ |

Provide any explanations of the foregoing responses here. Attach additional sheets if necessary: _Cap on dishwasher soap dish tends to stick. Washes dishes superbly if soap is put in recepticle and cap is not closed_

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

071599wdcar

3

C. **Other items: Are you aware of the following:**

1. Features of the property shared in common with the adjoining landowners:

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| Walls | | | | |
|   Seller responsible for maintenance | | | | ✓ |
| Fences | | | | |
|   Seller responsible for maintenance | ✓ | | | |
| Roads | | | | |
|   Seller responsible for maintenance | | ✓ | | |
| Driveways | | | | |
|   Seller responsible for maintenance | ✓ | | | |
| Other (list) | | | | |
| _____ | | | | |
| _____ | | | | |
| _____ | | | | |
|   Seller responsible for maintenance | | | | ✓ |
| 2. Encroachments | | | | ✓ |
| 3. Easements | | | | ✓ |
| 4. Zoning violations | | | | ✓ |
| 5. Nonconforming uses | | | | ✓ |
| 6. Structural modifications | | | | ✓ |
| 7. Settling problems | | | | ✓ |
| 8. Flooding problems | | | | ✓ |
| 9. Drainage problems | | | | ✓ |
| 10. Structural problems | | | | ✓ |
| 11. Grading problems | | | | ✓ |
| 12. Damage to property from: | | | | |
|   Fire | | ✓ | | |
|   Wind | | ✓ | | |
|   Floods | | ✓ | | |
|   Landslides | | ✓ | | |

Provide any explanations of the foregoing responses here. Attach additional sheets, if necessary. *No explanations necessary. Foregoing is self-explanatory.*

_____

_____

The Seller has lived in the residence on the property from *July 3, 1995* (date) *through Present* (date). The Seller has owned the property since *July 3, 1995* (date) and makes the statements herein only since that date. The Seller has indicated above as to the condition of all the items based on information actually known to the Seller.

Seller certifies that the information in this statement is true and correct to the best of Seller's actual knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY.

Seller *Carol A. Forte*    Date *April 13, 2002*

Seller _____    Date _____

BUYER HEREBY EXPRESSES AN INTENT TO RESIDE IN THE PROPERTY TO BE TRANSFERRED.

BUYER HAS READ AND ACKNOWLEDGES RECEIPT OF THIS STATEMENT AND ACKNOWLEDGES THAT THIS STATEMENT IS MADE BASED UPON THE SELLER'S ACTUAL KNOWLEDGE AS OF THE ABOVE DATE; IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES WHICH BUYER MAY WISH TO OBTAIN; AND IS NOT A STATEMENT, REPRESENTATION OR WARRANTY BY ANY OF THE SELLER'S AGENTS OR ANY SUB-AGENTS AS TO THE PRESENCE OR ABSENCE OF ANY CONDITION, DEFECT OR MALFUNCTION OR AS TO THE NATURE OF ANY CONDITION, DEFECT OR MALFUNCTION.

Buyer _____    Date *4/15/02*

Buyer _____    Date *4/15/02*

*Property is sold in "AS IS" Condition.*

071599wdcar

4



STATE OF MARYLAND
REAL ESTATE COMMISSION

# Understanding Whom Real Estate Agents Represent

Before you decide to sell or buy or rent a home you need to consider the following information:

## Agents Who Represent the Seller

**Seller's Agent:** A seller's agent works for the real estate company that lists and markets the property for the sellers, or landlords, and exclusively represents the sellers or landlords. That means that he or she may assist the buyer or tenant in purchasing or renting the property, but his or her duty of loyalty is only to the sellers or landlords. The seller pays the seller's agent's fees as specified in a written listing agreement.

**Cooperating Agent:** A cooperating agent works for a real estate company different from the company for which the seller's agent works. The cooperating agent can assist a buyer or tenant in purchasing or renting a property, but his or her duty of loyalty is only to the sellers or landlords. The cooperating agent's fee is paid by the sellers or landlords through the seller's agent's company.

## Agents Who Represent the Buyer

**Presumed Buyer's Agent (no written agreement):** When a person goes to a real estate agent for assistance in finding a home to buy or rent, the agent is presumed to be representing the buyer and can show the buyer properties that are *not* listed by the agent's real estate company. A presumed buyer's agent may *not* make or prepare an offer or negotiate a sale for the buyer. The buyer does *not* have an obligation to pay anything to the presumed agent.

If for any reason the buyer does not want the agent to represent him or her as a presumed agent, either *initially* or *at any time*, the buyer can decline or terminate a presumed agency relationship simply by saying so.

**Buyer's Agent (by written agreement):** A buyer or tenant may enter into a written contract with a real estate agent which provides that the agent will represent the buyer or tenant in locating a property to buy or rent. The agent is then known as the buyer's agent. That agent assists the buyer in evaluating properties and preparing offers, and negotiates in the best interests of the buyer or tenant. The agent's fee is paid according to the written agreement between the agent and the buyer or tenant. If you as a buyer or tenant wish to have an agent represent you exclusively, you must enter into a written buyer agency agreement.

## Dual Agents

The possibility of **dual agency** arises when the buyer's agent and the seller's agent both work for the same real estate company, and the buyer is interested in property listed by that company. The real estate company, or broker, is called the "dual agent". Dual agents do not act exclusively in the interests of either the seller or buyer, or landlord or tenant, and therefore cannot give undivided loyalty to either party. There may be a conflict of interest because the interests of the seller and buyer may be different or adverse.

**If both seller and buyer, or landlord and tenant, agree to dual agency** by signing a Consent For Dual Agency form, then the real estate company (the "dual agent") will assign one agent to represent the seller or landlord (the seller's "intra-company agent") and another agent to represent the buyer or tenant (the buyer's "intra-company agent"). Intra-company agents may provide the same services to their clients as exclusive seller's or buyer's agents, including advising their clients as to price and negotiation strategy, provided the clients have both consented to be represented by dual agency.



## Greater Capital Area Association of REALTORS®, Inc.



### DISCLOSURE OF BROKERAGE RELATIONSHIP

THE UNDERSIGNED DO HEREBY ACKNOWLEDGE DISCLOSURE THAT:

THE LICENSEE _WC & AN Miller_

(NAME OF FIRM)

REPRESENTS THE FOLLOWING PARTY IN A REAL ESTATE TRANSACTION:

_____    SELLER(S)    OR    ✓    BUYER(S)

_____    LANDLORD(S)    OR    _____    TENANT(S)

_4/15/02_    _Carol A. Foster_
DATE    NAME

_____    _____
DATE    NAME

"This is a temporary form - subject to future revision by the D.C. Real Estate Commission"

GCAAR-143

Page 1 of 1

EXHIBIT

tabbies

2

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement") dated this 8th day of

_MAy_____, 2002 by and among CAROL FORTI (the "Seller"); ALBERTO

CHONG and LUISA ZANFORLIN (the "Purchasers"); W.C. AND A.N. MILLER

DEVELOPMENT COMPANY, a Delaware corporation qualified to do business in D.C. (the

"Broker"), and NATHAN FINKELSTEIN (the "Escrow Agent") recites and provides as follows.

(Seller, Broker and Purchasers are collectively referred to as the "Parties".)

