*I have enclosed this portion of my deposition to show that my position has been consistent throughout this litigation.*

29

1  to be the one who brought such buyers to you, a
2  commission, or is it your opinion you would not be
3  liable for any commission in that circumstance?
4      A  First of all, I would not be liable.  I
5  would not accept an offer at $895,000.  This was put
6  on the market in a period with an extremely small
7  inventory of homes to be sold.  It's a particularly
8  unique property.
9          I fully expected that there will be
10  multiple ads raising this property, as Ms. Humbert
11  anticipated in providing an addendum and an
12  escalation clause in an attempt to try to be the
13  highest bidder on this property.
14     Q  Let me, I understand what you're saying,
15  let me rephrase it then to try and meet that
16  circumstance.  Suppose Ms. Humbert had presented a
17  buyer to you who was prepared to give you $950,000 in
18  cash.
19     A  Uh-huh.
20     Q  For the property.
21     A  Uh-huh.
22     Q  And who had no other conditions.

30

1      A  Uh-huh.
2      Q  On the purchase that were unacceptable to
3  you.  And let's assume.
4      A  Uh-huh.
5      Q  You were prepared to accept the $950,000
6  offer.
7      A  Uh-huh.
8      Q  Assume that.  What, if anything further,
9  would be required to give rise on your part to an
10  obligation to pay a three percent cooperative
11  broker's commission?
12     A  There would have to be a contract between
13  Ms. Humbert and myself, signed by both of us, that I
14  had agreed to pay a three percent commission.
15     Q  In other words --
16     A  This ad in itself does not bind me to pay
17  a three percent commission.
18     Q  So if I understand what you're saying, the
19  contractual obligation to pay the commission to an
20  agent could arise only by a written document.  It
21  couldn't arise through the performance of any act
22  alone?

31

1      A  You've stated that very broadly.  I just,
2  I have reiterated to you the statement of,
3  performance of any act would be, is against my
4  interpretation and the Supreme Court's interpretation
5  and the Court of Appeals' interpretation of what
6  advertisements are.
7          Advertisements, I repeat, are not offers
8  in themselves.  They are merely solicitations to make
9  an offer.  And they do not create the power of
10  acceptance in the offeree.
11     Q  Okay.  So, again, just to be sure that I
12  understand what you said, I believe you've indicated
13  there would have to be a written document executed by
14  you and the agent before you would have any
15  obligation to pay to the agent who brought the buyer
16  with whom you executed the contract?
17     A  That is exactly right.
18     Q  The commission, even if the broker had
19  brought the potential buyer to you as a result of
20  this ad?
21     A  That's exactly right.
22     Q  Okay.  N[...]s I

**EXHIBIT**

**E**

32

1  think you've a[...]ired that
2  somebody call [...] see the
3  property.
4      A  Uh-huh.
5      Q  Is that correct?
6      A  Yes.
7      Q  And I take it that Ms. Humbert did call
8  you?
9      A  Uh-huh.
10     Q  To arrange an appointment to come see the
11  property?
12     A  That's correct.
13     Q  And do you know when that occurred?
14     A  I don't recall.
15     Q  I assume it was before April 13th, is that
16  correct?
17     A  Yes, it was.
18     Q  April 13th was a Saturday, I believe, was
19  it not?
20     A  I believe this was shown on Saturday and
21  Sunday by appointment, by prior appointment.
22     Q  I've got a copy of a calendar here if you