RECEIVED

SEP 2 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CAROL A. FORTI,**
14 West Chapman Street
Alexandria, VA 22301
703.535.5449
        Plaintiff

    v.

**Civil Action No. 1:06CV00613
JR**

**GEORGE MASSON, JR. (COUNSEL TO
    W.C. & A.N. MILLER)**
Hamilton and Hamilton LLP
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
        Defendant


**HAMILTON AND HAMILTON LLP (COUNSEL TO
    W.C. & A.N. MILLER)**
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
        Defendant,

**RICHARD AGULIA
(COUNSEL TO CHONG AND ZANFORLIN)**
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
        Defendant,

**JEFFREY HARDIE
(COUNSEL TO CHONG AND ZANFORLIN)**
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
        Defendant,

**NATHAN FINKELSTEIN
(SETTLEMENT ATTORNEY)**
Finkelstein & Horvitz, P.C
7315 Wisconsin Avenue
Suite 400 East
Bethesda, MD 20814
        Defendant,

**FINKELSTEIN & HORVITZ, P.C.**
**(SETTLEMENT ATTORNEYS)**
7315 Wisconsin Ave., N.W.
Suite 400 East
Bethesda, MD 20814
            Defendant.

## OPPPOSITION TO THE MOTION FOR SANCTIONS BY GEORGE MASSON JR. AND HAMILTON AND HAMILTON LLP

George Masson Jr. and Hamilton and Hamilton LLP failed to file opposition to

Forti's Amended Motion for Summary Judgment, because they cannot dispute the

material facts listed therein and they have no countervailing arguments of law. They have

no valid defenses to Forti's Amended Complaint and Amended Motion for Summary

Judgment. They cannot defend on the basis of decisions made by Superior Court or the

Court of Appeals (even though they have grossly misrepresented those decisions),

because they were not parties to the action in Superior Court and are not in privity with

those parties. Second, the issues to be decided by the District Court are not the same

issues decided by Superior Court and the Court of Appeals. Therefore, the attorney

defendants cannot defend on the basis of collateral estoppel or issue preclusion.

Furthermore, Forti's Complaint was filed well within the Statute of Limitations. On

07/25/05, George Masson demanded attorney's fees in the amount of $84,340.71 for his

legal work in Superior Court and the Court of Appeals. On the same date, Richard Agulia

demanded attorney's fees in the amount of $73,773.93 for the legal services of Agulia and

Hardie in Superior Court and the Court of Appeals. Forti paid those attorney's fees on

07/25/05 to remove a lien placed on her retirement property in Maryland by Masson and

Agulia and to prevent the property from being sold at auction. Forti's Complaint was filed

2

on 04/03/06. Thus, Forti's Complaint against the defendant attorneys is well within the three-year Statute of Limitations.

Forti has raised for the first time in District Court causes of action against George Masson Jr., Hamilton and Hamilton, Richard Agulia, Jeffrey Hardie, Nathan Finkelstein, and Finkelstein & Horvitz for furthering and participating in civil fraud, conspiracy to commit civil fraud, and for intentional infliction of severe emotional distress. She sues Masson, Hamilton and Hamilton, Agulia, and Hardie for the intentional tort of abuse of process. Contrary to Masson's allegations, the issues to be decided by the District Court are entirely different from the issues decided by Superior Court and the Court of Appeals.

The motion for sanctions by Masson and Hamilton and Hamilton is merely a regurgitation of allegations and purported arguments that have already been discredited by Forti.

George Masson Jr. claims that Forti has offered no evidence to support her allegation that her most important pleadings were removed from the Civil Action Branch of Superior Court. Masson's claim is clearly false. At the time that this case was being heard in Superior Court, there was no security for pleadings filed with Superior Court. Illegally removed from the File Room in the Civil Action Branch of Superior Court were Forti's most significant pleadings. They included Forti's Opposition to Miller's Motion for Summary Judgment; Forti's Opposition to Chong and Zanforlin's Motion for Summary Judgment; Forti's Rebuttal of Miller's Points and Authorities; Forti's Rebuttal of Chong and Zanforlin's Points and Authorities; Forti's Renewed Motion for Summary Judgment, and subpoenas duces tecum addressed to Miller and Humbert, which called for

3

information on any settlement business that Miller provided to Finkelstein following the

settlement transaction between Forti and Chong/Zanforlin. The pleadings filed in

Superior Court are the pleadings used to prepare the Record on Appeal. See Exhibit D to

