UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. FORTI,
14 West Chapman Street
Alexandria, VA 22301
703.535.5449
        Plaintiff

v.

Civil Action No. 1:06CV00613 JR

GEORGE MASSON, JR. (COUNSEL TO
   W.C. & A.N. MILLER)
Hamilton and Hamilton LLP
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
        Defendant


HAMILTON AND HAMILTON LLP (COUNSEL TO
   W.C. & A.N. MILLER)
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
        Defendant,

RICHARD AGULIA
(COUNSEL TO CHONG AND ZANFORLIN)
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
        Defendant,

JEFFREY HARDIE
(COUNSEL TO CHONG AND ZANFORLIN)
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
        Defendant,

NATHAN FINKELSTEIN
(SETTLEMENT ATTORNEY)
Finkelstein & Horvitz, P.C.
7315 Wisconsin Avenue
Suite 400 East
Bethesda, MD 20814
        Defendant,

RECEIVED
SEP 20 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FINKELSTEIN & HORVITZ, P.C.**
**(SETTLEMENT ATTORNEYS)**
7315 Wisconsin Ave., N.W.
Suite 400 East
Bethesda, MD 20814
        Defendant.

## OPPPOSITION TO THE MOTION FOR SANCTIONS BY NATHAN FINKELSTEIN AND FINKELSTEIN AND HORVITZ P.C.

Nathan Finkelstein and Finkelstein & Horvitz failed to file opposition to Forti's Amended Motion for Summary Judgment, because they cannot dispute the material facts listed therein and they have no countervailing arguments of law. They have no valid defenses to Forti's Amended Complaint and Amended Motion for Summary Judgment. They cannot defend on the basis of decisions made by Superior Court or the Court of Appeals (even after grossly misrepresenting those decisions), because they were not parties to the action in Superior Court and are not in privity with those parties. Second, the issues to be decided by the District Court are not the same issues decided by Superior Court and the Court of Appeals. Therefore, Finkelstein and Finkelstein & Horvitz cannot defend on the basis of collateral estoppel or issue preclusion. Furthermore, Forti's Complaint was filed well within the Statute of Limitations. On 07/25/05, George Masson demanded attorney's fees in the amount of $84,340.71 for his legal work in Superior Court and the Court of Appeals. On the same date, Richard Agulia demanded attorney's fees in the amount of $73,773.93 for the legal services of Agulia and Hardie in Superior Court and the Court of Appeals. Forti paid those attorney's fees on 07/25/05 to remove a lien placed on her retirement property in Maryland by Masson and Agulia and to prevent the property from being sold at auction. Forti's Complaint was filed on 04/03/06. Thus,

2

Forti's Complaint against the defendant attorneys is well within the three-year Statute of Limitations.

Forti has raised for the first time in District Court causes of action against George Masson, Jr., Hamilton and Hamilton, Richard Agulia, Jeffrey Hardie, Nathan Finkelstein, and Finkelstein & Horvitz for furthering and participating in civil fraud, conspiracy to commit civil fraud, and for intentional infliction of severe emotional distress. She sues Masson, Hamilton and Hamilton, Agulia, and Hardie for the intentional tort of abuse of process. Contrary to Finkelstein's claims, the issues to be decided by the District Court are entirely different from the issues decided by Superior Court and the Court of Appeals.

According to their motion, "Miller brought suit against Forti to recover the $28,500 commission that Forti was contractually obligated to pay." The latter half of this statement is a deliberate misrepresentation of the facts. Forti had no obligation, contractual or otherwise, to pay Miller a commission. It is well-settled by the Supreme Court and Court of Appeals for the District of Columbia Circuit that advertisements are solicitations to make offers or invitations to bid. They are not offers. Forti's advertisement in the <u>Washington Post</u> for the sale of her home was a solicitation to make an offer—not an offer itself. June Humbert, an experienced agent for Miller, recognized that the ad was an invitation to bid or solicitation to make an offer, and she prepared a Purchase Offer for Chong and Zanforlin and presented it to Forti. Since the ad was a solicitation to make an offer and not an offer itself, it could not be an offer for a unilateral contract. Judge Wright's conclusion that Forti's ad was an offer for a unilateral contract

3

that was satisfied by Humbert's procurement of buyers was wrong on the law. Furthermore, Judge Wright's conclusion has no bearing on Forti's causes of action against Finkelstein and Finkelstein & Horvitz. The Court of Appeals did not address the question as whether Forti's ad was an invitation to make an offer or an offer for a unilateral contract. The Court of Appeals merely affirmed Judge Wright's order granting summary judgment to Miller for a commission and affirmed Judge Wright's dismissal of Forti's claims against Chong and Zanforlin for breach of contract and compensatory and consequential damages.

