UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CAROL A. FORTI,**
14 West Chapman Street
Alexandria, VA 22301
703.535.5449
        Plaintiff

     v.

Civil Action No. 1:06CV00613
JR

**GEORGE MASSON, JR. (COUNSEL TO**
   **W.C. & A.N. MILLER)**
Hamilton and Hamilton LLP
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
       Defendant


**HAMILTON AND HAMILTON LLP (COUNSEL TO**
   **W.C. & A.N. MILLER)**
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
       Defendant,


**RICHARD AGULIA**
**(COUNSEL TO CHONG AND ZANFORLIN)**
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
       Defendant,

**JEFFREY HARDIE**
**(COUNSEL TO CHONG AND ZANFORLIN)**
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
       Defendant,


**NATHAN FINKELSTEIN**
**(SETTLEMENT ATTORNEY)**
Finkelstein & Horvitz, P.C.
7315 Wisconsin Avenue
Suite 400 East
Bethesda, MD 20814
       Defendant,

RECEIVED

SEP 2 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FINKELSTEIN & HORVITZ, P.C.**
**(SETTLEMENT ATTORNEYS)**
7315 Wisconsin Ave., N.W.
Suite 400 East
Bethesda, MD 20814
            Defendant.

## OPPPOSITION TO THE MOTION FOR SANCTIONS BY RICHARD AGULIA AND JEFFREY HARDIE

Richard Agulia and Jeffrey Hardie failed to file opposition to Forti's Amended

Motion for Summary Judgment, because they cannot dispute the material facts listed

therein and they have no countervailing arguments of law. They have no valid defenses to

the Amended Complaint or Amended Motion for Summary Judgment. They cannot

defend on the basis of decisions made by Superior Court or the Court of Appeals (even

after grossly misrepresenting those decisions), because they were not parties to the action

in Superior Court and are not in privity with those parties. Second, the issues to be

decided by the District Court are not the same issues decided by Superior Court and the

Court of Appeals. Therefore, Agulia and Hardie cannot defend on the basis of collateral

estoppel or issue preclusion. Furthermore, Forti's Complaint was filed well within the

Statute of Limitations. On 07/25/05, George Masson demanded attorney's fees in the

amount of $84,340.71 for his legal work in Superior Court and the Court of Appeals. On

the same date, Richard Agulia demanded attorney's fees in the amount of $73,773.93 for

the legal services of Agulia and Hardie in Superior Court and the Court of Appeals. Forti

paid those attorney's fees on 07/25/05 to remove a lien placed on her retirement property

in Maryland by Masson and Agulia and to prevent the property from being sold at

auction. Forti's Complaint was filed on 04/03/06. Thus, Forti's Complaint against the

2

defendant attorneys is well within the three-year Statute of Limitations.

Forti has raised for the first time in District Court causes of action against George Masson, Jr., Hamilton and Hamilton, Richard Agulia, Jeffrey Hardie, Nathan Finkelstein, and Finkelstein & Horvitz for furthering and participating in civil fraud, conspiracy to commit civil fraud, and for intentional infliction of severe emotional distress. She sues Masson, Hamilton and Hamilton, Agulia, and Hardie for the intentional tort of abuse of process. Contrary to the allegations of Agulia and Hardie, the issues to be decided by the District Court are entirely different from the issues decided by Superior Court and the Court of Appeals.

Agulia and Hardie's motion for sanctions is merely a regurgitation of allegations and purported arguments that have already been discredited by Forti .

According to their motion, "Judge Melvin Wright granted summary judgment for Chong and Zanforlin on Forti's breach of contract and conspiracy claims...." First of all, Judge Wright granted summary judgment to Miller for a commission and dismissed Forti's claims against Chong and Zanforlin for breach of contract and compensatory and consequential damages. Contrary to Agulia and Hardie's allegations, Forti raised no conspiracy claims in Superior Court, so Judge Wright did not address any conspiracy claims.

