UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. FORTI,
14 West Chapman Street
Alexandria, VA 22301
703.535.5449
    Plaintiff

v.

Civil Action No. 1:06CV00613 JR

GEORGE MASSON, JR. (COUNSEL TO
  W.C. & A.N. MILLER)
Hamilton and Hamilton LLP
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
    Defendant


HAMILTON AND HAMILTON LLP (COUNSEL TO
  W.C. & A.N. MILLER)
1900 M Street, N.W.—Suite 410
Washington, D.C. 20036-3532
    Defendant,

RICHARD AGULIA
(COUNSEL TO CHONG AND ZANFORLIN)
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006
    Defendant,

JEFFREY HARDIE
(COUNSEL TO CHONG AND ZANFORLIN)
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
    Defendant,

NATHAN FINKELSTEIN
(SETTLEMENT ATTORNEY)
Finkelstein & Horvitz, P.C.
7315 Wisconsin Avenue
Suite 400 East
Bethesda, MD 20814
    Defendant,

RECEIVED
NOV - 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JUDGE'S COPY
NOV 7 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FINKELSTEIN & HORVITZ, P.C.**
(SETTLEMENT ATTORNEYS)
7315 Wisconsin Ave., N.W.
Suite 400 East
Bethesda, MD 20814
        Defendant.

## MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM AND ORDER DATED NOVEMBER 2, 2006

Having reread F.R.C.P. Rule 15(a), Plaintiff now understands that she should have obtained leave of court to file her first amended complaint. Her error was not intentional. She did not include a motion for leave of court when she filed the first amended complaint on the advice of the woman in the Clerk's Office who handles Judge Robertson's docket who told her that the complaint could be amended once as a matter of course. She said nothing about whether responsive pleadings had been filed. She did tell plaintiff that a Second Amended Complaint required a motion for leave of court to file, and plaintiff filed a motion for leave of court to file her Second Amended Complaint. Given the advice that plaintiff received from a woman in a position of authority with the District Court, plaintiff believes that the action of this Court to strike plaintiff's first amended complaint and all subsequent motions is extremely harsh in light of the circumstances surrounding plaintiff's error. Plaintiff asks the Court to reconsider and accept her first amended complaint.

The Memorandum focuses its criticisms on the original complaint. It is unfair to force Forti to defend the original complaint when she filed a first amended complaint which eliminated all persons who were parties to the action in Superior Court, named the attorneys as defendants, and made the cause of action civil fraud and conspiracy to commit civil fraud.

On page 2 of the Memorandum, the Court says that plaintiff never responded directly to the order to show cause why the complaint does not violate Rule 11. However, plaintiff filed a pleading on July 12, 2006 titled "It Would Be Wrong for the District Court to Dismiss Forti's Amended Complaint and Impose Sanctions For All Of The Following Reasons." The first seven pages of that pleading are a direct response to the court's order. Only after responding to the Court's order did plaintiff use the same pleading to file memoranda in opposition to each of the defendants' motions for sanctions.

Page 2 of the Memorandum states that plaintiff's conduct in this case violates the first three subsections of F.R.C.P 11(b). The Court makes this statement, because it is considering only the original complaint and not the first amended complaint. Even with the original complaint, Forti explained her actions to the Court. With respect to Rule 11(b)(1), Forti did not file the

original complaint for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. By filing the complaint, she honestly sought only to vindicate what she believed are her rights. With respect to Rule 11(b)(2), she honestly believed that her original complaint was warranted by existing law and that res judicata and collateral estoppel did not bar the action. With respect to 11(b)(3), she honestly believed that the allegations and other factual contentions have evidentiary support.

After Judge Robertson raised objections to the original complaint, Forti filed an amended complaint in which she sued only the attorney defendants and their law firms for civil fraud and conspiracy to commit civil fraud. The attorney defendants were not parties to the action in Superior Court and they are not in privity with the parties to the action in Superior Court. A cause of action for civil fraud and conspiracy to commit civil fraud was not before Superior Court or decided by Superior Court. It is, therefore, inaccurate to say that Forti's first amended complaint attempts to relitigate claims and shows a disregard for settled decisions.

In her amended complaint, Forti explained that the attorney defendants forced Forti to pay a commission to Miller that she did not owe.

by means of litigation. This is not a baseless charge. Miller was barred by D.C. Code and District of Columbia case law from receiving a commission. D.C. Code and District of Columbia case law forbid receipt of a broker's commission unless there is a written employment agreement between the seller and broker or a written principal/agent agreement in which the seller agrees to pay the broker a commission for procuring buyers. According to D.C. Code section 42-1705, "A licensee (i.e. Miller) shall not receive payment of a commission in the absence of a written listing agreement." See p. 1 of 1, Disclosure of Brokerage Relationship in the Purchase Offer/Contract in which June Humbert identifies Miller as the "licensee." The District of Columbia Court of Appeals has interpreted this Code provision to require proof of an employment contract between seller and broker in which the seller agrees to pay the broker a commission for procuring buyers before a broker may receive a commission. Eggleton v. Vaughan, 45 A.2d 362, 363 (D.C. App. 1946): "One seeking to obtain compensation as an agent must prove his contract of employment before he can recover for work done for an alleged principal. The fact that one is the procuring cause of a sale does not entitle him to a commission unless he had authority to sell." Id. [Emphasis added.] There was no employment contract