### RECITALS

A.    The Parties are parties respectively to a Purchase Contract dated April 15, 2002

for the sale and purchase of real property commonly known as 2936 Garfield Terrace, N.W. in

the District of Columbia (the "Property"). A copy of the Purchase Contract, as amended, is

attached hereto as Exhibit A, made a part hereof and incorporated herein by reference. Unless

otherwise stated, defined terms used herein shall have the same definitions as are set forth in the

Purchase Contract, as amended.

B.    The Parties hereto acknowledge that a dispute has arisen between the Seller and

the Broker as to the payment, if any, of a Commission by Seller to the Broker in the amount of

3% of the Purchase Price of $950,000 ($28,500).

C.    The Parties also acknowledge that the dispute between the Seller and the Broker

should not interfere with the sale and closing of the Property from Seller to Purchasers.

D.    The Parties further acknowledge that the dispute between the Seller and the

Broker has caused delays in the transfer of title to Purchasers while the per diem fees attributable

to property taxes and interest on the first and second trust financing continue to accrue to the

Purchasers.

E.    The Parties hereto desire that the Escrow Agent act as Escrow Agent for the Commission and other monies more specifically described herein in accordance with this Escrow Agreement.

F.    Escrow Agent has agreed to accept and hold the Commission and such other monies as more specifically described herein and to act as escrow agent pursuant to the terms and conditions set forth herein.

**NOW THEREFORE,** for and in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto and the Escrow Agent intending to be legally bound, hereby agree as follows:

1.    Escrow Agent agrees to withhold $29,850.70 (the "Escrow Funds") from the proceeds at Settlement/Closing on the Property and deposit same in an interest bearing bank account such as a money market account or penalty free Certificate of Deposit which is FDIC insured. The Parties agree to share, pro rata, the costs and fees incurred by Escrow Agent in establishing this account, which shall not exceed Five Hundred Dollars ($500.00).

Escrow Agent shall disburse the Escrow Funds pursuant to a written release executed by the Parties/Parties' counsel or as set forth in a certified order of a court that is a final non appealable order. The Escrow Funds in dispute are calculated as follows:

| | | |
|---|---|---|
| 3% Commission | = | $28,500.00 |
| Property Taxes: $14.29 per day x 9 days | = | $ 128.61 |
| First Trust: $120.205 per day x 9 days | = | $ 1,081.85 |
| 2nd Trust: $15.582 per day x 9 days | = | $ 150.24 |
| TOTAL | = | $29,850.70 |

2

In the event that a final court ruling awards the Commission to Broker without reference to the per diem charges described above, Escrow Agent shall disburse the per diem charges described above with accrued interest to the Purchasers.

In the event that a final court ruling awards the Commission to Seller without reference to the per diem charges described above, Escrow Agent shall disburse the per diem charges described above with accrual interest to Seller.

2.    In order to induce Escrow Agent to act as escrow agent, the Parties agree as follows:

a.    All notices, instructions, requests and advice required or permitted to be given under this Escrow Agreement shall be in writing and signed by the Parties giving the same. All such notices, instructions, requests, and advice shall be personally delivered, sent by facsimile or by nationally recognized overnight courier services (charge prepaid), and shall become effective when received (or first refused). The respective address for the Escrow Agent shall be 7315 Wisconsin Avenue, Suite 400 East, Bethesda, Maryland, phone 301-951-8400; fax 301-951-8401.

b.    Escrow Agent may rely upon and shall be protected in acting upon any written notice, instructions, request or advice received by Escrow Agent and believed by Escrow Agent to be genuine. Escrow Agent shall not be responsible for the sufficiency, correctness, genuineness or validity of any document delivered by the Parties. Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by Escrow Agent in good faith, or for any mistake of fact or law, except that Escrow Agent shall be liable for gross negligence or willful misconduct which results in the breach of this Escrow Agreement.

3

c.    Escrow Agent shall not be required to institute legal proceedings of any kind or to defend any legal proceedings which may be instituted against Escrow Agent with respect to the Escrow Funds unless required to do so by one of the Parties, and only upon being indemnified to Escrow Agent's satisfaction by the requiring party against all cost and expense of such legal proceedings, including, but not limited to, attorney's fees.

d.    Escrow Agent shall be indemnified and held harmless by the Parties against any claim, costs, damages, adjustments, attorney's fees, expenses, obligations or charges made against Escrow Agent by reason of its failing to act in accordance with this Escrow Agreement, unless caused by Escrow Agent's gross negligence or willful misconduct which results in the breach of this Agreement.

e.    Except as provided in paragraph 2 hereof, in the event Escrow Agent receives or becomes aware of conflicting demands or claims with respect to this Escrow Agreement or the rights of any of the Parties hereto, or the Escrow Funds, Escrow Agent shall have the right to discontinue any and all further acts on its part until such conflict is resolved to Escrow Agent's satisfaction. Escrow Agent shall further have the right, but not the obligation, to commence or defend any action or proceeding for the termination of such conflict. The Parties agree to pay all costs, damages, judgments, and expenses, including reasonable attorney's fees suffered or incurred by Escrow Agent, in connection with or arising out of a suit in interpleader brought by Escrow Agent. Except as provided in Paragraph 2 hereof, in the event Escrow Agent files a suit in interpleader, and the Escrow Funds are deposited by Escrow Agent with a court of competent jurisdiction in such interpleader action, Escrow Agent shall thereupon be fully released and discharged from all further obligations to perform any and all duties or obligations imposed upon Escrow Agent by this Escrow Agreement with respect to the Escrow Funds.

4

3.    This Escrow Agreement sets forth exclusively Escrow Agent's duties with respect to all matters pursuant hereto and no implied duties or obligations shall be read into this Escrow Agreement against Escrow Agent.

4.    The execution of this Escrow Agreement by the Parties hereto may not be considered a release or waiver of any claims or defenses that the Parties may have against each other for damages incurred as a result of the dispute between the Seller and Broker over the Commission.

5.    This Escrow Agreement shall be construed and enforced in accordance with the laws of the District of Columbia and shall be binding upon the Parties hereto and their successors and assigns.

6.    This Escrow Agreement may be executed in counterparts and facsimile signatures shall be treated as original signatures.

7.    The Parties signatory hereto represent that they have the authority to execute this Escrow Agreement.

5

IN WITNESS WHEREOF, each of the Parties and Escrow Agent has caused this Agreement to be executed on the day and year entered above.

SELLER:

By: _____
       Carol Forti

Date: _____

PURCHASERS:

By: _____
       Alberto Chong

Date: _____

By: _____
       Luisa Zanforlin

Date: _____

BROKER:

By: _____
       W.C. and A.N. Miller Development Company

Date: _____

ESCROW AGENT:

By: _____
       Nathan Finkelstein

Date: _____

61681.000002 WASHINGTON 286600v2                            6

IN WITNESS WHEREOF, each of the Parties and Escrow Agent has caused this

Agreement to be executed on the day and year entered above.

SELLER:

By:_____
        Carol Forti

Date:_____

PURCHASERS:

By:_____
        Alberto Chang

Date: May 08 2002

By:_____
        Luisa Zanforlin

Date: May 8, 2002

BROKER:

By:_____
        W.C. and A.N. Miller Development Company

Date:_____

ESCROW AGENT:

By:_____
        Nathan Finkelstein

Date:_____

61691.000002 WASHINGTON 236600v2                    6

IN WITNESS WHEREOF, each of the Parties and Escrow Agent has caused this

Agreement to be executed on the day and year entered above.