Forti's Second Amended Motion for Summary Judgment. The docket sheet prepared by

the Civil Action Branch of Superior Court records the filing of each of the specified

pleadings by Forti and the date on which she filed the pleading. Forti asks Judge

Robertson to compare the docket sheet with the INDEX/CLERK'S

CERTIFICATION prepared by the Appeal Coordinator's Office as part of the Record on

Appeal. Each of the specified pleadings is conspicuously missing from the

INDEX/CLERK'S CERTIFICATION. Obviously, these pleadings were removed from

the File Room of the Civil Action Branch sometime after they were filed by Forti and

before the Appeal Coordinator's Office prepared the INDEX/CERTIFICATION for the

Court of Appeals. Since no one but Masson, Agulia, and Hardie had a motive to remove

these pleadings and there is no other reasonable explanation for their disappearance, these

facts lead to the inevitable conclusion that these pleadings were removed by the named

attorneys. Theft by these attorneys of Forti's most important pleadings caused the Court

of Appeals to reach an erroneous decision. The decision in the Court of Appeals was

procured by fraud upon the court. Although Forti attempted to bring to the attention of the

Court of Appeals the fact that her most important pleadings had been removed illegally

from the File Room of the Civil Action Branch before the record on appeal was sent to

the Court of Appeals, the Court of Appeals never dealt with the theft issue and affirmed

the lower court decision based on a grossly incomplete record.

Masson seeks to mislead the Court when he claims that Forti and Chong/ Zanforlin executed a contract to purchase Forti's house for $950,000. The fact is that they executed a contract for $950,000 in Net Proceeds. The Escalator Clause Addendum of the Chong/Zanforlin Purchase Offer promised to pay Forti $5,000 in Net Proceeds over the Net Proceeds of the next highest offer. Since the next highest offer from Mr. J.W. Silas was for $945,000 in Net Proceeds, the Escalator Clause Addendum automatically raised the Chong/Zanforlin offer from $915,000 to $950,000 in Net Proceeds.

It is well-settled by the Supreme Court and Court of Appeals for the District of Columbia Circuit that advertisements are solicitations to make offers or invitations to bid. They are not offers. Forti's advertisement in the <u>Washington Post</u> for the sale of her home was a solicitation to make an offer. June Humbert, an experienced agent for Miller, recognized that the ad was an invitation to bid or solicitation to make an offer, and she prepared a Purchase Offer for Chong/Zanforlin and presented it to Forti. Since the ad was a solicitation to make an offer and not an offer itself, it could not be an offer for a unilateral contract, as Masson has contended. Judge Wright's conclusion that Forti's ad was an offer for a unilateral contract that was satisfied by Humbert's procurement of buyers was wrong on the law. Furthermore, Judge Wright's conclusion has no bearing on Forti's causes of action against George Masson and Hamilton and Hamilton. The Court of Appeals did not address the question as whether Forti's ad was an invitation to make an offer or an offer for a unilateral contract. The Court of Appeals merely affirmed Judge Wright's order granting summary judgment to Miller for a commission and affirmed Judge Wright's dismissal of Forti's claims against Chong and Zanforlin for breach of

5

contract and compensatory and consequential damages.

It is also clear that Miller was barred from receiving a commission by

D.C. Code section 42-1705, <u>Eggleton v. Vaughan</u>, 45 A.2d 362, 363 (D.C. App. 1946),

and <u>Fred Ezra Co. v. Pedas</u>, 682 A.2d 173, 176 (D.C. App. 1996). Since Forti did not

sign an employment contract with Miller or enter into a principal/agent relationship with

Miller or sign an agreement with Miller promising to pay a commission to Miller for

procuring buyers, Forti did not owe Miller a commission. In fact, Miller was barred by

law from receiving a commission. Judge Wright's decision to grant summary judgment

to Miller for a commission and to dismiss Forti's claims against Chong and Zanforlin did

not address the applicable case law nor was the case law addressed by the Court of

Appeals.

Contrary to Masson's assertions, George Masson, Jr., Hamilton and Hamilton,

Richard Agulia , Jeffrey Hardie, and Nathan Finkelstein furthered and participated in civil

fraud against Forti and conspired to commit civil fraud against Forti. The District of

Columbia recognizes civil fraud and conspiracy to commit civil fraud. The elements of

common law fraud are (1) false representation (2) of a material fact (3) which is made

with knowledge of its falsity (4) with intent to deceive (5) on which the victim took

justified reliance upon the misrepresentation. <u>Bennet v. Kiggins</u>, 377 A. 2d 57, 59 (D.C.