It is also well-settled that Miller was barred from receiving a commission by D.C. Code section 42-1705, Eggleton v. Vaughan, 45 A.2d 362, 363 (D.C. App. 1946), and Fred Ezra Co. v. Pedas, 682 A.2d 173, 176 (D.C. App. 1996). Since Forti did not sign an employment contract with Miller or enter into a principal/agent relationship with Miller or sign an agreement with Miller promising to pay a commission to Miller for procuring buyers, Forti did not owe Miller a commission. In fact, Miller was barred by law from receiving a commission. Judge Wright's decision to grant summary judgment to Miller for a commission and to dismiss Forti's claims against Chong and Zanforlin for compensatory and consequential damages did not address the applicable case law nor was the case law addressed by the Court of Appeals.

Forti's claim that Finkelstein played a key role in injuring Forti by drawing up a HUD Settlement Sheet giving a commission to Miller although Millar was barred from receiving a commission by D.C. Code and District of Columbia case is not "baseless," as the motion contends, but perfectly justified. Forti had hired Finkelstein to serve as her

4

settlement attorney. He owed Forti a fiduciary responsibility. Forti told Finkelstein two weeks prior to settlement that she did not owe Miller a commission and that the HUD Settlement Sheet should reflect that fact. She also left him a message directing him to fax the HUD Settlement Sheet to her at least five days in advance of settlement. Finkelstein did not return either of Forti's calls. He blatantly ignored both of these instructions. Finkelstein did not fax the HUD Settlement Sheet to Forti in advance of settlement as she had requested, because Finkelstein and Humbert did not want Forti to see that the HUD Settlement Sheet deducted a commission for Miller. Finkelstein also informed Humbert that there was an Assignment of Proceeds on the sale of Forti's property. Finkelstein and Humbert obviously believed that the Assignment of Proceeds would provide excellent leverage to force Forti to pay a commission to Miller that she did not owe. Furthermore, Finkelstein held himself out as qualified to handle settlements in the District of Columbia. He knew or had a duty to know that District of Columbia case law barred receipt of a commission without proof of a written employment contract or a principal/agent relationship and written agreement promising to pay a commission for procuring buyers. He knew that Forti had not signed an employment contract with Miller and had not entered into a principal/agent relationship with Miller or signed an agreement promising to pay a commission for procuring buyers. Nevertheless, he allied himself with Humbert against Forti by drawing up a HUD Settlement Sheet that deducted a 3 percent commission for Miller.

Finkelstein takes issue with Forti's causes of action against Finkelstein and Finkelstein & Horvitz for furthering and participating in civil fraud and conspiracy to

commit civil fraud. However, the District of Columbia recognizes civil fraud and conspiracy to commit civil fraud. The elements of common law fraud are (1) false representation (2) of a material fact (3) which is made with knowledge of its falsity (4) with intent to deceive (5) on which the victim took justified reliance upon the misrepresentation. Bennet v. Kiggins, 377 A. 2d 57, 59 (D.C. App.1977) cert denied 434 U.S. 1034, 98 S.Ct 768, 54 L Ed 2d 782 (1978) Humbert, Chong, and Zanforlin made false representation of a material fact that Chong and Zanforlin would pay $950,000 in Net Proceeds for title to Forti's property with knowledge of its falsity and with intent to deceive. Although the Purchase Offer/Contract was signed on April 15, 2002, Humbert, Chong, and Zanforlin did not disclose to Forti that they were treating the $950,000 as Sales Price from which a commission could be deducted until April 29, 2002, the date of settlement. Forti took justifiable reliance upon the misrepresentation, which resulted in substantial financial injury to Forti. "Non-disclosure or silence as well as active misrepresentation may constitute fraud." Bennett v. Kiggins, supra at 60. "A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." Rothenberg v. Aero Mayflower Transit Co., 495 F. Supp 399, 406 (D.D.C. 1980). These facts contain all the elements of civil fraud. Richard Agulia, Jeffrey Hardie, George Masson, Jr,, and Nathan Finkelstein, who represented Chong and Zanforlin at settlement, all knew that civil fraud had been perpetrated against Forti by their clients. They all knew that Forti had selected the ChongZanforlin Offer over the next highest Offer for $945,000 in net proceeds only because it offered $950,000 in net proceeds. They ignored the unambiguous terms of the