In contrast to the contention by Agulia and Hardie, Forti is entitled to the amount in escrow, including the disputed commission because the advertisement for the sale of her home was an invitation to bid, not an offer, and Miller was barred from receipt of a commission by D.C. Code and District of Columbia case law.  It is well-settled by the

3

Supreme Court and Court of Appeals for the District of Columbia Circuit that advertisements are solicitations to make offers or invitations to bid. Advertisements are not offers. Thus, Forti's advertisement in the Washington Post for the sale of her home was a solicitation to make an offer—not an offer itself. June Humbert, an experienced agent for Miller, recognized that the ad was an invitation to bid or solicitation to make an offer, and she prepared a Purchase Offer for Chong and Zanforlin and presented it to Forti. Since the ad was a solicitation to make an offer and not an offer itself, it could not be an offer for a unilateral contract. Judge Wright's conclusion that Forti's ad was an offer for a unilateral contract that was satisfied by Humbert's procurement of buyers was wrong on the law. Furthermore, Judge Wright's conclusion has no bearing on Forti's causes of action against Richard Agulia and Jeffrey Hardie. The Court of Appeals did not address the question as whether Forti's ad was an invitation to make an offer or an offer for a unilateral contract. The Court of Appeals merely affirmed Judge Wright's order granting summary judgment to Miller for a commission and affirmed Judge Wright's dismissal of Forti's claims against Chong and Zanforlin for breach of contract and compensatory and consequential damages.

It is also well-settled that Miller was barred from receiving a commission by D.C. Code section 42-1705, Eggleton v. Vaughan, 45 A.2d 362, 363 (D.C. App. 1946), and Fred Ezra Co. v. Pedas, 682 A.2d 173, 176 (D.C. App. 1996). Since Forti did not sign an employment contract with Miller or enter into a principal/agent relationship with Miller or sign an agreement with Miller promising to pay a commission to Miller for procuring buyers, Miller was barred from receiving a commission. Judge Wright's decision to grant

4

summary judgment to Miller for a commission and to dismiss Forti's claims against Chong and Zanforlin for compensatory and consequential damages did not address the applicable case law nor was the case law addressed by the Court of Appeals.

According to Agulia and Hardie, an attorney cannot be subject to a conspiracy allegation when his conduct falls within the scope of the representation. Agulia and Hardie did not merely advise. They knew of their clients' wrongful conduct and they actively participated in that wrongful conduct. The District of Columbia recognizes civil fraud and conspiracy to commit civil fraud. The elements of common law fraud are (1) false representation (2) of a material fact (3) which is made with knowledge of its falsity (4) with intent to deceive (5) on which the victim took justified reliance upon the misrepresentation. Bennet v. Kiggins, 377 A. 2d 57, 59 (D.C. App.1977) cert denied 434 U.S. 1034, 98 S.Ct 768, 54 L Ed 2d 782  (1978) Humbert, Chong, and Zanforlin made false representation of a material fact that Chong and Zanforlin would pay $950,000 in Net Proceeds for title to Forti's property with knowledge of its falsity and with intent to deceive. Although the Purchase Offer/Contract was signed on April 15, 2002, Humbert, Chong, and Zanforlin did not disclose to Forti that they were treating the $950,000 as Sales Price from which a commission could be deducted until April 29, 2002, the date of settlement. Forti took justifiable reliance upon the misrepresentation, which resulted in substantial financial injury to Forti. "Non-disclosure or silence as well as active misrepresentation may constitute fraud." Bennett v. Kiggins, supra at 60. "A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." Rothenberg v. Aero Mayflower

5

Transit Co., 495 F. Supp 399, 406 (D.D.C. 1980). These facts contain all the elements of

civil fraud. Richard Agulia, Jeffrey Hardie, George Masson, Jr., , and Nathan Finkelstein

all knew that civil fraud had been perpetrated against Forti by their clients. They all knew

that Forti had selected the ChongZanforlin Offer over the next highest Offer for $945,000

in net proceeds only because it offered $950,000 in net proceeds. They ignored the

unambiguous terms of the Escalator Clause Addendum of the Chong/Zanforlin Purchase

Offer/Contract, which can only be interpreted as offering Forti $950,000 in Net Proceeds.