between Forti and Miller. In <u>Fred Ezra Co. v. Pedas</u>, 682 A.2d 173, 176 (D.C. App. 1996), the Court of Appeals for the District of Columbia affirmed that "in order for a broker, as agent, to recover against a seller, as principal, the broker must first establish that they voluntarily entered into a principal/agent relationship that gives rise to the broker's contractual right to a commission." Forti did not enter into a principal-agent agreement with Miller. Since Forti did not sign an employment contract with Miller or enter into a principal/agent relationship with Miller or sign an agreement with Miller promising to pay a commission for procuring buyers, Forti did not owe Miller a commission.

Judge Wright's decision to grant summary judgment to Miller for a commission and to dismiss Forti's claims against Chong and Zanforlin for breach of contract and compensatory and consequential damages did not address the applicable case law nor was the case law addressed by the Court of Appeals. The argument that Miller was barred by D.C. Code and case law by the Court of Appeals from receiving a commission was not "unequivally rejected." The argument was not even addressed by Superior Court or the Court of Appeals.

Contrary to the assertions on page 3 of the Memorandum, Plaintiff is

not indifferent to the prior rulings and she has no intent to bring claims in bad faith. In Reynolds v. The National Capitol Police Board, the District Court found that the "calculating indifference of plaintiff Thompson to prior rulings of members of this [District] Court constitute an intent to bring claims in bad faith." Reynolds v. The National Capitol Police Board, 357 F. Supp. 2d 19, 25 (D.D.C. 2004). Thompson brought essentially the same claim three times against the same defendant in District Court. The instant case is Forti's first claim in District Court, and there have been no prior rulings by the District Court. Plaintiff understands that the District Court must accept the decisions by Superior Court and the Court of Appeals against the parties to the Superior Court case on the issues decided in Superior Court. However, in Forti's amended complaint, the defendant attorneys were not parties to the case in Superior Court and the cause of action for civil fraud and conspiracy to commit civil fraud was not decided by Superior Court. For issue preclusion to apply, the same issue "must have been actually litigated, that is, contested by the parties and submitted for determination by the court." McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C.Cir. 1986). In Superior Court, Forti was sued for a commission. In Forti's amended complaint in District Court, Forti is suing the attorney

defendants for civil fraud and conspiracy to commit civil fraud. Thus, the same issue was not litigated and submitted for determination by the court. Forti's amended complaint against the defendant attorneys is the first time that Forti has sued the defendant attorneys. Thus, there is no intent on the part of Forti to harass by litigation. Evidentiary proof for the assertion that the attorney defendants committed fraud on the court is provided in great detail in Forti's second amended complaint. For the convenience of the court, that information is included here. All the defendant attorneys submitted sworn affidavits to Superior Court that contained many false statements. See Exhibit C to Forti's Motion for Summary Judgment. Agulia and Hardie conspired with Masson against Forti, most conspicuously in their Motions for Summary Judgment. In support of Miller's motion for summary judgment, Masson filed a perjured affidavit by Humbert, who claimed that Forti had refused to escrow the disputed commission when, in fact, it was Chong and Zanforlin who prevented settlement by refusing to pay Forti the $950,000 in Net Proceeds that they promised her in their Purchase Offer/Contract and by refusing to escrow the disputed funds. Humbert also lied in saying that she did not persuade Chong and Zanforlin to breach their contract a second time on April 29, 2002 by refusing to escrow the disputed

funds so that settlement could proceed, although that is precisely what she did. Agulia and Hardie filed perjured affidavits signed by Chong and Zanforlin with Superior Court in support of their motion for summary judgment. The affidavit by Zanforlin claimed that Forti had refused to put the disputed commission into an escrow account, which was utterly false. Zanforlin also misrepresented the contract price as $950,000 when it was actually $950,000 in Net Proceeds. She also lied in claiming that she did not conspire with attorney Finkelstein and Humbert to extort a commission for Miller, when that is exactly what she did. The affidavit by Chong also misrepresented that the contract price was $950,000 when, in fact, it was $950,000 in Net Proceeds. Agulia and Hardie also filed with Superior Court an affidavit by Esther Finkelstein that was prepared by Nathan Finkelstein. Contrary to the false statements in Esther Finkelstein's affidavit, Forti told Esther Finkelstein that she did not owe Miller any commission and to make sure that the HUD Settlement Sheet reflected that fact. Esther Finkelstein, who was not even present at the settlement proceedings itself and had no personal knowledge of what took place at settlement, also swore, "At no time do I recall Ms. Forti suggesting that the disputed commission be placed in escrow to facilitate the closing." The fact is that after the buyers refused to

tender Forti the $950,000 in Net Proceeds that they owed her under the contract, Forti reluctantly agreed to escrow the disputed amount so that settlement could proceed. There is no question that the affidavits by Humbert, Zanforlin, and Esther Finkelstein contained false statements, because Chong and Zanforlin, who had filed affidavits containing false statements with the trial court, subsequently admitted in another pleading that it was "Humbert who disagreed with placing the disputed commission into an escrow account and that Chong and Zanforlin also disagreed with placing the disputed commission into an escrow account."