SELLER:

By:_____
    Carol Forti

Date:_____

PURCHASERS:

By:_____
    Alberto Chong

Date:_____

By:_____
    Luisa Zanforlin

Date:_____

BROKER:

By: _Donald H. Hadley_ Attorney
    W.C. and A.N. Miller Development Company
    DONALD H. HADLEY

Date: 5/8/02

ESCROW AGENT:

By:_____
    Nathan Finkelstein

Date:_____

6

61681.000002 WASHINGTON 286600v2

IN WITNESS WHEREOF, each of the Parties and Escrow Agent has caused this Agreement to be executed on the day and year entered above.

SELLER:

By:_____
      Carol Foxti

Date:_____

PURCHASERS:

By:_____
      Alberto Chong

Date:_____

By:_____
      Luisa Zanforlin

Date:_____

BROKER:

By:_____
      W.C. and A.N. Miller Development Company

Date:_____

ESCROW AGENT:

By:_____
      Nathan Finkelstein

Date: May 8, 2002

6

61631.900002 WASHINGTON 286600v2

EXHIBIT
3

## A. Settlement Statement

| | | |
|---|---|---|
| | U.S. Department of Housing and Urban Development | FINAL |
| | | OMB No. 2502-0265 |

**B. Type of Loan**

1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv. Unins.
4. ☐ VA   5. ☐ Conv. Ins.

6. File Number: 2002070
7. Loan Number: 0013303052
8. Mortgage Insurance Case Number

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**D. NAME OF BORROWER:** Alberto E. Chong and Luisa Zanforlin
ADDRESS: 2936 Garfield Terrace, Washington, D.C. 20008

**E. NAME OF SELLER:** Carol A. Forti
ADDRESS: 2936 Garfield Terrace, N.W., Washington, D.C. 20008

**F. NAME OF LENDER:** Charter One Mortgage
ADDRESS: 6011 Executive Boulevard, #300, Rockville, Maryland 20852

**G. PROPERTY ADDRESS:** 2936 Garfield Terrace, N.W., Washington, D.C. 20008

**H. SETTLEMENT AGENT:** Nathan I. Finkelstein, Phone: 301-951-8400 / Fax : 301-951-8401

**PLACE OF SETTLEMENT:** 7315 Wisconsin Avenue, Suite 400 East, Bethesda, MD 20814

**I. SETTLEMENT DATE:** 04/29/2002

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | 950,000.00 | 401. Contract sales price | 950,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 46,157.37 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 903,842.63 | **420. GROSS AMOUNT DUE TO SELLER:** | 950,000.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 40,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 650,000.00 | 502. Settlement charges to seller (line 1400) | 40,630.70 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff #4800102715612 | 460,792.61 |
| | | Greenpoint Mortgage Corp. | |
| 205. | | 505. Payoff of Second Mortgage Loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes   04/01/02 to 04/29/02 | 414.26 | 510. City/town taxes   04/01/02 to 04/29/02 | 414.26 |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 690,414.26 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 501,837.57 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 903,842.63 | 601. Gross amount due to seller (line 420) | 950,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 690,414.26 | 602. Less reduction amount due seller (line 520) | 501,837.57 |
| **303. CASH FROM BORROWER** | 213,428.37 | **603. CASH TO SELLER** | 448,162.43 |

**SUBSTITUTE FORM 1099 SELLER STATEMENT** The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

**SELLER INSTRUCTIONS** If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return, for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040)

You are required to provide the Settlement Agent with your correct taxpayer identification number. If you do not provide the Settlement Agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN  025281782   SELLER(S) SIGNATURE(S): Carol A Forti

SELLER(S) NEW MAILING ADDRESS _____

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $950,000.00 | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 704. $ 40,000.00 POC, Earnest Money retained as part of commission by W.C. & A.N. Miller Realtors | | | |
| 705. Disputed Commission of 3% held in escrow per escrow agreement | | | 28,500.00 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee    1.000 %Charter One Mortgage | | 6,500.00 | |
| 802. Loan Discount    % | | | |
| 803. Appraisal Fee    to Richard Gill | | 400.00 | |
| 804. Credit Report | | | |
| 805. | | | |
| 806. Underwriting Fee    to Charter One Mortgage | | 150.00 | |
| 807. Flood Certification Fee    to Charter One Mortgage | | 19.00 | |
| 808. Tax related Service Fee    to 1st American | | 48.00 | |
| 809. Doc Processing Fee    to Charter One Mortgage | | 300.00 | |
| 810. | | | |
| 811. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest From 04/29/2002 to 05/01/2002    @$ 120.2050 /day    2 Days | | 240.41 | |
| 902. Mortgage Insurance Premium for    to | | | |
| 903. Hazard Insurance Premium for    1 year to Geico    (P.O.C.) 1,928.00 Buyer | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance    3 mo. @ $    160.67 /mo. | | 482.01 | |
| 1002. Mortgage Insurance    mo. @ $    /mo. | | | |
| 1003. City Property Taxes    mo. @ $    434.51 /mo. | | | |
| 1004. County Property Taxes    7 mo. @ $    434.51 /mo. | | 3,041.57 | |
| 1005. Annual Assessments    mo. @ $    /mo. | | | |
| 1006. Aggregate Analysis Adjustment    to Charter One Mortgage | | 916.52- | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement Fee    to Nathan I. Finkelstein, Attorney at Law | | | 175.00 |
| 1102. Abstract or title search    to Capital Abstracts, L.P./NIF | | 155.00 | |
| 1103. Title examination    to Nathan I. Finkelstein, Attorney at Law | | 295.00 | |
| 1104. Title Insurance binder    to Nathan I. Finkelstein, Attorney at Law | | 50.00 | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | | |
| (includes above items No:    ) | | | |
| 1108. Title Insurance    to Commonwealth Land Title Insurance Company | | 2,067.00 | |
| (includes above items No:    ) | | | |
| 1109. Lender's Coverage $    650,000.00    - 1,387.50 | | | |
| 1110. Owner's Coverage $    950,000.00    - 679.50 | | | |
| 1111. Release Fee(s)    to Nathan I. Finkelstein, Attorney at Law | | | 90.00 |
| 1112. | | | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees Deed $    ; Mortgage $ 90.00    ; Release $ 40.00 | | 90.00 | 40.00 |
| 1202. City Transfer Tax    Deed $10,450.00; Mortgage $ | | | 10,450.00 |
| 1203. City Recordation Tax    Deed $10,450.00; Mortgage $ | | 10,450.00 | |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. Overnight/Courier/Faxes/Copies    to Nathan I. Finkelstein, Attorney at Law | | 80.00 | 25.00 |
| 1304. Heloc fees paid by Lender    to Nathan I. Finkelstein, Attorney at Law 260.00 Buyer | | | |
| 1305. Proceeds from 2nd Trust    to Chong/Zanforlin | | 69,608.84- | |
| 1306. Property Taxes adjustment    to NIF Escrow | | | 128.61 |
| 1307. Interest Adjustment -1st trust    to NIF Escrow | | | 1,081.85 |
| 1308. Interest Adjustment -2nd trust    to NIF Escrow Account | | | 140.24 |
| 1400. TOTAL SETTLEMENT CHARGES    (enter on lines 103, Section J and 502, Section K) | | 46,157.37- | 40,630.70 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Xtorie E. Chong
625303672

Lized ZanForlin
225799723

Carol A. Forti
C25281782

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18; U.S. CODE SECTION 1001 AND SECTION 1010.