App.1977) <u>cert denied</u> 434 U.S. 1034, 98 S.Ct 768, 54 L Ed 2d 782  (1978) Humbert,

Chong, and Zanforlin made false representation of a material fact that Chong and

Zanforlin would pay $950,000 in Net Proceeds for title to Forti's property with

knowledge of its falsity and with intent to deceive. Although the Purchase Offer/Contract

6

was signed on April 15, 2002, Humbert, Chong, and Zanforlin did not disclose to Forti

that they were treating the $950,000 as Sales Price from which a commission could be

deducted until April 29, 2002, the date of settlement. Forti took justifiable reliance upon

the misrepresentation, which resulted in substantial financial injury to Forti. "Non-

disclosure or silence as well as active misrepresentation may constitute fraud." Bennett v.

Kiggins, supra at 60. "A false representation may be either an affirmative

misrepresentation or a failure to disclose a material fact when a duty to disclose that fact

has arisen." Rothenberg v. Aero Mayflower Transit Co., 495 F. Supp 399, 406 (D.D.C.

1980). These facts contain all the elements of civil fraud. George Masson Jr., Hamilton

and Hamilton, Richard Agulia, Jeffrey Hardie, and Nathan Finkelstein all knew that fraud

had been perpetrated against Forti by their clients. They all knew that Forti had selected

the Chong/ Zanforlin Offer over the next highest Purchase Offer for $945,000 in net

proceeds only because it offered $950,000 in net proceeds. They ignored the

unambiguous terms of the Escalator Clause Addendum of the Chong/Zanforlin Purchase

Offer/Contract, which can only be interpreted as offering Forti $950,000 in Net Proceeds.

They furthered that fraud by treating the $950,000 as "Sales Price" from which a

commission could be deducted. They furthered that fraud by ignoring all the facts and the

case law which prove that Forti did not owe Miller a commission. Civil conspiracy

requires an (1) agreement between two or more persons (2) to participate in an unlawful

act (3) an injury caused by an unlawful act performed by one of the parties to the

agreement (4) which overt act was done pursuant to and in furtherance of the common

scheme. Halbertstam v. Welch, 705 F. 2d 472, 479 (D.C. Cir 1983). George Masson, Jr.,

7

Richard Agulia, and Jeffrey Hardie knew of their clients' wrongful conduct and were actively involved in the wrongful conduct. They conspired with each other against Forti and furthered civil fraud by litigating a colorless, wanton suit against Forti to defraud her of $29, 850.70 in the escrow account. They litigated wantonly and maliciously against Forti for three years in order to defraud her of the $29, 850.70 in the escrow account, and they succeeded in defrauding her of that amount. They forced Forti to pay a commission to Miller that she did not owe. Their common actions in conspiring against Forti and in litigating wantonly and maliciously against Forti for three years to defraud her of the amount in escrow showed that there was an agreement among these defendants to act unlawfully and their overt tortious acts caused severe financial injury to Forti. These facts satisfy all the elements of conspiracy to commit civil fraud.

Although Forti may not have a cause of action against Masson and Hamilton and Hamilton for malicious prosecution, she is on very firm ground in stating a cause of action for the intentional tort of abuse of process. In fact, the very cases cited by Masson and Hamilton and Hamilton support a cause of action for abuse of process. According to Brown v. Hamilton, 601 A. 2d 1074, 1079 (D.C. App 1992), the tort of abuse of process lies when the legal system "has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be required to so." By means of litigation, Forti was compelled to pay Miller a commission even though Miller was barred from receiving a commission by D.C. Code and unequivocal case law by the District of Columbia Court of Appeals. The language of Williams v. City Stores Co., 192

8

A.2d 534,537 is virtually identical. "To charge an abuse of process, there must be a perversion of court processes to accomplish some end which the process was not intended by law to achieve, or which compels the party against whom it has been used to do some collateral thing which he could not legally be compelled to do." Forti did not legally owe Miller a commission, but court process was used to force Forti to pay Miller a commission.

Contrary to Masson's assertions, attorneys are liable for the intentional tort of abuse of process. The privilege an attorney has for his actions in representing a client is a qualified one that does not extend to the intentional tort of abuse of process. McElhanon v. Hing, 728 P.2d 256, 264 (Ariz. App 1985) cert denied 481 U.S. 1030, 107 S.Ct 1956, 95 L.Ed 2d 529 (1987). George Masson Jr. and Hamilton and Hamilton are, therefore, liable to Forti for the intentional tort of abuse of process.