Escalator Clause Addendum of the Chong/Zanforlin Purchase Offer/Contract, which can only be interpreted as offering Forti $950,000 in Net Proceeds. They furthered that fraud by treating the $950,000 as "Sales Price" from which a commission could be deducted. They furthered that fraud by ignoring all the facts and the case law which prove that Forti did not owe Miller a commission. Civil conspiracy requires an (1) agreement between two or more persons (2) to participate in an unlawful act (3) an injury caused by an unlawful act performed by one of the parties to the agreement (4) which overt act was done pursuant to and in furtherance of the common scheme. Halbertstam v. Welch, 705 F. 2d 472, 479 (D.C. Cir 1983). Finkelstein conspired with Humbert, Chong, and Zanforlin to defraud Forti of the $950,000 in Net Proceeds that she was due at settlement on April 29, 2002 under the Chong/Zanforlin contract. Finkelstein drew up a HUD Settlement Sheet that provided a commission for Miller of $28,500. Finkelstein and Humbert used the Assignment of Proceeds on the sale of Forti's property as leverage to force Forti to pay a commission to Miller. Since Forti refused to be forced to pay a commission to Miller that she did not owe, she was deprived of the proceeds by which she planned to pay the balance that she owed on the townhouse on which she was going to settlement that same day. Forti spent eight frantic days trying to obtain alternative funding for the townhouse but no mortgage company could provide funding in such a short period of time. She almost lost the townhouse. Forti was forced to agree to escrow the disputed funds, because she had not anticipated fraud and had not arranged alternative funding for the townhouse. Finkelstein conspired with Humbert, Chong, and Zanforlin to benefit Miller and injure Forti. For all the foregoing conduct, Forti sues Finkelstein for

7

intentional infliction of severe emotional distress.

Finkelstein does not contest Forti's claim that Finkelstein "drew up the HUD Settlement Sheet and provided for a commission for Miller with the clear intent of forcing Forti to pay a commission that she did not owe." What draws Finkelstein's ire is Forti's statement that "apparently, Finkelstein was willing to harm Forti financially for the opportunity to obtain further settlement business from Miller" and the statement in the Amended Complaint that "it seems likely that Humbert offered Finkelstein further settlement business if he would draw up the HUD Settlement Sheet to provide Miller with a commission and followed through on that quid pro quo." Both of Forti's statements are qualified, and they seem to be very reasonable inferences to draw from the fact that Masson adamantly refused to comply with subpoenas duces tecum for information regarding any settlement business between Miller and Finkelstein following Finkelstein's action on behalf of Miller in the settlement proceeding between Forti and Chong/Zanforlin.

The motion alleges that Forti's Amended Complaint is a "bad faith attempt to relitigate the same facts and issues that were fully adjudicated by the District of Columbia Courts." This allegation could not be further from the truth. Forti's causes of action against the defendant attorneys are raised for the first time in District Court and they are completely different from the causes of action in Superior Court.

In her Amended Complaint, Forti states that the defendant attorneys took advantage of a mistake (known to both parties) when seller Forti wrote in $950,000 next to NEW SALES PRICE on the printed form of the Escalator Clause Addendum but did

8

not cross out NEW SALES PRICES and write in NET PROCEEDS in its place. Finkelstein falsely states that this claim was rejected by Judge Wright in the Superior Court case. Judge Wright did not deal with the issue of mistake and neither did the Court of Appeals. Forti's claim is well-founded. It is undisputed fact that the next highest Purchase Offer was for $945,000 in Net Proceeds. Mr. Silas was acting as a principal. It is undisputed fact that the Escalator Clause Addendum offered Forti $5,000 in net proceeds above the net proceeds of the next highest offer. Since the next highest purchase offer was for $945,000 in NET PROCEEDS, the Escalator Clause Addendum automatically raised the Chong/Zanforlin Purchase Offer from $915,000 to $950,000 in NET PROCEEDS. Adding $5,000 in Net Proceeds to $945,000 in Net Proceeds was the basis for Forti writing in $950,000 on the page of the Purchase Offer containing the Escalator Clause Addendum, referring obviously to Net Proceeds. It is, therefore, perfectly accurate for Forti to say that defendant attorneys took advantage of a mistake (known to both parties) after seller Forti wrote in $950,000 next to NEW SALES PRICE on the printed form of the Purchase Offer/Contract but did not cross out NEW SALES PRICE and write in NET PROCEEDS. The defendant attorneys treated the $950,000 as "Sales Price" from which a commission could be deducted. Since the Escalator Clause Addendum promised Forti $950,000 in Net Proceeds, the Escalator Clause Addendum precluded any deduction from $950,000 in Net Proceeds of a commission for Miller.