They furthered that fraud by treating the $950,000 as "Sales Price" from which a

commission could be deducted. They furthered that fraud by ignoring all the facts and the

case law which prove that Forti did not owe Miller a commission. Civil conspiracy

requires an (1) agreement between two or more persons (2) to participate in an unlawful

act (3) an injury caused by an unlawful act performed by one of the parties to the

agreement (4) which overt act was done pursuant to and in furtherance of the common

scheme. Halbertstam v. Welch, 705 F. 2d 472, 479 (D.C. Cir 1983). Richard Agulia,

Jeffrey Hardie, George Masson Jr., and Hamilton and Hanilton conspired with each other

against Forti and furthered that civil fraud by litigating a colorless, wanton suit against

Forti to defraud her of $29, 850.70 in the escrow account. They litigated wantonly and

maliciously against Forti for nearly three years in order to defraud her of the $29, 850.70

in the escrow account, and they succeeded in defrauding her of that amount. They forced

Forti to pay a commission to Miller that she did not owe. Their common actions in

conspiring against Forti and in litigating wantonly and maliciously against Forti for three

years to defraud her of the amount in escrow showed that there was an agreement among

6

these defendants to act unlawfully and their overt tortious acts caused severe financial injury to Forti. These facts satisfy all the elements of conspiracy to commit civil fraud.

Agulia and Hardie claim that Forti has offered no proof that Forti's most significant pleadings were removed from the File Room in the Civil Action Branch of Superior Court. This allegation is blatantly false. See Exhibit D to Forti's Second Amended Motion for Summary Judgment. At the time that this case was being heard in Superior Court, there was no security for pleadings filed with Superior Court. Illegally removed from the File Room in the Civil Action Branch of Superior Court were Forti's Opposition to Miller's Motion for Summary Judgment; Forti's Opposition to Chong and Zanforlin's Motion for Summary Judgment; Forti's Rebuttal of Miller's Points and Authorities; Forti's Rebuttal of Chong and Zanforlin's Points and Authorities; Forti's Renewed Motion for Summary Judgment, and subpoenas duces tecum addressed to Miller and Humbert, which called for information on any settlement business that Miller provided to Finkelstein following the settlement transaction between Forti and Chong/Zanforlin. The pleadings filed in Superior Court are the pleadings used to prepare the Record on Appeal. The docket sheet prepared by the Civil Action Branch of Superior Court records the filing of each of the specified pleadings by Forti and the date on which she filed the pleading. Forti asks Judge Robertson to compare the docket sheet with the INDEX/CLERK'S CERTIFICATION prepared by the Appeal Coordinator's Office as part of the Record on Appeal. Each of the specified pleadings is conspicuously missing from the INDEX/CLERK'S CERTIFICATION. Obviously, these pleadings were removed from the File Room of the Civil Action Branch sometime after they were filed

7

by Forti and before the Appeal Coordinator's Office prepared the

INDEX/CERTIFICATION for the Court of Appeals. Since no one but Masson, Agulia,

and Hardie had a motive to remove these pleadings and there is no other reasonable

explanation for their disappearance, these facts lead to the inevitable conclusion that

these pleadings were removed by the named attorneys.  Theft by these attorneys of

Forti's most important pleadings caused the Court of Appeals to reach an erroneous

decision. The decision in the Court of Appeals was procured by fraud upon the court.

Although Forti attempted to bring to the attention of the Court of Appeals the fact that her

most important pleadings had been removed illegally from the File Room of the Civil

Action Branch before the record on appeal was sent to the Court of Appeals, the Court of

Appeals never dealt with the theft issue and affirmed the lower court decision based on a

grossly incomplete record.

Agulia and Hardie also contend that Forti offered no proof that the defendant

attorneys submitted sworn affidavits to Superior Court that contained many false

statements. The facts prove otherwise.  <u>See</u> Exhibit C to Forti's Second Amended Motion

for Summary Judgment. Agulia and Hardie conspired with Masson against Forti, most

conspicuously in their Motions for Summary Judgment. In support of Miller's motion for

summary judgment, Masson filed a perjured affidavit by Humbert, who claimed that Forti

had refused to escrow the disputed commission when, in fact, it was Chong and Zanforlin

who prevented settlement by refusing to pay Forti the $950,000 in Net Proceeds that they

promised her in their Purchase Offer/Contract and by refusing to escrow the disputed

funds. Humbert also lied in saying that she did not persuade Chong and Zanforlin to

breach their contract a second time on April 29, 2002 by refusing to escrow the disputed

funds so that settlement could proceed, although that is precisely what she did. Agulia

and Hardie filed perjured affidavits signed by Chong and Zanforlin with Superior Court

in support of their motion for summary judgment. The affidavit by Zanforlin claimed that