At the time that this case was being heard in Superior Court, there was no security for pleadings filed with Superior Court. Illegally removed from the File Room in the Civil Action Branch of Superior Court were Forti's most significant pleadings. They included Forti's Opposition to Miller's Motion for Summary Judgment; Forti's Opposition to Chong and Zanforlin's Motion for Summary Judgment; Forti's Rebuttal of Miller's Points and Authorities; Forti's Rebuttal of Chong and Zanforlin's Points and Authorities; Forti's Renewed Motion for Summary Judgment, and <u>subpoenas duces tecum</u> addressed to Miller and Humbert, which called for information on any settlement business that Miller provided to Finkelstein following the

settlement transaction between Forti and Chong/Zanforlin. The pleadings filed in Superior Court are the pleadings used to prepare the Record on Appeal. See Exhibit D to Forti's Amended Motion for Summary Judgment. The docket sheet prepared by the Civil Action Branch of Superior Court records the filing of each of the specified pleadings by Forti and the date on which she filed the pleading. Forti asks Judge Robertson to compare the docket sheet with the INDEX/CLERK'S CERTIFICATION prepared by the Appeal Coordinator's Office as part of the Record on Appeal. Each of the specified pleadings is conspicuously missing from the INDEX/CLERK'S CERTIFICATION. These pleadings were obviously removed from the File Room of the Civil Action Branch sometime after they were filed by Forti and before the Appeal Coordinator's Office prepared the INDEX/CERTIFICATION for the Court of Appeals. Since no one but Masson, Agulia, and Hardie had a motive to remove these pleadings and there is no other reasonable explanation for their disappearance, these facts lead to the inevitable conclusion that these pleadings were removed by the named attorneys. Theft by these attorneys of Forti's most important pleadings caused the Court of Appeals to reach an erroneous decision. The decision in the Court of Appeals was procured by fraud upon the court.

Although Forti attempted to bring to the attention of the Court of Appeals the fact that her most important pleadings had been removed illegally from the File Room of the Civil Action Branch before the record on appeal was sent to the Court of Appeals, the Court of Appeals never dealt with the theft issue and affirmed the lower court decision based on a grossly incomplete record. For the doctrine of preclusion to apply, the issues must have been decided in a "full and fair proceeding." McLaughlin v. Bradlee, 803 F.2d 1197, 1204 (D.C. Cir. 1986). The issues in Superior Court were not decided in a "full and fair proceeding" since perjured affidavits were filed with the Court and Forti's most important pleadings were removed from consideration by the court by Agulia, Hardie, and Masson.

I want Judge Robertson to know that I did not receive notice of the Motions Hearing that was held on October 17, 2006. I only found out about it on Friday, November 3, 2006 when I talked with law clerk Emily Coward. Although it appears that a notice was sent out by the Court to the correct address, it was not delivered to me by the Post Office. If I had received notice, I would have attended and argued against the motions for sanctions and the motion to dismiss. Since my absence was not willful, I do not think that the motions for sanctions or the motion to dismiss should have

12

been granted without my having been afforded an opportunity to argue against them.

I do not think that any sanctions are warranted under Rule 11. I also think that sanctions of $15,000 are grossly disproportionate to the offense, if any offense was committed. However, if the Court is determined to impose sanctions, "a court should impose the least severe sanction adequate to effectuate the purpose of Rule 11." Reynolds v. U.S. Capitol Police Bd, 357 F. Supp 2d 19, 26 (D.D.C. 2004). In that case, the plaintiff was ordered to pay $1000 to the Clerk of the Court.

My motion for reconsideration seeks the following:

1. to accept my first amended complaint, because I made an unintentional error in not seeking leave of court to file it.

2. to grant leave of Court to file the Second Amended Complaint for all the reasons that I stated in my motion.

3. to reverse the motion to dismiss that was granted at the motions hearing on October 17, 2006, because I never had an opportunity to argue against it.

4. to vacate the sanctions that were granted at the motions hearing on October 17, 2006, because I never had an opportunity to argue against them. The attorney defendants do not consent to this motion.

13

Respectfully submitted,

*[signature: Carol A. Forti]*

Carol A. Forti
Plaintiff pro se
14 West Chapman Street
Alexandria, VA 22301
703.535.5449

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have served George Masson, Jr., Richard Agulia, Jeffrey Hardie, and Nathan Finkelstein with a copy of Motion for Reconsideration by first-class mail, postage prepaid on November 6, 2006.

*[signature]*
Carol A. Forti

14