CAROL FORTI SETTLEMENT OFFICER   Printed 03/07/2002 at 16:37

DATE:

REV: HUD-1 (3/86)



**Greater Capital Area Association of REALTORS®, Inc.**
# EXCLUSIVE RIGHT TO SELL - LISTING AGREEMENT FOR IMPROVED REAL PROPERTY
Attach Jurisdictional Addendum and Required Disclosures

```
                                                              ┌─────────────────┐
                                                              │    EXHIBIT      │
PROPERTY ADDRESS:_____                    │                 │
                                                              │      4          │
  CITY:_____, STATE:_____ DATE:_____ MULTIPLE LIST #:___ └────────┘
```

**1. SELLER (List all owners):**_____

**Mailing address, if different:**_____

**Office Telephone:** _____ **Office/Home Fax:** _____

**Home Telephone:**_____ **Cell Phone(s):** _____ / _____

**Email Addresses:** _____ / _____

**2. BROKER:**_____ **Broker Code:**_____ **MRIS #:**_____

**Office Address:**_____ **Office Telephone :**_____ **Office Fax:**_____

**Listing Agent:**_____ **Direct Line:** _____ **License #**_____

**Home Phone:** _____ **Cell Phone:** _____ **Email Address:**_____

**3. PURPOSE:** This Agreement ("Agreement") between Seller and Broker grants to Broker the exclusive right to sell, exchange or convey the herein described property ("Property"), together with all improvements thereon and with all attached rights and easements, attached hereto, and known as Lot:_____ Block/Square: _____ Unit: _____ Section:_____
Tax ID #_____ Parking Space(s) #_____ Storage Unit(s) #_____
Subdivision/Project:_____ under the terms and conditions set forth herein. Seller represents that the Parking Space(s) and/or Storage Unit(s) ☐ do(es) convey ☐ do(es) not convey.

**4. LISTING PRICE:** The Property is offered for sale at a listing price ("Listing Price") of _____
_____ dollars ($_____) with minimum deposit of _____%
or such other price and deposit as is later agreed upon in writing.

**5. LISTING PERIOD:** This Agreement shall become effective on _____ and shall expire at midnight on
_____ ("Listing Period") or such other date if so amended in writing. The listed Property shall be available for showing no later than 48 hours from the effective date hereof. If a sales contract is signed before this Agreement expires, providing for settlement beyond the Listing Period or any written extension thereof, the terms hereof shall be extended automatically until final disposition of the sales contract.

**6. BROKER'S FEE:**
  A. Fee: Seller agrees to pay to Broker _____% of the sale price or $_____ (strike one) as broker's fee ("Broker's Fee") and acknowledges that Broker's Fee shall be earned and payable in the event that:
     (1) Broker or its sales associates, other brokers or their sales associates, Seller or any other person, produces a ready, willing and able Buyer who presents an offer to purchase, exchange or convey the Property on the terms herein provided or at any price and terms acceptable to Seller during the Listing Period or any written extension thereof or;
     (2) Seller enters into a sales contract with a buyer who was shown the Property by Seller, Broker, or its sales associates, other brokers or their sales associates, or any other person during the Listing Period or any written extension thereof. Further, such Broker's Fee shall be paid if the Property is sold, conveyed, or otherwise transferred within _____ days after the termination of this Agreement or any extension thereof (the "Protection Period") to anyone to whom the Property has been shown by Broker or anyone else, including the Seller, prior to final termination of this Agreement unless a valid listing agreement is entered into during the term of said Protection Period with another licensed real estate broker.
  B. Seller reserves the right, if said Property is not previously sold, to accept any offer in excess of the listed price.
  C. Deferral: Broker agrees to defer receipt of Broker's Fee until settlement date solely as an accommodation to Seller; such deferral shall in no event be construed as a waiver of said earned fee, which is due and payable under the terms of this paragraph 6.
  D. Cancellation: If Buyer, after contract acceptance, cancels the sale, fails to perform or is otherwise in default, the Broker's Fee is due only if and when Seller collects damages by suit, settlement, or forfeiture of deposit. In such case, Broker shall receive the

acceptance, cancels the sale, fails to perform or otherwise is in default of the sales contract, the Broker's Fee is due in full no later than the agreed settlement date.

E. Broker's sole duty is to effect a sale of the Property.

**7. AGENCY:** Agency disclosure laws and types of representation vary in the State of Maryland and District of Columbia. Options include, but are not limited to, seller agency, buyer agency, sub-agency, intra-company agency, designated representation and dual agency. See Jurisdictional Addenda.

**8. AUTHORIZATIONS:**

A. Sign: Seller authorizes Broker to install a "For Sale" sign on the Property, in accordance with applicable zoning ordinances and community association regulations.

B. Marketing, Photography and Dissemination of Information: Seller authorizes Broker to market the Property in any medium selected by Broker including, but not limited to, a picture book, newspaper, periodical, MRIS, Internet, photo listing or pictorial display and any other similar or related use for marketing purposes. Seller authorizes Broker to disseminate information about the Property.

C. Key and KeyBox:

(1) Use: Seller authorizes Broker to allow key-entry showings and the installation of a KeyBox and the delivery of door access keys for use by the Greater Capital Area Association of REALTORS®, Inc. ("GCAAR") members and members of current REALTOR® Associations Signatory to the ELECTRONIC KEYBOX SERVICE AGREEMENT ("Authorized Users") to access the Property and to accompany prospective buyers, inspectors, appraisers, exterminators and other parties necessary for showings and inspecting the Property. Affiliate members (i.e., inspectors, appraisers, estimators) may have access for its business purpose with permission of the Listing Agent.

(2) Leased Property: If the Property is under lease during the Listing Period, Seller will furnish Broker with a written authorization, signed by all lessees, authorizing the use of a KeyBox and/or keys.

(3) Private Insurance: Seller is advised to take all precautions for safekeeping of valuables and to maintain appropriate insurance through Seller's own insurance company.

(4) Liability: Seller agrees for itself, its heirs and assigns to completely indemnify, save and hold harmless said Broker, its agents, and its affiliated brokers, salespeople, cooperating brokers, subagents, affiliate members with key(s) and with KeyBox access and the Greater Capital Area Association of REALTORS®, Inc., from any and all claims, loss or liability arising from the use of said key(s) or Key Boxes, including Broker's negligence, breach of contract or any wrongdoing exclusive of gross negligence or willful misconduct. Seller assumes all risk of any loss, damage and injury, except those caused by gross negligence or willful misconduct of any party.

D. Cooperation and Fee Sharing: Seller authorizes Broker to make the Property available to all brokers/agents, sub-agents or buyer agents, and to pay a portion of the Broker's Fee (paragraph 6.A.) as compensation to sub-agent brokers ("Cooperating Broker") or buyer-agent brokers ("Buyer Broker").

**9. INCLUSIONS/EXCLUSIONS:** Unless otherwise negotiated in the sales contract, the sales price shall include those items of personal property as described in the attached INCLUSIONS/EXCLUSIONS DISCLOSURE. It is recommended that this Disclosure be left at the Property for prospective buyers.

**10. PROPERTY CONDITION AND DISCLOSURE OF MATERIAL FACTS:**

A. Legal Requirement: Seller acknowledges that the Broker has informed Seller of Seller's applicable obligations, as defined in applicable forms attached hereto, to provide a Disclosure/Disclaimer Statement to prospective buyers. Certain classifications of sellers are exempted from this requirement by law.