Not only did Masson and Hamilton and Hamilton commit against Forti the intentional tort of abuse of process, they did so with fraud, ill will, recklessness, and willful disregard of Forti's rights, entitling Forti to an award of punitive damages.

Masson attempts to challenge the bona fide nature of the next highest purchase offer, but it is undisputed fact that Humbert reviewed the Offer from Mr. J.W. Silas for $945,000 in Net Proceeds in Forti's kitchen and went through the Purchase Offer page by page in Forti's presence. She also reviewed the earnest money check for $45,000 that accompanied the Purchase Offer. Forti offered to have the Purchase Offer and earnest money check xeroxed for Humbert, but Humbert said that was not necessary, because she was satisfied that the other Purchase Offer was bona fide. Only after Forti had refused to

pay Miller a 3 percent commission at settlement on April 29, 2002 did Masson, Agulia, and Hardie challenge the <u>bona fide</u> nature of the other Purchase Offer. As the buyer/broker for Chong and Zanforlin, it was Humbert's responsibility to determine whether the Offer from J.W. Silas was <u>bona fide</u> or not at the time the offer was made, and she determined that it was <u>bona fide</u>.

It is undisputed fact that the Escalator Clause Addendum offered Forti $5,000 in net proceeds above the net proceeds of the next highest offer. It is also undisputed fact that the next highest offer was for $945,000 in Net Proceeds. Since the next highest purchase offer was for $945,000 in NET PROCEEDS, the Escalator Clause Addendum automatically raised the Chong/Zanforlin Purchase Offer from $915,000 to $950,000 in NET PROCEEDS. Adding $5,000 in Net Proceeds to $945,000 in Net Proceeds was the basis for Forti writing in $950,000 on the page of the Purchase Offer containing the Escalator Clause Addendum, referring obviously to net proceeds. It is, therefore, perfectly accurate for Forti to say that defendant attorneys took advantage of a mistake (known to both parties) after seller Forti wrote in $950,000 next to NEW SALES PRICE on the printed form of the Purchase Offer/Contract but did not cross out NEW SALES PRICE and write in NET PROCEEDS. The failure by Humbert, Chong, and Zanforlin to acknowledge Forti's simple mistake was intentional misrepresentation. The insistence by Masson, Agulia, and Hardie that the $950,000 represented Sales Price from which a commission could be deducted was intentional misrepresentation to the court. Since the Escalator Clause Addendum promised Forti $950,000 in Net Proceeds, the Escalator Clause Addendum precluded any deduction from $950,000 in Net Proceeds of a

10

commission for Miller. Judge Wright did not deal with the issue of mistake and neither did the Court of Appeals.

Masson, Agulia, and Hardie badly injured Forti economically, and they did so deliberately with evil motive, with malice, and with willful disregard for Forti's rights. As a result of the litigation, Forti was left with NET PROCEEDS of $921,500. No reasonable seller would select an offer worth $921,500 in NET PROCEEDS when she had an offer for $945,000 in NET PROCEEDS, and Forti is a reasonable seller.

Forti did not raise the issue of conspiracy or collusion in Superior Court, and Judge Wright's order did not deal with conspiracy or collusion. All Judge Wright's Order did was grant summary judgment to Miller on the commission and dismiss Forti's claims against Chong and Zanforlin for breach of contract and compensatory and consequential damages.

Since Miller was barred by D.C. Code and District of Columbia case law from receiving a commission, it was illegal for Masson to sue Forti for a commission for Miller and to seek attorney's fees in connection with that suit. Masson and Hamilton and Hamilton are the ones who have egregiously violated Rule 11—not Forti .

Since Masson, Agulia and Hardie no legal basis for claiming attorney's fees, Forti accurately described Masson, Agulia, and Hardie's action in placing a lien on Forti's undeveloped land in Maryland as a further demonstration of malice toward Forti.

Forti's Amended Complaint and Amended Motion for Summary Judgment are well-grounded in fact and law. Defendant attorneys have raised no legitimate bases for sanctions under Rule 11 or 28 U.S.C. 1927.

11

Respectfully submitted,

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served George Masson, Jr. with a copy of this Opposition to the Motion for Sanctions by first-class mail, postage prepaid on September 20, 2006.

Carol A. Forti

12