Forti wishes to clarify that the removal of Forti's most significant pleadings from the File Room in the Civil Action Branch of Superior Court is attributable to Richard Agulia, Jeffrey Hardie, and George Masson. Forti does not contend that Nathan

9

Finkelstein or Finkelstein & Horovitz took part in this highly illegal operation.

Forti has reviewed the issue concerning affidavits and has revised her language to state as follows. Agulia and Hardie conspired with Masson against Forti, most conspicuously in their Motions for Summary Judgment. In support of Miller's motion for summary judgment, Masson filed a perjured affidavit by Humbert, who claimed that Forti had refused to escrow the disputed commission when, in fact, it was Chong and Zanforlin who prevented settlement by refusing to pay Forti the $950,000 in Net Proceeds that they promised her in their Purchase Offer/Contract and by refusing to escrow the disputed funds. Humbert also lied in saying that she did not persuade Chong and Zanforlin to breach their contract a second time on April 29, 2002 by refusing to escrow the disputed funds so that settlement could proceed, although that is precisely what she did. Agulia and Hardie filed perjured affidavits signed by Chong and Zanforlin with Superior Court in support of their motion for summary judgment. The affidavit by Zanforlin claimed that Forti had refused to put the disputed commission into an escrow account, which was utterly false. Zanforlin also misrepresented the contract price as $950,000 when it was actually $950,000 in Net Proceeds. She also lied in claiming that she did not conspire with attorney Finkelstein and Humbert to extort a commission for Miller, when that is exactly what she did. The affidavit by Chong also misrepresented that the contract price was $950,000 when, in fact, it was $950,000 in Net Proceeds. Agulia and Hardie also filed with Superior Court an affidavit by Esther Finkelstein that was prepared by Nathan Finkelstein. In that affidavit, Esther Finkelstein misrepresented Forti's telephone call to her. In that call, Forti told Esther Finkelstein to advise Nathan Finkelstein that she (Forti)

10

did not owe a commission to Miller and that the HUD Settlement Sheet should reflect that fact. Esther Finkelstein, who was not even present at the settlement proceedings itself and had no personal knowledge of what took place at settlement, also swore, "At no time do I recall Ms. Forti suggesting that the disputed commission be placed in escrow to facilitate the closing." The fact is that after the buyers refused to tender Forti the $950,000 in Net Proceeds that they owed her under the contract, Forti reluctantly agreed to escrow the disputed amount so that settlement could proceed. There is no question that the affidavits by Humbert, Zanforlin, and Esther Finkelstein contained false statements because Chong and Zanforlin, who had filed affidavits containing false statements with the trial court, subsequently admitted in another pleading that it was "Humbert who disagreed with placing the disputed commission into an escrow account and that Chong and Zanforlin also disagreed with placing the disputed commission into an escrow account." See Exhibit C to Forti's Second Amended Motion for Summary Judgment for support for these statements and the admission by Chong and Zanforlin.

Finkelstein and Finkelstein & Horvitz have grossly misrepresented the facts regarding Forti v. Ashcraft & Gerel. There were no sanctions of Forti in that case by the trial court or the Court of Appeals.

Nathan Finkelstein and Finkelstein & Horwitz are liable to Forti for furthering and participating in civil fraud, conspiracy to commit civil fraud, and for the intentional infliction of severe emotional distress. They committed these torts with malice and a willful disregard for Forti's rights, which makes them liable to Forti for punitive damages.

11

With the corrections noted, Forti's Amended Complaint and Amended Motion for Summary Judgment are well-grounded in fact and law. Defendant attorneys have raised no legitimate bases for sanctions under Rule 11 or 28 U.S.C. 1927.

Respectfully submitted,

*/s/ Carol A. Forti*

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I served Nathan Finkelstein with a copy of this Opposition to the Motion for Sanctions by first-class mail, postage prepaid on September 20, 2006.

*/s/ Carol A. Forti*