Forti had refused to put the disputed commission into an escrow account, which was

utterly false. Zanforlin also misrepresented the contract price as $950,000 when it was

actually $950,000 in Net Proceeds. She also lied in claiming that she did not conspire

with attorney Finkelstein and Humbert to extort a commission for Miller, when that is

exactly what she did. The affidavit by Chong also misrepresented that the contract price

was $950,000 when, in fact, it was $950,000 in Net Proceeds. Agulia and Hardie also

filed with Superior Court an affidavit by Esther Finkelstein that was prepared by Nathan

Finkelstein. In that affidavit, Esther Finkelstein misrepresented Forti's telephone call to

her. In that call, Forti told Esther Finkelstein to advise Nathan Finkelstein that she (Forti)

did not owe a commission to Miller and that the HUD Settlement Sheet should reflect

that fact. Esther Finkelstein, who was not even present at the settlement proceedings itself

and had no personal knowledge of what took place at settlement, also swore, "At no time

do I recall Ms. Forti suggesting that the disputed commission be placed in escrow to

facilitate the closing." The fact is that after the buyers refused to tender Forti the

$950,000 in Net Proceeds that they owed her under the contract, Forti reluctantly agreed

to escrow the disputed amount so that settlement could proceed. There is no question that

the affidavits by Humbert, Zanforlin, and Esther Finkelstein contained false statements

because Chong and Zanforlin, who had filed affidavits containing false statements with

9

the trial court, subsequently admitted in another pleading that it was "Humbert who disagreed with placing the disputed commission into an escrow account and that Chong and Zanforlin also disagreed with placing the disputed commission into an escrow account."

Agulia and Hardie have vivid imaginations but highly defective memories. At no time did Forti "pose as an undercover agent for the Department of Justice." Nor did Forti ever say to Agulia and Hardie that if she did not get her way, she would engage in litigation that would be lengthy and costly."

Agulia and Hardie again attempt to challenge the bona fide nature of the next highest Purchase Offer. It is, however, undisputed fact that Humbert reviewed the Purchase Offer for $945,000 in Net Proceeds in Forti's kitchen and went through the Purchase Offer page by page in Forti's presence. She also reviewed the earnest money check for $45,000 that accompanied the Purchase Offer. Forti offered to have the Purchase Offer and earnest money check xeroxed for Humbert, but Humbert said that was not necessary, because she was satisfied that the other Purchase Offer was bona fide. Only after Forti had refused to pay Miller a 3 percent commission at settlement on April 29, 2002 did Agulia and Hardie challenge the bona fide nature of the other Purchase Offer. After selecting the Chong/Zanforlin Purchase Offer over the next highest Purchase Offer, Forti put the other Purhase Offer and earnest money check in an envelope and gave it to the desk clerk at the Marriott Wardman Park Hotel for return to Mr. Silas. At discovery, six months after the actual events, Forti's best recollection of the name of the man who made the other Purchase Offer was J.W. Silas, but it could have been J.W.

10

Seilas or Sailas. As the buyer/broker for Chong and Zanforlin, it was Humbert's
responsibility to make sure that the other purchase offer was <u>bona fide</u> at the time the
Offer was made, and she determined that it was <u>bona fide</u>. If Humbert had accepted
Forti's offer to have the other Purchase Offer xeroxed at the time that offer was made,
Agulia and Hardie would not be able to raise questions about the other purchase offer
based on a possible misspelling of the name.