B. Indemnify: Seller agrees to indemnify and hold Broker harmless from all claims, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Seller or from Seller's failure to disclose any material facts.

C. Hazardous Materials and Conditions: There are environmental conditions and hazardous materials that could affect the Property and sale. Broker does not have the technical expertise to advise Seller of their presence. Seller may employ an expert to inspect for same. In the event Seller conducts such tests and makes reports available to Broker, Seller authorizes Broker to make said reports available to prospective buyers.

D. Amend as Applicable: Seller agrees to amend in writing the applicable Disclosures if any material change affecting the Property occurs during the Listing Period.

**11. LEAD PAINT REGULATIONS:** SELLER REPRESENTS AND WARRANTS TO BUYER, BROKERS, BROKER'S AGENTS AND SUBAGENTS OF BROKERS, INTENDING THAT THEY RELY UPON SUCH WARRANTY AND REPRESENTATION, THAT THE PROPERTY WAS _____ OR _____WAS NOT CONSTRUCTED PRIOR TO 1978 (SELLER TO INITIAL)_____ _____

IF SELLER IS UNABLE TO REPRESENT AND WARRANT THE AGE OF THE PROPERTY, SELLER AGREES TO

This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
©2000, The Greater Capital Area Association of REALTORS®, Inc.
Previous Editions of this form should be destroyed.

COMPLY WITH THE REQUIREMENTS OF THE FEDERAL RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992.  SELLER TO INITIAL _____   _____

FEDERAL LAW (TITLE X, SECTION 10108, THE RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992) REQUIRES THE DISCLOSURE OF CERTAIN INFORMATION REGARDING LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS, IN CONNECTION WITH THE SALE OF RESIDENTIAL REAL PROPERTY.

A SELLER WHO FAILS TO GIVE THE REQUIRED LEAD-BASED PAINT DISCLOSURE FORM AND EPA PAMPHLET ENTITLED "PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME" MAY BE LIABLE UNDER THE ACT FOR THREE TIMES THE AMOUNT OF DAMAGES AND MAY BE SUBJECT TO BOTH CIVIL AND CRIMINAL PENALTIES.
Seller and any agent involved in the transaction are required to retain a copy of the completed Federal Lead-Based Paint Disclosure Form for a period of three (3) years following the date of settlement.

**12. TERMITE/WOOD-DESTROYING INSECTS:**  Seller agrees to provide access to the Property for an inspection to determine evidence of active infestation by termites and/or other wood-destroying insects.  This inspection is in addition to the pre-settlement inspection and other inspections as agreed to in the sales contract.  The inspection shall include the house, garage or other outbuildings and any fences abutting the house, as may be required by the sales contract.  If infestation or damage exists, then prior to or at settlement, Seller agrees, at Seller's expense, to treat present infestation and repair damage caused by present or prior infestation, in accordance with the terms of the sales contract (a copy of which has been given to the Seller) or lender requirements. In the event Seller accepts a contract that includes VA financing, Seller agrees to reimburse Buyer for the reasonable cost of said inspection.

**13. ENCUMBRANCES /LIENS:**
A. Clear Title: Seller warrants clear title and agrees to provide sufficient cash to discharge at settlement all liens and encumbrances including, but not limited to, existing deeds of trust, home equity loans, mechanic's liens, deferred transportation related facility charges/taxes, tax judgment liens, property taxes, Coop, Condo, HOA fees or any specific unit assessments. Seller shall comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowner's or property owners' association or actions in any court on account thereof, against or affecting the Property on the date of settlement. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. In case action is required to perfect the title, such action must be taken promptly by the Seller at the Sellers' expense.  Seller shall convey the Property by special warranty deed. Seller shall sign such affidavits, lien waivers, tax certifications and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lender(s) and/or lien holder(s).
B. Liens:  Seller discloses to Broker the following existing liens/encumbrances against the Property and further agrees to disclose any new liens which arise during the Listing Period:
(1) First Trust Lender : _____  Approx. Balance: $_____
    Account# _____  Address: _____  Telephone#:_____
(2) Second Trust/Home Equity Lender: _____  Approx. Balance: $_____
    Account# _____  Address: _____  Telephone #:_____
(3) Other Lien Holders*: _____  Approx. Balance: $_____
    Account# _____  Address: _____  Telephone #:_____
* Attach additional information as required.
C. Rights to Property:  Seller warrants that the Property is not subject to any right to purchase, lease or acquisition by virtue of an existing option, right of first refusal or other agreement.  Seller agrees not to negotiate new leases, or extend existing leases, during the Listing Period without prior written approval of Broker.
D. General Title Disclosures:  Except as provided below, Seller has no knowledge of any pending matters that might give rise to problems with the sale of the Property including, but not limited to, divorce, estate, deceased co-owner, foreclosure, bankruptcy or other legal proceedings:_____.

**14. OWNERSHIP WITH ASSESSMENTS:** ☐Condominium OR ☐Cooperative OR ☐Homeowners Association  (HOA)
Name of Project/Subdivision: _____
Management Company: _____
Address:_____  Telephone #:_____
Normal Assessment $_____  Additional/Special Assessment $_____  Outstanding Balance $_____
Seller agrees to abide by disclosure requirements of local statutes governing condominiums, cooperatives or homeowners associations by completing required disclosure addenda and by furnishing Buyer, at Seller's expense, a current "resale" certificate and pertinent documents, for the project/community in which Property is located.

**15. SMOKE DETECTOR REQUIREMENTS:** Seller acknowledges that he has been advised by REALTOR® that smoke detectors are required in jurisdictions that have smoke detector ordinances and Seller shall have same installed and operational

**16. FAIR HOUSING LAWS:** In compliance with federal fair housing regulations, the Property shall be made available to all persons without regard to race, color, religion, national origin, sex, physical or mental handicaps and familial status. Additional protected classes for the District of Columbia or the State of Maryland and the appropriate local jurisdictions are listed in the applicable jurisdictional addendum attached hereto.

**17. CLOSING COSTS:** Seller acknowledges that buyers have the right to select the title insurance company, settlement or escrow company or title attorney. Seller agrees to pay settlement costs including, but not limited to, the release of liens or encumbrances against the property, deed preparation, other legal document preparation, courier/delivery charges, reasonable settlement fee and, in addition, transfer and recordation taxes and any other costs agreed upon in the sales contract.

**18. IRS:** Section 1445 of the Internal Revenue Service (IRS) Code may require the settlement agent to report the gross sales price, Seller's federal tax identification number and other required information to the IRS. Seller will provide to the settlement agent such information at the time of settlement. In certain situations, the IRS requires a percentage (currently 10%) of the sales price to be withheld from Seller's proceeds if Seller is a foreign person for purposes of U.S. income taxation. A foreign person includes, but is not limited to, non-resident aliens, foreign corporations, foreign partnerships, foreign trusts or foreign estates. Seller represents that Seller is ☐ OR is not ☐ a foreign person for purposes of U.S. income taxation.