There is no question that the other purchase offer was for $945,000 in Net
Proceeds. Mr. Silas was acting as a principal. No real estate agent was involved in that
Offer. It is undisputed fact that the Escalator Clause Addendum offered Forti $5,000 in
net proceeds above the net proceeds of the next highest offer. Since the next highest
purchase offer was for $945,000 in NET PROCEEDS, the Escalator Clause Addendum
automatically raised the Chong/Zanforlin Purchase Offer from $915,000 to $950,000 in
NET PROCEEDS. Adding $5,000 in Net Proceeds to $945,000 in Net Proceeds was the
basis for Forti writing in $950,000 on the page of the Purchase Offer containing the
Escalator Clause Addendum, referring obviously to Net Proceeds. It is, therefore,
perfectly accurate for Forti to say that defendant attorneys took advantage of a mistake
(known to both parties) after seller Forti wrote in $950,000 next to NEW SALES PRICE
on the printed form of the Escalator Clause Addendum of the Purchase Offer/Contract
but did not cross out NEW SALES PRICE and write in NET PROCEEDS. Agulia and
Hardie treated the $950,000 as "Sales Price" from which a commission could be
deducted, so that Chong and Zanforlin would not have to pay Miller a commission. The
failure by Humbert, Chong, and Zanforlin to acknowledge Forti's simple mistake was

11

intentional misrepresentation. The insistence by Masson, Agulia, and Hardie that the $950,000 represented Sales Price from which a commission could be deducted was intentional misrepresentation to the court. .Since the Escalator Clause Addendum promised Forti $950,000 in Net Proceeds, the Escalator Clause Addendum precluded any deduction from $950,000 in Net Proceeds of a commission for Miller. Judge Wright did not deal with the issue of mistake and neither did the Court of Appeals.

The defendant attorneys badly injured Forti financially, and they did so deliberately with evil motive, with malice and with willful disregard for Forti's rights. As a result of the litigation, Forti was left with $920,149.30. No reasonable seller would select an Offer worth that amount of money when she had an offer for $945,000 in Net Proceeds, and Forti is a reasonable seller.

Although Forti may not be able to state a cause of action against Agulia and Hardie for malicious prosecution, she is on very firm ground in stating an action for the intentional tort of abuse of process. In fact, the very cases cited by Agulia and Hardie support that cause of action. According to Brown v. Hamilton, 601 A. 2d 1074, 1079 (D.C. App 1992), the tort of abuse of process lies when the legal system "has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be required to so." By means of litigation, Forti was compelled to pay Miller a commission even though Miller was barred from receiving a commission by D.C. Code and case law by the District of Columbia Court of Appeals. The language of Williams v. City Stores Co., 192 A.2d 534,537 is virtually identical. "To charge an abuse of process,

12

there must be perversion of court processes to accomplish some end which the process was not intended by law to achieve, or which compels the party against whom it has been used to do some collateral thing which he could not legally be compelled to do." Forti did not legally owe Miller a commission, but court process was used to force Forti to pay Miller a commission.

Contrary to assertions by Agulia and Hardie, attorneys are liable for the intentional tort of abuse of process. The privilege an attorney has for his actions in representing a client is a qualified one that does not extend to the intentional tort of abuse of process. McElhanon v. Hing, 728 P.2d 256, 264 (Ariz. App 1985) cert denied 481 U.S. 1030, 107 S.Ct 1956, 95 L. Ed 2d 529 (1987). Since Agulia and Hardie committed this intentional tort with fraud, malice, and a willful disregard for Forti's rights, they are also liable to Forti for punitive damages.

Agulia and Hardie had no legal basis for seeking attorney's fees for their representation of Chong and Zanforlin. The duty of Chong and Zanforlin under the Contract with Forti was to pay Forti $950,000 in Net Proceeds on April 29, 2002, which they did not do. Instead, they breached the Contract. Thus, it is accurate for Forti to say that Agulia and Hardie compounded their malice toward Forti by seeking attorney's fees and by initiating the process for a sheriff's sale on Forti's retirement property in Maryland

Forti's Amended Complaint and Amended Motion for Summary Judgment are well-grounded in fact and law. Defendant attorneys have raised no legitimate bases for sanctions under Rule 11 or 28 U.S.C. 1927.

13

Respectfully submitted,

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that I served Richard Agulia and Jeffrey Hardie with a copy of this Opposition to their Motion for Sanctions first-class mail, postage prepaid on September 20, 2006.

Carol A. Forti

14