**19. GENERAL PROVISIONS:**
A. Laws and Regulations: Seller acknowledges that Broker and its sales associates are bound by and subject to the regulations of the multiple listing service to which the Broker subscribes. Broker must comply with federal, state and local laws and regulations as well as real estate licensing laws and regulations of either the District of Columbia or the State of Maryland.
B. Competing Properties: Seller understands that Broker may have or obtain listings of other similar properties and that potential buyers may consider, make offers on, or purchase through Broker properties that are similar to Seller's property. Seller consents to Broker's representation of sellers and buyers of other similar properties before, during and after the expiration of this Agreement.
C. Subsequent Offers: Upon final ratification by the Seller of a contract of sale pursuant to this Listing Agreement, Broker shall have no further obligation hereunder to procure or present to Seller any subsequent purchase offers.
D. Notice: Seller agrees that this Agreement and any modifications thereof shall only be in full force and effect when signed by both parties and received by Broker or by transmitting a fully executed copy to Broker, signed by all parties, via an electronic medium, which produces a tangible record of the signed transmission.
E. Paragraph Headings: The Paragraph headings in this Agreement are for reference and convenience only, and do not define or limit the intent, rights or obligations of the parties.
F. Gender: Wherever the context so requires, the singular numbers shall include the plural, the plural the singular, and the use of either gender shall include the other gender.
G. "Buyer" means "purchaser" and vice versa.
H. Sample Contract: Seller acknowledges receipt of current residential contract of sale or regional sales contract form.

**20. ADDITIONAL TERMS:** _____

_____

**21. OWNERSHIP**
Seller represents that no other person or entities own any portion of the Property or have any ownership rights to the Property.

**22. ENTIRE AGREEMENT OF PRINCIPALS:**
A. This Agreement contains the entire listing agreement between Seller and Broker. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement.
B. Seller acknowledges that he has read and understands the Agreement, that it is a legally binding contract, that he may seek legal advice prior to signing it and that all information provided to Broker by Seller is true and correct to the best of Seller's knowledge.
C. SELLER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS LEGALLY BINDING AGREEMENT AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.

_____       _____
Seller/Owner (indicate if sole owner)    Date        Broker                              Date

_____       _____
Seller/Owner                             Date        Listing Agent                       Date
*If signing for any other owner of Property, attach Power of Attorney.

This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
©2000, The Greater Capital Area Association of REALTORS®, Inc.
Previous Editions of this form should be destroyed.

EXHIBIT

5

## ASSIGNMENT OF PROCEEDS

I, Carol A. Forti, sole owner of the property at 2936 Garfield Terrace, N.W.,

Washington, D.C. 20008, hereby assign $367,000 from proceeds on the sale of my

home to MBH Settlement Group LC, 228 S. Washington Street, Suite 100,

Alexandria, VA for the benefit of Michael Paradis for my purchase of 14 West

Chapman Street, Alexandria, Virginia 22301.


_____          _____
Carol A. Forti                                            Date
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
202/462-1843




Accepted subject to receipt of cleared funds

_____          _____
Nathan Finklestein                                    Date
7315 Wisconsin Avenue
Bethesda, MD
301/951-8400

EXHIBIT

6

## AFFIDAVIT OF GANT REDMON
## Commonwealth of Virginia, City of Alexandria

Gant Redmon, being first duly sworn, states that I am a member of Redmon, Peyton & Braswell, L.L.P., which is located at 510 King Street, Alexandria, Virginia. I had power of attorney for client Michael Paradis, seller of a townhouse at 14 West Chapman Street, Alexandria, on which Carol Forti had a contract to purchase.

Since Mr. Paradis insisted that settlement on his townhouse take place on April 29, 2002, Ms. Forti and Mr. Paradis' agent arranged for settlement to take place at 12:00 noon on April 29, 2002 at MBH Settlement Group in Alexandria.

Settlement on the sale of her home at 2936 Garfield Terrace, N.W., Washington, D.C. to contract holders Alberto Chong and Luisa Zanforlin was scheduled for 9:00 a.m. on April 29, 2002 at Finkelstein & Horvitz in Bethesda, Maryland.

Prior to the date of settlement, Nathan Finkelstein, the settlement attorney on the sale of Ms. Forti's home, had accepted an Assignment of Proceeds, so that part of the funds that Ms. Forti received from sale of her home would go directly to MBH Settlement Group to pay the balance of the purchase price on the townhouse.

When Ms. Forti arrived at settlement on the townhouse, she explained to me what had occurred at the 9:00 a.m. settlement on her home. She told me that the HUD Settlement Sheet, which was prepared by Esther Finkelstein, the settlement attorney's wife, deducted a 3 percent commission for June Humbert, the buyers' broker, from the $950,000 in net proceeds that she was promised in the Chong/Zanforlin contract, leaving her with proceeds of $921,500. She stated that she declined to sign the HUD Settlement Sheet, because she did not owe Humbert any commission and told the parties that she would not sign any HUD Settlement Sheet until it reflected that she would receive



$950,000 in net proceeds. She also told me that Finkelstein had suggested putting the disputed funds in escrow, so that settlement could proceed. She stated that she had agreed to escrow the disputed funds, but the buyers' broker and the buyers had refused to escrow the disputed funds. At that point, Ms. Forti stated, she left to meet with Mr. Paradis' agent for a "walk-through" of his property followed by settlement at MBH Settlement Group.

Mr. Finkelstein called during the settlement on the townhouse. He told me that there was a dispute between Ms. Forti and Mrs. Humbert regarding a commission. Finkelstein told me that he had proposed that the parties escrow the disputed funds, so that settlement could proceed. He told me that seller Forti had agreed to escrow the disputed funds but that buyers' broker and the buyers had refused to escrow the funds.

Since settlement did not take place as planned, Finkelstein also advised me that he could not at that time forward funds to MBH Settlement Group for the balance of the purchase price on the townhouse.

Thereupon, I tendered settlement on behalf of my client, Paradis, and executed all of the settlement documents with instructions to the MBH settlement officer that she was not to use them until she had received the purchaser's funds.

(Signature page follows)

2

February 5, 2003.
_____
Date

_____
Gant Redmon

Subscribed and sworn to before me this 5th day of February 2003.

February 5, 2003
_____
Date

_____
Notary Public

My Commission expires: 05-31-06
_____

3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served copies of Forti's entire response to counsel George Masson, Jr. and counsel Richard Agulia by first-class mail, postage prepaid on June 18, 2003.

Carol A. Forti

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION


W.C. & A.N. Miller Development Company
     Plaintiff

         v.                          **Case No. 02ca0004745**
                                     **Calendar 13, Judge Melvin Wright**

Carol A. Forti
     Defendant/Counterclaimant/Third Party Plaintiff


         v.


June Humbert
4901 Scarsdale Road
Bethesda, Maryland 20816
     Third Party Defendant


         v.


Luisa Zanforlin
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
     Third Party Defendant


         v.


Alberto Chong
2936 Garfield Terrace, N.W.
Washington, D.C. 20008
     Third Party Defendant

### PROPOSED ORDER

Having carefully considered the Motion for Summary Judgment by W.C. & A.N.

Miller and the Opposition/Rebuttal filed by Defendant/Counterclaimant Forti and having

been persuaded that there is only one reasonable interpetation and legal construction of

the Offer and subsequent contract, which is that no commission is due Miller, it is, this

_____ day of June 2003,

     HEREBY DECIDED that Miller's Motion is DENIED; and

HEREBY DECIDED that Forti Renewed Motion for Summary Judgment is GRANTED; and

HEREBY DECIDED that Miller is liable to Forti for the costs she incurred in retaining Vernon Johnson of Jackson and Campbell to review the pleadings and serve as First Chair at trial, if necessary, as well as all filing fees in connection with this litigation.

_____

Judge Melvin Wright

Please serve:

Carol A. Forti
14 West Chapman Street
Alexandria, Virginia 22301

Richard Agulia
Hunton & Williams
1900 K Street, N.W.
Washington, D.C. 20006-1109

George T. Masson, Jr.
Hamilton and Hamilton, LLP
1775 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4645

2

# Superior Court of the District of Columbia

## CIVIL DIVISION

500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001    Telephone (202) 879-1133

_W.C., & A. N. Miller Development Co,_
_____
Plaintiff

**SUBPOENA IN A CIVIL CASE**

v.

_Carol A. Forti_
_____
Defendant / Counterclaimant / Third Party Plaintiff

**CASE NUMBER:** 02ca 0004745

To: _W.C. & A. N. Miller Development Co,_

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| COURTROOM | DATE | TIME |
|---|---|---|
|  |  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE | TIME |
|---|---|---|
|  |  |  |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (_list documents or objects_).

| DOCUMENTS OR OBJECTS |
|---|
| See Amended Letter Attached to Amended Subpoena Duces Tecum |

| PLACE OF PRODUCTION  1120 20th St. N.W. (South Tower) Wash. D.C. Office of Vernon Johnson  Jackson & Campbell P.C. | DATE 6/9/2003 | TIME 5 p.m. |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE | TIME |
|---|---|---|
|  |  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. SCR-CIV 30(b)(6).

| ISSUING PERSON'S SIGNATURE AND TITLE (indicate if attorney for plaintiff or defendant)  Carol N. Forti Defendant/Counterclaimant/Third Party Plaintiff | DATE 5/23/2003 |
|---|---|
| ISSUING PERSON'S NAME, ADDRESS AND PHONE NUMBER | |

**(SEE RULE 45, SUPERIOR COURT RULES OF CIVIL PROCEDURE ON REVERSE)**

WHITE—ORIGINAL    YELLOW—FOR RETURN SERVICE    PINK—OFFICE COPY

Form CV(6)-433/May 94

4-1855 wd-392

## AMENDED LETTER ACCOMPANYING AMENDED
## SUBPOEANA DUCES  TECUM

14 West Chapman Street
Alexandria, Virginia 22301
May 23, 2003

**DIRECTED TO:**
W.C. & A.N. Miller Development Co., Plaintiff
 4830 Massachusetts Avenue, N.W.
 Washington, D.C. 20016-2016

The attached subpoena calls for the production of a complete and accurate record of all settlements from April 29, 2002 through May 23, 2003 in which W.C. & A.N. Miller agent June Humbert served as an agent for the buyer(s) or as agent for the seller(s) and the name, address, and telephone number of each attorney and/or settlement company that handled the settlement transaction as well as the date of the settlement.

In addition, this subpoena calls for the production of a complete record of all settlements from April 29, 2001 through May 23, 2002 in which W.C. & A.N. Miller agent June Humbert served as broker for the buyer(s)or as broker for the seller(s) and the name, address, and telephone number of the attorney and settlement company that handled the settlement as well as the date of settlement.

Finally, the subpoena calls for production of a printout of the computerized tape prepared by the Recorder of Deeds for Montgomery County and the District of Columbia on property transactions during the respective periods.

Please arrange to have all of the subpoenaed material delivered to Vernon Johnson, Jackson & Campbell, P.C., 1120 20th Street, N.W. (South Tower), Washington, D.C. no later than 5:00 p.m. on June 9, 2003.

Very truly yours,

Carol A. Forti
Defendant/ Counterclaimant/
Third Party Plaintiff

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001    Telephone (202) 879-1133

W.C. & A.N. Miller Development Co
_____
**Plaintiff**

SUBPOENA IN A CIVIL CASE

v.

Carol A Forti
_____
**Defendant / Counterclaimant & Third Party Plaintiff**

CASE NUMBER: 02 ca 0009745

To: June Humbert
_____
Third Party Defendant

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| COURTROOM | DATE | TIME |
|---|---|---|
|  |  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE | TIME |
|---|---|---|
|  |  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying *copies* of the following documents or objects at the place, date, and time specified below (*list documents or objects*):

| DOCUMENTS OR OBJECTS |
|---|
| See Amended Letter Attached to Amended Subpoena Duces Tecum |

| PLACE OF PRODUCTION 1120 20th St N.W (South Tower) Wash DC Office of Vernon Johnson Dickstein & Campbell | DATE 6/9/2003 | TIME 5 p.m. |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE | TIME |
|---|---|---|
|  |  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. SCR-CIV 30(b)(6).

| ISSUING PERSON'S SIGNATURE AND TITLE (Indicate if attorney for plaintiff or defendant) | DATE |
|---|---|
| Carol A Forti Defendant/Counterclaimant/Third Party Plaintiff | 5/23/2003 |

| ISSUING PERSON'S NAME, ADDRESS AND PHONE NUMBER |
|---|
|  |

**(SEE RULE 45, SUPERIOR COURT RULES OF CIVIL PROCEDURE ON REVERSE)**

WHITE—ORIGINAL    YELLOW—FOR RETURN SERVICE    PINK—OFFICE COPY

Form CV(6)-433/May 94

4-1855 wd-392

## AMENDED LETTER ACCOMPANYING AMENDED
## SUBPOEANA DUCES TECUM

> 14 West Chapman Street
> Alexandria, Virginia 22301
> May 23, 2003

**DIRECTED TO:**
June Humbert, Third Party Defendant
    Agent of W.C. & A.N. Miller Development Co.
    4701 Sangamore Road
    Bethesda, MD

    The attached subpoena calls for the production of a complete and accurate record of all settlements from April 29, 2002 through May 23, 2003 in which W.C. & A.N. Miller agent June Humbert served as an agent for the buyer(s) or as agent for the seller(s) and the name, address, and telephone number of each attorney and/or settlement company that handled the settlement transaction as well as the date of the settlement.

    In addition, this subpoena calls for the production of a complete record of all settlements from April 29, 2001 through May 23, 2002 in which W.C. & A.N. Miller agent June Humbert served as broker for the buyer(s)or as broker for the seller(s) and the name, address, and telephone number of the attorney and settlement company that handled the settlement as well as the date of settlement.

    Finally, the subpoena calls for production of a printout of the computerized tape prepared by the Recorder of Deeds for Montgomery County and the District of Columbia on property transactions during the respective periods.

    Please arrange to have all of the subpoenaed material delivered to Vernon Johnson, Jackson & Campbell, P.C., 1120 20th Street, N.W. (South Tower), Washington, D.C. no later than 5:00 p.m. on June 9, 2003.

> Very truly yours,
>
> Carol A. Forti
> Defendant/ Counterclaimant/
>     Third Party Plaintiff



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### WASHINGTON, D.C. 20001-2131

JANUARY TERM, <u>2004</u>          APPEAL NUMBER _____

|   | APPELLANT | SUPERIOR COURT |
|---|---|---|
| CAROL FORTI |  | CASE NUMBER <u>CA4745-02</u> |

    __X__ Record _____ Reporter's Transcript Coming

VS.                    _____ Supp. Record No. _____

    APPELLEE

W.C. MILLER                _____ Items marked on Designation of Record will
                           be certified as a supplemental record.

___X___CIVIL _____FAMILY _____TAX _____PROBATE _____CRIMINAL

## INDEX/CLERK'S CERTIFICATION

| | |
|---|---|
| **INDEX/CLERK'S CERTIFICATION** | 0 |
| **JACKET ENTRIES** | 1 |
| **DOCKET ENTRIES** | 4 |
| **COMPLAINT FILED 6/13/02** | 18 |
| **AMENDED COMPLAINT FILED 6/14/02** | 38 |
| **ANSWER FILED 7/15/02** | 55 |
| **COUNTERCLAIM FILED 7/15/02** | 77 |
| **ANSWER OF W.C. AND A.N. MILLER COMPANY TO THE COMPLIANT FILED 8/2/02** | 82 |
| **THIRD PARTY COMPLAINT FILED 8/6/02** | 85 |
| **ANSWER OF JUNE HUMBERT TO THIRD-PARTY COMPLAINT FILED 8/27/02** | 94 |
| **OPPOSITION TO MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS THE THIRD PARTY COMPLIANT AGAINST DEFENDANTS CHONG AND ZANFORLIN FILED 9/10/02** | 99 |
| **ORDER DENYING MOTION TO DISMISS JUDGE ABRECHT FILED 9/25/02** | 125 |

It is hereby certified that the following pages numbered <u>1</u> to <u>674</u> inclusive, are a true and correct transcript of the record.

WITNESS my hand and seal (above) of the Superior Court of the District of Columbia this <u>6th</u> day of <u>FEBRUARY</u> 2004.

                        Clerk of the Court

                        By _____
                          **Deputy Clerk**

Form AC-1255A/Oct. 00

## PAGE 2
## INDEX CONTINUED: CA4745-02

ORDER DENYING MOTION TO STRIKE JUDGE ABRECHT FILED 9/25/02    127

ANSWER OF THIRD PARTY DEFENDANTS ALBERTO CHONG AND LUISA    129
ZANFORLIN FILED 10/10/02

OPPOSITION TO CROSS MOTION FILED BY BUYERS CHONG & ZANFORLIN TO    136
POSTPONE THE DATE FOR FILING THEIR 26(b)(4) STATEMENT FILED 12/9/02

CERTIFICATE REGARDING DISCOVERY FILED 12/18/02    141

CERTIFICATE REGARDING DISCOVERY FILED 12/20/02    143

CERTIFICATE REGARDING DISCOVERY FILED 1/703    147

CERTIFICATE REGARDING DISCOVERY FILED 1/703    149

OPPOSITION OF DEFENDANT, COUNTERCLAIMANT FORTI TO PLAINTIFF'S    151
MOTION TO STRIKE FORTI'S MOTION TO QUASH DEPOSITIONS AND HER MOTION
FOR A PROTECTIVE ORDER FILED 1/16/03

CERTIFICATE REGARDING DISCOVERY FILED 1/28/03    159

DEFENDANT, COUNTERCLAIMANT, THIRD PARTY PLAINTIFF FORTI MOVES FOR    161
SUMMARY JUDGMENT AGAINST PLAINTIFF AND THIRD PARTY DEFENDANT FILED
2/10/03

MOTION FOR RULE 11 SANCTIONS FILED 2/26/03    197

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR    221
RULE 11 SANCTIONS FILED 3/6/03

OPPOSITION OF THIRD-PARTY DEFENDANTS CHONG AND ZANFORLIN TO THIRD-    292
PARTY PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS FILED 3/6/03

ORDER JUDGE WRIGHT FILED 3/20/03    354

ORDER JUDGE WRIGHT FILED 3/20/03    357

ORDER GRANTING THIRD PARTY DEFENDANTS CHONG AND ZANFORLIN'S    359
MOTION TO VACATE THE CURRENT SCHEDULING ORDER AND SET NEW
DEADLINES FILED 4/3/03

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF/COUNTERCLAIM    363
DEFENDANT W.C. & A.N. MILLER DEVELOPMENT COMPANY AND THIRD-PARTY
DEFENDANT JUNE HUMBERT IN OPPOSITION TO DEFENDANT/THIRD-PARTY
PLAINTIFF CAROL A. FORTI'S "MOTION FOR JUDICIAL ENFORCEMENT OF A
DISCOVERY, WHICH PLAINTIFF AND THIRD-PARTY DEFENDANT HUMBERT
REFUSE TO PRODUCE ALTHOUGH THEY HAVE NO LEGITIMATE REASON TO
REFUSE PRODUCTION" FILED 5/14/03

MOTION FOR SUMMARY JUDGMENT OF THIRD-PARTY DEFENDANTS CHONG AND    380
ZANFORLIN FILED 5/23/03

MOTION OF PLAINTIFF/COUNTERCLAIM DEFENDANT W.C. AND A.N. MILLER    481
DEVELOPMENT COMPANY AND THIRD-PARTY DEFENDANT JUNE HUMBERT FOR
SUMMARY JUDGMENT FILED 5/29/03

ORDER JUDGE WRIGHT FILED 6/4/03    585

OPPOSITION OF THIRD-PARTY DEFENDANTS CHONG AND ZANFORLIN TO FORTI'S    587
RENEWED MOTION FOR SUMMARY JUDGMENT FILED 6/25/03

**PAGE 3**
**INDEX CONTINUED: CA4745-02**

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF W.C. & A.N. MILLER    597
DEVELOPMENT COMPANY AND THIRD-PARTY DEFENDANT JUNE HUMBERT IN
OPPOSITION TO "MOTION FOR JUDICIAL ENFORCEMENT SUBPOENA, CONTEMPT
OF COURT, AND SANCTIONS AGAINST W.C. AND A.N. MILLER DEVELOPMENT
COMPANY AND JUNE HUMBERT FOR FAILURE TO PRODUCE INFORMATION AND
DOCUMENTS IN RESPONSE TO A LAWFUL SUBPOENA THAT THEY HAVE NO
LEGITIMATE EXCUSE FOR NOT PRODUCING"

OPPOSITION TO THIRD-PARTY THIRD-PARTY DEFENDANTS CHONG AND    626
ZANFORLIN TO FORTI'S MOTION FOR ENLARGEMENT OF TIME TO FILE
DISPOSITIVE MOTION FILED 7/9/03

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF W.C. & A.N. MILLER    629
AND THIRD-PARTY DEFENDANT JUNE HUMBERT IN OPPOSITION TO DEFENDANT
FORTI'S RENEWED MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO
DEFENDANT FORTI'S MOTION FOR MOTION FOR SUMMARY JUDGMENT FILED
7/9/03

RESPONSE OF W.C. & A.N. MILLER DEVELOPMENT COMPANY AND JUNE    644
HUMBERT TO "REPLY BY DEFENDANT, COUNTERCLAIMANT, THIRD PARTY
PLAINTIFF FORTI TO THE MEMORANDUM OF POINTS AND AUTHORITIES FILED
BY W.C. AND A.N. MILLER AND THIRD PARTY DEFENDANT JUNE HUMBERT FILED
7/11/03

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT    647
FORTI'S MOTION FOR ENLARGEMENT OF TIME WITHIN WHICH TO FILE A RULE
34 REQUEST FOR PRODUCTION OF DOCUMENTS

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT JUDGE    660
WRIGHT FILED 10/31/03

NOTICE OF APPEAL FILED 11/10/03    665
DESIGNATION OF RECORD FILED 11/10/03    666
STATEMENT REGARDING TRANSCRIPT    667
COUNTER DESIGNATION OF RECORD FILED 11/19/03    668
COUNTER STATEMENT REGARDING TRANSCRIPT    670
COUNTER DESIGNATION OF RECORD FILED 11/24/03    671
COUNTER STATEMENT REGARDING TRANSCRIPT    674